1

2

3

4

5          **UNITED STATES DISTRICT COURT**

6          **SOUTHERN DISTRICT OF CALIFORNIA**

7   BRAD MAUSS, individually and on          CASE NO. 13-cv-2005 JM (JLB)
    behalf of all other persons similarly
8   situated,                                 ORDER GRANTING MOTION TO
                                              DISMISS WITH LEAVE TO AMEND
9                              Plaintiff,
                                              [Dkt. No. 24]
10     vs.

11  NUVASIVE, INC.; ALEXIS V.
    LUKIANOV; KEVIN C. O'BOYLE;
12  and MICHAEL J. LAMBERT; ,

13                          Defendants.
    _____

14

15       This is a purported securities fraud class action on behalf of persons who

16  purchased NuVasive, Inc. securities between October 22, 2008, and July 30, 2013.

17  Plaintiff alleges Defendants violated federal securities laws and pursues remedies under

18  sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and the regulations

19  promulgated thereunder, including Rule 10b-5.    Defendant NuVasive, Inc.

20  ("NuVasive") and several of its officers, Defendants Alexis V. Lukianov, Kevin C.

21  O'Boyle, and Michael J. Lambert (collectively, " Individual Defendants") have filed

22  a motion to dismiss Plaintiff Mauss's amended complaint (the "FAC") under Federal

23  Rule of Civil Procedure  ("Rule") 12(b)(6) for failure to state a claim.  (Dkt. No. 24).

24  Plaintiff has filed an opposition to Defendants' motion, (Dkt. No. 26), and Defendants

25  have filed their reply.  Having carefully considered the parties' briefing, the court finds

26  this matter suitable for resolution on the papers without oral argument pursuant to Civil

27  Local Rule 7.1.d.1.  The motion to dismiss is GRANTED WITH LEAVE TO AMEND

28  for the reasons set forth below.

**BACKGROUND**[1]

NuVasive designs, develops, and markets a range of products relating to the surgical treatment of spine disorders.  In order to sustain and grow its business, the Plaintiff alleges NuVasive faces constant pressure to innovate, promote and market its products, establish relationships with surgeons and hospitals, and convince spine surgeons to choose its products over those of its competitors.  NuVasive and other medical device companies are subject to an extensive regulatory framework intended to protect patients and government-funded health care programs, such as Medicare and Medicaid, from fraud and abuse. Thus, sales and marketing practices and other conduct that can be commonplace in other industries may be unacceptable or illegal when soliciting business that ultimately is paid for, in whole or in part, by governmental healthcare programs.  Failure to adhere to these laws and regulations can result in civil and criminal penalties, or even exclusion from participation in governmental health care programs.

Because NuVasive and its customers – mainly hospitals and surgeons – rely primarily on third-party reimbursement for the earned surgical and monitoring fees, Plaintiff alleges exclusion from participation in programs, such as Medicare and Medicaid, can be fatal to its business.  Consequently, if hospitals and physicians cannot recover adequate payments from programs like Medicare and Medicaid, either because NuVasive is ineligible to participate or because there is a disagreement about reimbursement, it is unlikely that they will continue to use NuVasive's products and services.

Plaintiff alleges that despite NuVasive's recognition that "[h]ealthcare fraud and abuse laws apply to our business," "Defendants determined to sustain [NuVasive's] revenues and expand its customer base by employing numerous, aggressive and questionably-ethical sales and marketing practices that constitute violations of federal

---

[1] The background consists of Plaintiff's allegations and, to the extent they are well-pled, are taken as true for purposes of this motion.

13-cv-02005 JM (2005)

and state laws, including but not limited to, the Anti-Kickback Statute, the False Claims Act, and other applicable healthcare fraud and abuse laws." (FAC ¶ 6). Generally, Plaintiff alleges Defendants engaged in three specific practices in violation of applicable healthcare fraud and abuse laws.[2]

