UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAD MAUSS and DANIEL POPOV, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NUVASIVE, INC.; ALEXIS V. LUKIANOV; and MICHAEL J. LAMBERT,<br><br>Defendants. | Case No.: 13cv2005 JM (JLB)<br><br>**ORDER DENYING DEFENDANTS' (1) MOTION FOR SUMMARY JUDGMENT; (2) MOTION TO EXCLUDE TESTIMONY; AND (3) MOTION TO STRIKE EXHIBITS** |

Defendants NuVasive, Inc. ("NuVasive"), Alexis V. Lukianov, and Michael J. Lambert (collectively, "Defendants") move the court for summary judgment on the issue of loss causation, (Doc. No. 152), and to exclude the testimony of Plaintiffs' expert, Zachary Nye, Ph.D. ("Dr. Nye"), (Doc. No. 154).[1] Plaintiffs Brad Mauss and Daniel Popov (collectively, "Plaintiffs") oppose. Having carefully considered the matters presented, the court record, and the arguments of counsel, the court denies both motions.

---

[1] Defendants NuVasive and Lambert filed the instant motions and corresponding replies. (See Doc. Nos. 152, 154, 167, 168.) Defendant Lukianov joined both motions and replies. (Doc. Nos. 153, 155, 170, 171.)

1

# BACKGROUND

On August 28, 2013, Plaintiffs commenced this securities-fraud class action on behalf of those individuals who purchased NuVasive securities between October 22, 2008, and July 30, 2013. Plaintiffs' sixth amended complaint ("6AC") asserts two claims, for (1) securities fraud, in violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, against all Defendants; and (2) control-person liability under Section 20(a) of the Securities and Exchange Act, against Defendants Lukianov and Lambert. After filing their 6AC, four rounds of Rule 12(b)(6) motions, and several miscellaneous motions, Plaintiffs moved for class certification on October 28, 2016. (Doc. No. 106.) On March 22, 2017, the court granted the motion for class certification and appointed Brad Mauss and Daniel Popov as class representatives. (Doc. No. 128.)

NuVasive designs, develops, and markets products for the surgical treatment of spine disorders. Lukianov was NuVasive's Chief Executive Officer and Chairman of the Board of Directors at all relevant times. Lambert has been Chief Financial Officer since November 2009. Through the applicable class period, the Plaintiffs allege that Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about NuVasive's business, operations, and prospects. Specifically, Defendants allegedly made false and/or misleading statements and/or failed to disclose that NuVasive improperly submitted false claims to Medicare and Medicaid in alleged violation of federal state laws and regulations, made illegal "kickbacks" to doctors, and engaged in off-label promotion of NuVasive products and services.

**A.  NuVasive's Statements Regarding Compliance with the Law and Risk of Regulatory Scrutiny**

In the 6AC, Plaintiffs identify the following statements by NuVasive and assert that they are "false and misleading and/or omitted material information":

> We are subject to the federal anti-kickback statute, which, among other things, prohibits the knowing and willful solicitation, offer, payment or receipt of any remuneration direct or indirect, in cash or in kind, in return for or to induce the referral of patients for

> items or services covered by Medicare, Medicaid and certain other governmental health programs . . . *We believe that our operations materially comply with the anti-kickback statutes*; however, because these provisions are interpreted broadly by regulatory authorities, we cannot be assured that law enforcement officials or others will not challenge our operations under these statutes[.]
>
> \* \* \*
>
> *For years, we have maintained a compliance program structured to meet the requirements of the federal sentencing guidelines for an effective compliance program and the model compliance programs promulgated by HHS* over the years and includes, but is not limited to, a Code of Ethical Business Conduct, designation of a compliance officer, compliance committee, policies and procedures, a confidential disclosure method (a hotline), and conducting periodic audits to ensure compliance.

(Doc. No. 105 ("6AC") ¶ 293–94) (emphasis in original).