First, Plaintiff alleges Defendants "lured surgeons to utilize NuVasive products and services and encourage other surgeons to do the same by devising so-called educational and training programs and clinical studies, which included, among other things, all-expense paid trips to New York, San Diego, Puerto Rico, and other locations, first-class flights on private jets, tickets to Broadway shows and NFL games, expensive cocktail receptions and dinners, luxury hotel stays, and gift cards." (Id. at ¶ 7). Plaintiff further asserts Defendants "created a network of prominent physicians," known within NuVasive as high-end rollers, "who received rewards and special treatment, such as all-expense paid travel, concierge services, and speaking engagements, based upon the number of patients they referred to [NuVasive] and their promotion and publication of peer-reviewed papers touting the benefits of NuVasive products and services. Certain physicians were also paid exorbitant consulting fees and commissions, often in excess of $1 million per year per doctor, for participating in clinical trials and utilizing NuVasive products in surgeries." (Id. at ¶¶ 8-9). Plaintiff alleges Defendants engaged in this wrongful and illegal conduct, knowing that the resulting increases in sales and revenues would be paid, in part, by governmental healthcare programs, including Medicare and Medicaid.

Second, Plaintiff alleges Defendants violated applicable health care and abuse laws following losses in revenue in its monitoring business due to changes in rules for billing and coding its Intra-Operative Monitoring ("IOM") services.[3] Specifically,

---

[2] Plaintiff provides statements from confidential witnesses in support of these allegations, which will be discussed further below.

[3] In October 2011, NuVasive expanded its products and services by acquiring Impulse Monitoring, Inc. ("Impulse Monitoring"), which operates as a wholly-owned subsidiary of NuVasive, for $80 million. Impulse Monitoring

Plaintiff alleges, "[Defendants] responded by, among other things, (1) having sales representatives place monitoring equipment in operating rooms, when the equipment was redundant and not medically necessary; (2) allowing doctors to remotely monitor several patients simultaneously, and then generating separate invoices for the same time billed; (3) developing marketing materials to instruct customers on coding monitoring services so as to take advantage of loopholes in coding procedures; and (4) improperly coding monitoring services in claims submissions to Medicare and Medicaid."  (Id. at ¶ 11).

Third, Plaintiff alleges that Defendants took aggressive action when coding disputes threatened to impact revenues for NuVasive's eXtreme Lateral Interbody Fusion® ("XLIF procedure"),[4] which was NuVasive's most lucrative and well-known line of business.  In doing so, Defendants "waged a very heated battle with third-party payers, insisting that those payers, including Medicare and Medicaid, accept the coding designation assigned by NuVasive."  (Id. at ¶ 12).  Ultimately, NuVasive decided to continue to utilize the coding that resulted in the highest reimbursement for the XLIF procedure.

In various public filings, Plaintiff alleges Defendants indicated that the Anti-Kickback Statute "prohibits the knowing and willful solicitation, offer, payment or receipt of any remuneration, direct or indirect, in cash or in kind, in return for or to induce the referral of patients for items or services covered by Medicare, Medicaid and certain other governmental health programs."  Despite knowing their conduct violated the law, Defendants nevertheless claimed in these filings that they "believe[d] that

_____

provides Intra-Operative Monitoring ("IOM") services, which allow doctors to detect neural structures and potential neural compromise during surgical procedures. The IOM model employs two doctors, a neurophysiologist, who oversees the use of monitoring equipment during surgery, and a physician, who monitors and interprets neurological data transmitted from sensors attached to the patient by the neurophysiologist, usually from a remote location outside the hospital.

[4] The XLIF® procedure is a minimally disruptive procedure that allows spine surgeons to have direct access to the intervertebral disc space (the "joint" of the spine) from the side of the body, as opposed to the front or back.

[their] operations materially compl[ied] with the antikickback statutes…." Likewise, Plaintiff alleges Defendants knew that by compromising the independent judgment of physicians, promoting the use of equipment that was not medically necessary, and manipulating and exploiting loopholes in the billing coding system and encouraging customers to do the same, improper claims would be submitted for payment to Medicare and Medicaid in violation of the False Claims Act.

Ultimately, Plaintiff alleges the Defendants' thinly-veiled kickback scheme and deceptive billing practices caught the attention of regulators.  On July 30, 2013, NuVasive disclosed in its Form 10-Q for its second quarter in 2013 that it had "received a federal administrative subpoena from the Office of the Inspector General of the U.S. Department of Health and Human Services (OIG) in connection with an investigation into possible false or otherwise improper claims submitted to Medicare and Medicaid.  The subpoena seeks discovery of documents for the period January 2007 through April 2013."  After releasing this news, NuVasive securities declined $3.28 per share or over 12%, to close at $22.84 per share on July 31, 2013.