### B. July 30, 2013 10Q Disclosure

On July 30, 2013, NuVasive disclosed in its Form 10-Q ("10Q") for its second quarter in 2013 that it had "received a federal administrative subpoena from the Office of the Inspector General of the U.S. Department of Health and Human Services (OIG) in connection with an investigation into possible false or otherwise improper claims submitted to Medicare and Medicaid. The subpoena seeks discovery of documents for the period January 2007 through April 2013." Afterwards, NuVasive securities declined $3.28 per share, or 12.79%, to close at $22.84 per share on July 31, 2013. (6AC ¶¶ 16–17.)

### C. NuVasive Announces Defendant Lukianov's Resignation on April 1, 2015

On April 1, 2015, NuVasive announced that its then-Chairman and CEO, Lukianov, had resigned after an internal investigation revealed that he had not complied with certain NuVasive reimbursement and personnel policies. (Doc. No. 163-1 ("Nye Report") ¶ 46.) NuVasive management, when speaking with analysts that same morning, asserted that Lukianov's departure was not related to the ongoing OIG investigation. (Nye Report ¶ 47.) Following the announcement, NuVasive's stock price declined 5.4%, but recovered during

the course of the trading day after NuVasive's conference call with analysts. The end-of-day stock price "was not a statistically significant Company-specific stock price return." (Nye Report ¶ 54.)

### D. NuVasive Announces an Agreement in Principle with the DOJ on April 29, 2015

On April 29, 2015, NuVasive announced that it had reached an agreement in principle with the Department of Justice ("DOJ") related to the previously disclosed subpoena issued in 2013 by the OIG. NuVasive agreed to pay $13.8 million, including fees, to the United States to resolve the matter. (Id. ¶ 55.) The announcement did not result in a statistically significant, firm-specific change in NuVasive's share price. (Id. ¶ 59.)

### E. NuVasive Announces a Definitive Settlement with the DOJ on July 28, 2015[2]

On July 28, 2015, after market close, NuVasive announced that it had reached a definitive settlement with the DOJ related to the subpoena issued by the OIG in 2013. (Nye Report ¶ 60.) NuVasive agreed to pay $13.5 million, plus fees and accrued interest. In its announcement, NuVasive noted that the settlement was "neither an admission of liability or wrongdoing by the Company nor a concession by the United States that its claims are not well founded." (Id.) The following day, NuVasive's stock price increased 8.16%, but this company-specific increase was credited to the better-than-expected quarterly financial results and increased guidance rather than the settlement disclosure. (Id. ¶ 77.)

### F. DOJ Confirms Settlement Agreement on July 30, 2015

On July 30, 2015, the DOJ issued a press release confirming the settlement agreement. (Nye Report ¶ 78.) The DOJ stated that the settlement:

> resolve[d] allegations that the company caused health care providers to submit false claims to Medicare and other federal

---

[2] Plaintiffs' expert, Dr. Nye, identifies that this announcement occurred on July 28, 2015. (Nye Report ¶ 60.) However, both parties refer to July 30, 2015, in their briefing, likely because that is the date on which the DOJ confirmed the settlement.

4

> health care programs for spine surgeries by marketing the company's CoRent System for surgical uses that were not approved by the U.S. Food and Drug Administration (FDA) . . . The settlement further resolves allegations that NuVasive caused false claims by paying kickbacks to induce physicians to use the company's CoRent System.

(Id.) (quoting DOJ Press Release 15-944, available at https://www.justice.gov/opa/pr/medical-device-manufacturer-nuvasive-inc-pay-135-million-settle-false-claims-act-allegations). At the end of the press release, the DOJ noted that the "claims resolved by this settlement are allegations only, and there has been no determination of liability." (Id.) That same day, NuVasive's share price increased 0.62%. Dr. Nye determined that the increase was not a statistically significant company-specific stock return price change. (Id. ¶ 79.)

## LEGAL STANDARDS

### I. Summary Judgment

A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the file that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). But Federal Rule of Civil Procedure 56 contains "no express or implied requirement . . . that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. (emphasis in original).