Throughout the applicable class period from October 22, 2008 through July 30, 2013, the FAC alleges Defendants violated federal securities laws and seeks remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 against Nuvasive and the Individual Defendants.  In particular, Plaintiff alleges Defendants made false and/or misleading statements during conference calls with investors and in NuVasive's quarterly and annual reports.  Plaintiff also alleges Defendants failed to disclose material adverse facts about NuVasive's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Defendants' education and training programs and expenses related thereto were a contrivance to disguise improper and illegal gifts, payments, and other remuneration to doctors in exchange for referrals of business; (2) Defendants utilized kickbacks, in the form of gifts, entertainment, improper commissions and consulting fees, and other remuneration, in order to induce

doctors, including certain prominent physicians referred to by NuVasive insiders as high-end rollers, to utilize its products and services and to encourage other doctors to do the same; (3) Defendants employed improper sales and billing practices to sustain revenues, including submitting false claims to Medicare and Medicaid with knowledge that its customers ultimately would submit claims for reimbursement to governmental healthcare programs, including Medicare and Medicaid; (4) Defendants provided guidance to its customers as to how to code NuVasive products and procedures in order to take advantage of loopholes and maximize reimbursement by third party payers, including Medicare and Medicaid; (5) Defendants did not employ adequate internal controls to detect and prevent fraudulent and abusive marketing, sales, and billing practices so as to maintain compliance with applicable laws; (6) a substantial portion of NuVasive's earnings and revenues were thereby earned as a result of violations of the Anti-Kickback Statute, the False Claims Act, and other healthcare fraud statutes; and (7) as a result of Defendants' practices, there was a substantial risk that NuVasive would encounter regulatory scrutiny.

As a result of Defendants' misleading statements and omissions, and the precipitous decline in the market value of NuVasive's securities, the FAC alleges Plaintiff and other class members have suffered significant losses and damages. Based on these general allegations and more specific allegations provided in the FAC, Plaintiff asserts two causes of action: (1) Violations of Section 10(b) and Rule 10b-5 promulgated thereunder against all Defendants; and (2) Violations of Section 20(a) of the Securities Exchange Act against the individual Defendants.

On August 28, 2013, Danny Popov filed this class action against Defendants. On October 28, 2013, Movant Mauss brought a motion to appoint lead counsel and lead plaintiff pursuant to § 21D(a)(3)(B) of the Securities Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4(a)(3)(B). On December 27, 2013, the court granted the motion to name Pomerantz Grossman Huffman Dahlstrom & Gross LLP as lead counsel with Glancy

1  Binkow and Goldberg acting as liaison counsel and to appoint Mauss as lead plaintiff.

2  Plaintiff Mauss filed the operative FAC on February 13, 2014.

3                                    **LEGAL STANDARD**

4  **A.  Federal Rule of Civil Procedure 12(b)(6)**

5          A Rule 12(b)(6) motion to dismiss challenges the legal sufficiency of the

6  pleadings.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  When considering a

7  Rule 12(b)(6) motion to dismiss, the court must construe the pleadings in the light most

8  favorable to the non-moving party, accepting as true all material allegations in the

9  complaint and any reasonable inferences drawn therefrom.  See, e.g., Broam v. Bogan,

10  320 F.3d 1023, 1028 (9th Cir. 2003).  While dismissal is proper only in "extraordinary"

11  cases, United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981), the

12  complaint's "[f]actual allegations must be enough to raise a right to relief above the

13  speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The court

14  should grant relief under Rule 12(b)(6) only if the complaint lacks either a "cognizable

15  legal theory" or facts sufficient to support a cognizable legal theory.  Balistreri v.

16  Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

17  **B.  Federal Rule of Civil Procedure 9(b) and the PSLRA**

18          Because Plaintiff has alleged securities fraud claims governed by the Private

19  Securities Litigation Reform Act of 1995 ("PSLRA"),  Plaintiff must also satisfy the

20  heightened pleading standards set forth by Rule 9(b) of the Federal Rules of Civil

21  Procedure and by the PSLRA, the latter of which has imposed "formidable pleading

22  requirements to properly state a claim and avoid dismissal under Fed. R. Civ. P.

23  12(b)(6)." Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1055 (9th

24  Cir. 2008); see Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir.

25  2009).  (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).