In response to a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials of a pleading, but must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal citations omitted). In other words, the nonmoving party may not rely solely on conclusory allegations unsupported by factual data. Taylor v. List, 880 F.2d 1040, 1045

(9th Cir. 1989). The court must examine the evidence in the light most favorable to the nonmoving party, United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), and any doubt as to the existence of an issue of material fact requires denial of the motion, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## II. Exclusion of Testimony

Under Federal Rule of Evidence 702 ("Rule 702"), expert testimony is admissible if the expert's specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The Supreme Court directs trial judges to serve as gatekeepers to ensure that expert testimony is "not only relevant, but reliable." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993). The court may consider whether the expert "has unjustifiably extrapolated from an accepted premise to an unfounded conclusion." Fed. R. Evid. 702 Advisory Committee's Notes to 2000 Amendment, 192 F.R.D. 340, 400 (2000) (citing Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)). Under Rule 702, the expert's proponent bears the burden of establishing admissibility by a preponderance of the evidence. See Bourjaily v. United States, 483 U.S. 171, 175 (1987); Lust By & Through Lust v. Merrell Dow Pharm., 89 F.3d 594, 598 (9th Cir. 1996). "A review of the caselaw after Daubert shows that the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 Advisory Committee's Notes to 2000 Amendment, 192 F.R.D. 340, 400 (2000).

## DISCUSSION

The court will first address Defendants' motion for summary judgment and will then address Defendants' motion to exclude testimony.

## I. Defendants' Motion for Summary Judgment

Section 10(b) of the Securities Exchange Act makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe . . . ." 15 U.S.C. § 78j(b). SEC Rule 10b-5 makes it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to

make the statements made, in light of the circumstances under which they were made, not misleading" in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5(b). There are six elements to a private securities-fraud claim under Section 10(b) and Rule 10b-5: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation and the purchase or sale of a security; (4) reliance upon the misrepresentation; (5) economic loss; and (6) loss causation. See Loos v. Immersion Corp., 762 F.3d 880, 886–87 (9th Cir. 2014). Defendants move for summary judgment on the element of loss causation.[3]

Loss causation requires a plaintiff to prove "that the act or omission of the defendant alleged to violate [the Securities Exchange Act] caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). "This inquiry requires no more than the familiar test for proximate cause." Mineworkers' Pension Scheme, et al., v. First Solar Inc., et al., No. 15-17282, 2018 WL 626948, at *2 (9th Cir. Jan. 31, 2018); see also Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 342 (2005) (loss causation requires "a causal connection between the material misrepresentation and the loss"). "Ultimately, a securities fraud plaintiff must prove that the defendant's misrepresentation was a substantial cause of his or her financial loss." Loos, 762 F.3d at 887 (internal quotation marks omitted).

Here, Defendants insist that Plaintiffs must show that the alleged fraud was revealed to the market to prove loss causation, which the court will refer to as the "revelation of fraud" standard.[4] According to Defendants, "because there is no evidence that the market ever learned of the practices that Plaintiffs allege underlies their claim of securities fraud,"

---

[3] Defendants focus on the Section 10(b) claim, but note that if primary liability under Section 10(b) does not exist, then Plaintiffs' Section 20(a) claim for secondary liability would necessarily fail as well. (Doc. No. 152-1 at 2, n.2.)

[4] The parties made similar arguments regarding loss causation at the pleadings stage as they do now at the summary judgment stage. In its order denying in part and granting in part Defendants' motion to dismiss Plaintiffs' fifth amended complaint, the court found the revelation of fraud standard argued by Defendants "too restrictive and ultimately unpersuasive." (Doc. No. 85 at 21.)

(Doc. No. 167 at 3 (emphasis in original)), Plaintiffs cannot meet the revelation of fraud standard, and thus cannot establish loss causation. However, as the Ninth Circuit recently clarified, the revelation of fraud standard is "a more restrictive test [that] should be understood as fact-specific variants of the basic proximate cause test." Mineworkers' Pension Scheme, 2018 WL 626948, at *3.