26          Section 10(b) of the Exchange Act makes it unlawful "[t]o use or employ, in

27  connection with the purchase or sale of any security ... any manipulative or deceptive

28  device or contrivance in contravention of such rules and regulations as the [Securities

and Exchange ("SEC") ] Commission may prescribe . . . ." 15 U.S.C. § 78j(b).
Pursuant to that section, the SEC promulgated Rule 10b-5, which makes it unlawful,
among other things, "[t]o make any untrue statement of a material fact or to omit to
state a material fact necessary in order to make the statements made, in the light of the
circumstances under which they were made, not misleading[ ]" in connection with the
purchase or sale of any security. 17 C.F.R. § 240.10b-5(b). Thus, to state a claim for
private securities fraud under Section 10(b) and Rule 10b-5, a plaintiff must allege:
"(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with
the purchase or sale of a security, (4) transaction and loss causation, and (5) economic
loss." In re Daou Sys., Inc., 411 F.3d 1006, 1014 (9th Cir. 2005) (citing Dura Pharms.,
Inc. v. Broudo, 544 U.S. 336, 341-42 (2005)).

Rule 9(b) requires a plaintiff alleging fraud or mistake to "state with particularity
the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); see Nursing
Home Pension Fund, Local 144 v. Oracle Corp., 380 F.3d 1226, 1230 (9th Cir. 2004).
The Ninth Circuit has explained that "[a]verments of fraud must be accompanied by
'the who, what, when, where, and how' of the misconduct charged."  Vess v.
Ciba–Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003)

In addition to Rule 9(b)'s heightened pleading requirements for allegations of
fraud, the PSLRA requires a plaintiff alleging securities fraud to "plead with
particularity both falsity and scienter."  Zucco Partners, 552 F.3d at 990 (citation
omitted); accord Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314
(2007).  The complaint must "specify each statement alleged to have been misleading
[and] the reason or reasons why the statement is misleading," and "state with
particularity facts giving rise to a strong inference that the defendant acted with the
required state of mind." 15 U.S.C. § 78u4(b)(1)-(2); see also Tellabs, 551 U.S. at 321.
To satisfy the rigorous pleading standards of the PSLRA, the complaint's scienter
allegations must give rise not simply to a plausible inference of scienter, but rather to
an inference of scienter that is "cogent and at least as compelling as any opposing

inference of nonfraudulent intent." <u>Tellabs</u>, 551 U.S. at 314, 324. "If a plaintiff fails to plead the alleged misleading statements or omissions or the defendant's scienter with particularity, the complaint must be dismissed." <u>Nursing Home Pension Fund, Local 144 v. Oracle Corp.</u>, 380 F.3d 1226, 1230 (9th Cir. 2004) (citing 15 U.S.C. § 78u–4(b)(3)(A)).

## **DISCUSSION**

Defendants seek dismissal of Plaintiff's Section 10(b) claim on the basis that (1) Plaintiff has failed to plead falsity with regard to Defendants' alleged material misrepresentations and omissions as the FAC does not specify with particularity what statements are false and the reasons why they are, and (2) Plaintiff has failed to plead sufficient facts to establish scienter. Defendants also seek dismissal of Plaintiff's Section 20(A) claim for failure to establish an underlying securities violation through Section 10(b).

**A. Plaintiff's Section 10(b) Claim**

**1. Falsity of the Alleged Misrepresentations or Omissions**

Defendants argue Plaintiff has failed to sufficiently allege falsity by identifying specific statements as misleading and then offering a specific reason why the statements are misleading. <u>See Desaigoudar v. Meyercord</u>, 223 F.3d 1020, 1023 (9th Cir. 2000). The FAC is 93 pages long and contains 226 paragraphs. In 91 paragraphs of the FAC entitled "Materially False and Misleading Statements During the Class Period," Plaintiff provides summaries and direct quotes, many of which are in the form of lengthy block-quotes, from various quarterly reports, annual reports, and investor conference calls occurring from late 2008 through the 2012 annual report. (FAC ¶¶ 103-94). Rather than specifically stating why each statement was false, the FAC summarizes the numerous reasons why all of the Defendants' statements in the various

documents and conference calls were false in just two paragraphs.[5] (FAC ¶¶ 112; 194). Defendants argue this style of "puzzle pleading" has been roundly rejected by courts and fails to satisfy the PSLRA's requirement that the complaint identify the allegedly false statements with particularity.