Defendants, as the moving party, bear the initial burden to demonstrate the absence of a genuine issue of material fact. Defendants argue that there is no genuine issue of material fact because Plaintiffs have not shown that the market learned of actual fraud by NuVasive. However, the Ninth Circuit does not require that fraud be affirmatively revealed to the market to prove loss causation. See Mineworkers' Pension Scheme, 2018 WL 626948, at *1 ("a general proximate cause test . . . is the proper test" for loss causation); Lloyd, 811 F.3d at 1210 ("loss causation is simply a variant of proximate cause"). As a result, Defendants have not met their burden for summary judgment, and the burden does not shift to Plaintiffs to demonstrate specific facts showing that there is a genuine issue for trial. Accordingly, Defendants' motion for summary judgment on the issue of loss causation is DENIED.[5]

## II. Defendants' Motion to Exclude Dr. Nye's Testimony

Defendants' arguments for excluding Dr. Nye's expert testimony echo their motion for summary judgment. Because Dr. Nye does not provide or rely on evidence that the market learned that fraudulent conduct <u>actually</u> occurred at NuVasive, Defendants contend that "Dr. Nye's loss causation and damages opinions are unreliable, lack foundation,

---

[5] Defendants also argue that Plaintiffs cannot rely on the materialization-of-the-risk approach to loss causation to survive summary judgment. (Doc. No. 152-1 at 17–19.) While Defendants once again observe, correctly, that the Ninth Circuit has not adopted this approach to loss causation, see Nuveen, 730 F.3d at 1122 n.5, the court has already addressed why there does not appear to be any impediment to using the approach here. (See Doc. No. 69 at 27.) The remainder of Defendants' arguments against the materialization-of-the-risk approach hinge on the revelation of fraud standard for loss causation. As the court has already explained, that is not the standard in this circuit.

8

contradict established Ninth Circuit law, and should be excluded because they are inadmissible." (Doc. No. 154-1 at 2.) According to Defendants, "Dr. Nye should have sought to determine whether the fraud or fraudulent practices alleged by Plaintiffs were ever revealed to the market and what impact, if any, that had." (Id. at 9.) In sum, Defendants use this motion to exclude testimony as another opportunity to argue for the revelation of fraud standard for loss causation.

Plaintiffs argue that "event studies [like that of Dr. Nye] assist the trier of fact by assessing whether, and to what extent, the release of certain information caused a stock price to fall; they are not intended to and do not assess fraud." (Doc. No. 161 at 3.)

The use of an event study is often necessary to provide an evidentiary basis for a reasonable jury to determine the existence of loss causation and damages. See In re Imperial Credit Indus., Inc. Sec. Litig., 252 F. Supp. 2d 1005, 1014 (C.D. Cal. 2003), aff'd sub nom. Mortensen v. Snavely, 145 F. App'x 218 (9th Cir. 2005) (granting summary judgment in favor of the defendants because the plaintiffs' expert's report was "deficient for failure to provide an 'event study' or similar analysis"). Here, Dr. Nye conducted a standard event study via regression analysis evaluating analyst and news reports regarding the July 30, 2013 10Q disclosure of the OIG investigation, the announcement of Lukianov's resignation on April 1, 2015, NuVasive's announcement about its agreement in principle with the DOJ on April 29, 2015, and NuVasive and the DOJ's respective announcements about the settlement in late July 2015. Dr. Nye not only looked at the effect these disclosures had on NuVasive's stock price, but also measured the relationship between NuVasive's stock returns and (1) changes in market-wide factors that would be expected to impact all stocks; and (2) changes in industrywide factors that would be expected to impact stocks in the medical device industry. (Nye Report ¶ 88.) In doing so, Dr. Nye "isolate[d] NuVasive's stock price response to Company-specific news during the Class Period." (Doc. No. 161 at 13.)