"In the context of securities fraud, the term 'puzzle pleading' refers to a pleading that requires a defendant and the court to 'match up' the statements that form the basis of the plaintiff's claims with the reasons why those statements are misleading." Neborksy v. Valley Forge Composite Tech., Inc., 2014 WL 1705522, at *5 (S.D. Cal. Apr. 28, 2014)(citing In re Splash Tech. Holdings, Inc. Sec. Litig., 160 F. Supp. 2d 1059, 1073–75 (N.D. Cal. 2001); In re Cisco Sys. Inc. Sec. Litig., 2013 WL 1402788 (N.D. Cal. Mar. 29, 2013)). It is Plaintiff's burden to identify the misleading statement and link each one to the facts that establish that the statement was false or misleading when made. In re Glenfed, Inc. Sec. Litig., 42 F.3d 1541, 1553–54 (9th Cir.1995) ("A complaint is not a puzzle ... and we are loathe to allow plaintiffs to tax defendants, against whom they have leveled very serious charges, with the burden of solving puzzles in addition to the burden of formulating an answer to their complaint."). While the FAC contains a great deal of back-drop relative to Plaintiff's claims and the

---

[5] As noted above, Plaintiff alleges these statements were false and/or misleading because: "(1) Defendants' education and training programs and expenses related thereto were a contrivance to disguise improper and illegal gifts, payments, and other remuneration to doctors in exchange for referrals of business; (2) Defendants utilized kickbacks, in the form of gifts, entertainment, improper commissions and consulting fees, and other remuneration, in order to induce doctors, including certain prominent physicians referred to by NuVasive insiders as "high end rollers," to utilize its products and services and to encourage other doctors to do the same; (3) Defendants employed improper sales and billing practices to sustain revenues, including by submitting false claims to Medicare and Medicaid and with knowledge that its customers ultimately would submit claims for reimbursement to governmental healthcare programs, including Medicare and Medicaid; (4) Defendants provided guidance to its customers as to how to code NuVasive products and procedures in order to take advantage of loopholes and maximize reimbursement by third party payers, including Medicare and Medicaid; (5) Defendants did not employ adequate internal controls to detect and prevent fraudulent and abusive marketing, sales, and billing practices so as to maintain compliance with applicable laws; (6) a substantial portion of the Company's earnings and revenues were thereby earned as a result of violations of the Anti-Kickback Statute, the False Claims Act, and other healthcare fraud statutes; and (7) as a result of Defendants' practices, there was a substantial risk that NuVasive would encounter regulatory scrutiny." (FAC ¶ 194).

Defendants' alleged violations of applicable healthcare laws, the court nevertheless agrees with Defendants' assessment.  The FAC simply does not sufficiently link the many statements at issue to the reasons why Plaintiff believes they were impermissible misrepresentations and omissions.   As pled, the FAC's format, a version of impermissible "puzzle pleading" rejected by other courts, does not provide the clarity required to evaluate the falsity of the individual statements.

Moreover, Defendants argue it is unclear from the structure of the FAC whether Plaintiff challenges every aspect of the referenced documents as false or simply challenges certain statements made in those documents.  This is largely because many of the statements quoted by Plaintiff do not appear false on their face.  For example, the FAC quotes the following statement from NuVasive's SEC filings: "Healthcare fraud and abuse laws apply to our business if a customer submits a claim for an item or service that is reimbursed under Medicare, Medicaid or most other federally-funded health care programs." (FAC ¶¶111, 126).  Without further explanation, it is unclear whether Plaintiff considers this statement to be false or why, particularly because Plaintiff's claims are entirely predicated upon the applicability of various healthcare fraud and abuse laws to NuVasive.  Perhaps this statement was included in the FAC as a basis for establishing Defendants' scienter rather than as a false statement by Defendants.  However, its inclusion in the "Materially False and Misleading Statements During the Class Period" creates confusion of the type often associated with "puzzle pleading."   Because the FAC does not specifically link the individually challenged statements to the asserted reasons for their falsity, it is not immediately clear which Defendants are involved and how they are involved.  As a result, the FAC's allegations regarding false misrepresentations and fraudulent omissions are insufficient under the PSLRA.