As discussed above, the revelation of fraud standard for which Defendants argue is too restrictive and not required in the Ninth Circuit. Therefore, Dr. Nye's purported failure

to determine that Defendants' alleged fraud was affirmatively revealed to the market does not render his testimony inadmissible. Accordingly, the court DENIES Defendants' motion to exclude Dr. Nye's testimony.[6]

### III. Defendants' Objections and Motion to Strike Exhibits

On October 16, 2017, Defendants filed an objection and motion to strike Exhibits 8 through 20 to the Michele S. Carino's Declaration in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and Motion to Exclude the Testimony of Dr. Nye ("Carino Declaration"). (Doc. No. 168.)

#### A. Exhibit 8

Exhibit 8 of the Carino Declaration is a copy of the settlement agreement between the DOJ and NuVasive. Defendants argue that Exhibit 8 is "not relevant to the issue of loss causation and also constitutes inadmissible hearsay" because Plaintiffs offer it to prove the truth of the allegations asserted by the DOJ within the settlement. (Doc. No. 168 at 2.) Defendants also argue that the settlement is an offer to compromise that cannot be offered to prove liability per Federal Rule of Evidence 408.

Plaintiffs are not required to prove revelation of fraud to establish loss causation; therefore, Defendants' relevancy argument fails. Because the court did not rely on Exhibit 8 in ruling on these motions, Defendant's motion to strike Exhibit 8 is DENIED as moot, without prejudice, as the admissibility of Exhibit 8 may be addressed at trial.

#### B. Exhibits 9, 11, 12, 13, 14, 15, 16, 17, 18, and 19

Exhibits 9, 11, 12, 13, 14, 15, 16, 17, 18, and 19 of the Carino Declaration contain internal NuVasive documents. Because the documents were never disclosed to the public or investors, Defendants argue that they are not relevant to the issue of loss causation, which Defendants contend requires the fraud be revealed to the market. Defendants'

---

[6] Defendants also argue that Dr. Nye's damages opinions should be excluded "because they are wholly predicated on his unreliable and inadmissible loss causation opinion." (Doc. No. 154-1 at 19.) Because Dr. Nye's loss causation opinion is admissible, this argument fails.

motion to strike with regards to these exhibits is DENIED because Plaintiffs are not required to prove revelation of fraud to establish loss causation. Moreover, to the extent the documents would have been relevant to the court's rulings on the pending motions, they arguably constitute party admissions.

### C. Exhibit 10

Exhibit 10 of the Carino Declaration is a memo and correspondence by government attorneys concerning their investigation of NuVasive. Defendants assert that it is not relevant to the issue of loss causation because it was never disclosed to the public, and thus cannot constitute a corrective disclosure. Moreover, Defendants argue that the statements in Exhibit 10 constitute inadmissible hearsay. Defendants' motion to strike with regard to Exhibit 10 is DENIED as moot for the reasons previously stated throughout this order. This ruling is without prejudice to the exhibit's admissibility at trial should the matter need to be addressed at that time.

### D. Exhibit 20

Exhibit 20 of the Carino Declaration is a copy of a qui tam complaint filed by Relator Kevin Ryan against NuVasive for violations of the False Claims Act and Anti-Kickback Statute. This qui tam action was settled as part of the DOJ settlement with NuVasive. Because the complaint was filed under seal and not revealed to the public, Defendants argue that it is irrelevant to the issue of loss causation. Defendants also argue that it constitutes inadmissible hearsay. Because Plaintiffs are not required to prove revelation of fraud to establish loss causation, Defendants' motion to strike with regard to Exhibit 20 is DENIED as moot.

///
///
///

## CONCLUSION

For the foregoing reasons, the court denies Defendants' motions for summary judgment and to exclude the testimony of Dr. Nye. The court also denies Defendants' motion to strike Exhibits 8 through 20 of the Carino Declaration.

IT IS SO ORDERED.

DATED: February 1, 2018

JEFFREY T. MILLER
United States District Judge