Plaintiff argues the FAC is sufficient because it sets forth four categories of false and misleading statements in addition to containing three separately-labeled and clearly-identifiable sections explaining the reasons why each category of statements is

false and misleading.  Plaintiff's argument, however, suggests a clarity that is not reflected in the FAC.  In the FAC, Defendants' actual statements and the respective reasons for their falsity are not included within the same section of the 93-page FAC. Plaintiff describes the factual background suggesting Defendants' statements were false and misleading in paragraphs 50 through 102.  Thereafter, Plaintiff details the actual statements made by Defendants in paragraphs 103-193, along with brief summaries of the many reasons the statements are allegedly false and misleading in paragraphs 112 and 194.  By separating the statements from the alleged reasons for their falsity, Plaintiff has placed the burden on Defendants and the court to "match up" the lengthy allegations in order to consider the merits of Plaintiff's claims.  Over a 93-page FAC, this would prove to be quite an onerous and speculative task, particularly given the possibility that individual statements may or may not implicate more than one of Plaintiff's many allegations regarding falsity.

With regard to the Individual Defendants, the FAC poses an additional problem. While Defendant Lukianov has served as NuVasive's Chief Executive Officer throughout the time period at issue in the FAC, Defendants O'Boyle and Lambert have not. (FAC ¶¶ 25-27).  Rather, Defendant O'Boyle served as Executive Vice President and Chief Financial Officer for NuVasive up until November 2009 at which point Defendant Lambert took over as Chief Financial Officer on November 9, 2009.  (Id.) As currently pled, the FAC suggests the Individual Defendants are equally liable for all of the allegedly misleading statements made from 2008 through 2012, without offering any basis for holding Defendant O'Boyle liable for statements made after his departure from NuVasive or for holding Defendant Lambert liable for statements made prior to his arrival.

Additionally, Plaintiff offers factual allegations from confidential witnesses to demonstrate the falsity of Defendants' statements as well as provide an inference of their scienter at the time the statements were made.  However, the FAC rarely provides

any dates associated with their factual allegations.[6]   Generally, the sole context regarding the timing of the confidential witnesses' factual allegations comes from their period of employment at NuVasive.[7]   Of the fifteen confidential witnesses, six did not begin working at NuVasive until after Defendant O'Boyle's tenure had ended, and it is unclear from the complaint when two of the witnesses were employed at NuVasive.[8] As a result, it is unclear how the factual allegations of these eight confidential witnesses pertain to Defendant O'Boyle.   Moreover, while Defendants Lambert and Lukianov are specifically named in statements from several confidential witnesses,[9] Defendant O'Boyle is never mentioned individually.   Considering the differing tenures of Defendants O'Boyle and Lambert as well as the confidential witnesses, the FAC's failure to allege which statements are attributable to the Individual Defendants is insufficient under the PSLRA and Rule 9(b).

For these reasons, the FAC fails to allege false or misleading statements by the Defendants.   However, as it may be possible for Plaintiff to resolve these deficiencies, the Court grants Plaintiff leave to amend the FAC.   Should Plaintiff choose to do so, a further amended complaint should specifically identify the allegedly misleading

---

[6] This statement appears to be the exception: "For example, CW15 explained that during 2010, NuVasive fought with insurance companies concerning the proper coding for the XLIF procedure. Ultimately the dispute was resolved, with NuVasive adopting the coding for XLIF that it demanded, which also allowed the Company to charge more for the procedure."  (FAC ¶ 101).

[7] The FAC provides the following periods of employment for the confidential witnesses: Confidential Witness 1 ("CW1"): Dec. 2009 - Sept. 2012; CW2: Aug. 2008-Oct. 2013; CW3: June 2012-Feb. 2013; CW4: Jan. 2011-May 2013; CW5: June 2010-Feb. 2011; CW6: June 2010-Apr. 2012; CW7: 2011-2012; CW8: Dec. 2009-Mar. 2012; CW9: 2006-Aug. 2013; CW10: 2006-July 2013; CW11: Feb. 2011-Jan. 2013; CW12 and CW13: unknown; CW14: Jan. 2005-May 2010; and CW15: June 2009-Jan. 2013. (FAC ¶¶  54, 59, 59, 63, 64, 65, 81, 63, 78, 85, 93, 86, 100, and 101, respectively).

[8] Of the fifteen confidential witnesses, CW1, CW3, CW4, CW5, CW6, CW7, CW8, and CW11 began their employment after November 2009.  Additionally, it is unclear from the FAC when CW12 and CW13 began working at NuVasive as their periods of employment are not provided.

[9] (FAC ¶¶ 50-75, 95, 115-116, 137 (confidential witness statements regarding Defendant Lukianov); Id. at ¶¶ 72-74 (confidential witness statements regarding Defendant Lambert)).

1  statements and link each one to the facts that establish that the statement was false or
2  misleading when made by the particular defendant.

3      **2. Scienter**

4      In addition to alleging material misrepresentations or omissions of fact, Plaintiff
5  must also allege scienter, a mental state embracing intent to deceive, manipulate, or
6  defraud. Tellabs, 551 U.S. at 319. The PSLRA requires that a securities fraud
7  complaint "state with particularity facts giving rise to a strong inference that the
8  defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). A
9  complaint must allege that the defendants made false or misleading statements either
10 knowing they were false or with deliberate recklessness as to their falsity. Zucco
11 Partners, LLC v. Digimarc Corp., 552. F.3d 981, 992 (9th Cir. 2009). It is not enough
12 for a plaintiff merely to allege facts "from which an inference of scienter rationally
13 could be drawn." Tellabs, 551 U.S. at 323. Instead, the plaintiff must "plead with
14 particularity facts that give rise to a 'strong'—i.e., a powerful or cogent—inference."
15 Id. (emphasis added). In determining whether a plaintiff has met this heightened
16 pleading burden, the Court must examine whether all of the facts alleged, taken
17 collectively, give rise to a strong inference of scienter. Id. at 324. In Matrixx
18 Initiatives, Inc. v. Siracusano, the Supreme Court reiterated that courts must "review
19 'all the allegations holistically'" when determining whether scienter has been
20 sufficiently pled. 131 S. Ct. 1309, 1324 (quoting Tellabs, 551 U.S. at 326).

21     Despite the lengthy factual background provided in the FAC as supported by
22 statements from numerous confidential witnesses, Plaintiff has failed to allege falsity
23 of Defendants' statements with particularity because it is unclear from the FAC which
24 statements are at issue, which factual allegations support a finding of falsity for each
25 specific statement, and which Defendant allegedly made each statement. Plaintiff's
26 allegations regarding Defendants' scienter at the time of making the statements suffer
27 from the same deficiencies. "Where plaintiffs fail to plead falsity, *a fortiori* they have
28 not established that defendants knew those statements were false." Karacand v.

Edwards, 53 F. Supp. 2d 1236, 1252 (D. Utah 1999); In re Cisco Sys. Inc. Sec. Litig., 2013 WL 1402788 (N.D. Cal. Mar. 29, 2013).  In particular, the court has no way to evaluate Defendants' scienter at the time of making the allegedly misleading statement when it remains unclear which statements are at issue and why.  Additionally, it is concerning that Plaintiff's allegations of scienter refer to all Defendants equally without addressing the impact of the Individual Defendants' and the confidential witnesses' differing periods of employment at NuVasive.  For these reasons, the FAC also fails to allege scienter sufficient with particularity.

**B.  Plaintiff's Section 20(A) Claim**

Finally, Defendants challenge Plaintiff's second cause of action under section 20(a) of the Exchange Act, which provides that joint and several liability may be imposed on persons who directly or indirectly control a violator of the securities laws. 15 U.S.C. § 78t(a). To establish "control person" liability under section 20(a) of the Exchange Act, a plaintiff must show that a primary violation of section 10(b) was committed and that each individual defendant "directly or indirectly" controlled the violator.  Paracor Fin., Inc. v. Gen. Elec. Capital, 96 F.3d 1151, 1161 (9th Cir. 1996). Since Plaintiff has failed to state a viable section 10(b) claim, Plaintiff's claim under section 20(a) of the Exchange Act fails as well.

## CONCLUSION

For the reasons set forth above, Defendants motion to dismiss is GRANTED WITH LEAVE TO AMEND.   Should Plaintiff wish to file a second amended complaint, he must do so within twenty days of this order.

IT IS SO ORDERED.

DATED:  August 19, 2014

_____
Hon. Jeffrey T. Miller
United States District Judge