**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy (CSB# 134180)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
E-mail: info@glancylaw.com
lglancy@glancylaw.com

***Liaison Counsel for Plaintiffs***
[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAD MAUSS, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>                              Plaintiffs<br><br>                    v.<br><br>NUVASIVE, INC., ALEXIS V. LUKIANOV, KEVIN C. O'BOYLE, and MICHAEL J. LAMBERT,<br><br>                              Defendants. | Case No.: 13-cv-02005-JM<br><br>**CLASS ACTION**<br><br>Judge: Hon. Jeffrey T. Miller<br>Courtroom: 5D<br>Hearing Date:  April 30, 2018<br>Time: 10:00 a.m. |

## NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on April 30, 2018 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Jeffrey T. Miller, United States District Judge for the Southern District of California, located at 221 West Broadway, San Diego, California 92101, Courtroom 5D, Lead Plaintiff Brad Mauss and plaintiff Daniel Popov (collectively, "Plaintiffs") will, and do, move this Court, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3), and 23(g), for an Order: (1) preliminarily approving the proposed settlement set forth in the Stipulation of

Settlement dated March 23, 2018 (the "Stipulation"); (2) appointing Strategic Claims Services as Settlement Administrator; (3) approving the proposed form and manner of disseminating notice to the Class; (4) setting deadlines for the dissemination of notice, the submission of proofs of claim and requests for exclusion, the filing of objections, and the filing of Plaintiffs' motion for final approval of the Settlement and Class Counsel's application for attorneys' fees and expenses; and (5) setting a date for the final approval hearing.

This Motion is based on the following memorandum of points and authorities; the Stipulation and exhibits thereto (filed herewith); the accompanying Proposed Preliminary Approval Order (filed herewith); the Court's file in this action, and any additional evidence or argument that the Court may request.

Dated: March 23, 2018

Respectfully submitted,

**POMERANTZ LLP**

*/s/Jeremy A. Lieberman*
Jeremy A. Lieberman
Michele S. Carino
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
          mcarino@pomlaw.com

*Lead Counsel for Plaintiffs*

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy (CSB# 134180)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Liaison Counsel for Plaintiffs*

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................... 1

II.  FACTUAL BACKGROUND ..................................................................... 2

III. PROCEDURAL HISTORY ....................................................................... 3

IV. THE SETTLEMENT ............................................................................... 6

V.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
     APPROVAL .......................................................................................... 6

    A.   Standards for Preliminary Approval.......................................... 6

    B.   The Proposed Settlement Merits a Presumption of Fairness...................... 7

    C.   The Proposed Settlement Recovery Falls Within the Range of Possible
        Approval ............................................................................ 10

        1.   The Strength of Plaintiffs' Case and Risk, Expense, Complexity, and
             Likely Duration of Further Litigation ............................... 10

        2.   The Amount Offered in Settlement ................................. 12

        3.   The Extent of Discovery Completed and Stage of the Proceedings 13

        4.   The Experience and Views of Counsel ........................... 15

VI. THE PROPOSED NOTICE PROGRAM IS APPROPRIATE............................ 15

VII. THE PROPOSED SCHEDULE .............................................................. 17

VIII.     CONCLUSION ...................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acosta v. Trans Union, LLC,*
243 F.R.D. 377 (C.D. Cal. 2007) ...........................................................7

*Browning v. Yahoo! Inc.,*
2007 U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007) ...........................13, 14

*Carson v. Am. Brands, Inc.,*
450 U.S. 79 (1981) ...........................................................7

*Churchill Vill., L.L.C. v. GE,*
361 F.3d 566 (9th Cir. 2004) ...........................................................10

*Class Plaintiffs v. Seattle,*
955 F.2d 1268 (9th Cir. 1992) ...........................................................7

*D'Amato v. Deutsche Bank,*
236 F.3d 78 (2d Cir. 2001) ...........................................................9

*Deaver v. Compass Bank*, No. 13-cv-00222-JSC,
2015 WL 4999953,
2015 U.S. Dist. LEXIS 111170 (N.D. Cal. Aug. 21, 2015) ...........................7

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ...........................................................6

*In re Am. Apparel S'holder Litig.,*
2014 U.S. Dist. LEXIS 184548 (C.D. Cal. Jul. 28, 2014) ...........................13, 14

*In re Celera Corp. Secs. Litig.*, No. 5:10-cv-02604-EJD,
2015 U.S. Dist. LEXIS 157408 (N.D. Cal. Nov. 20, 2015) ...........................11, 17

*In re Cylink Sec. Litig.,*
274 F. Supp. 2d 1109 (N.D. Cal. 2003) ...........................................................9

*In re Heritage Bond Litig.,*
2005 U.S. Dist. LEXIS 13555 ...........................................................13

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007)............................................................ 13

*In re Painewebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997).................................................................... 15

*In re Rite Aid Corp.*,
   146 F. Supp. 2d at 715 .................................................................................. 13

*In re Vivendi Universal, S.A., Sec. Litig.*, No. 02 CIV. 5571 RJH,
   2012 WL 362028 (S.D.N.Y. Feb. 6, 2012), *reconsideration denied*,
   861 F. Supp. 2d 262 (S.D.N.Y. 2012).......................................................... 10

*Kirkorian v. Borelli*,
   695 F. Supp. 446 (N.D. Cal. 1988).......................................................... 8, 15

*Knight v. Red Door Salons, Inc.*, No. 08-01520 SC,
   2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009).................................. 13

*Lloyd v. CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016) ........................................................................ 11

*Mineworkers' Pension Scheme, et al., v. First Solar Inc., et al.*,
   881 F.3d 750 (9th Cir. 2018) ........................................................................ 11

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ...................................................................................... 17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .......................................................... 7, 10, 15

*Pacific Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) .......................................................................... 15

*Rannis v. Recchia*,
   380 F. App'x 646 (9th Cir. 2010)................................................................... 17

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009) .......................................................................... 6

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) .......................................................................... 10

*True v. American Honda Motor Co.*,
   749 F. Supp. 2d 1052 (C.D. Cal. 2010)......................................................... 14

1

<u>**Statutes**</u>

15 U.S.C. § 78u-4(a)(7) ........................................................................ 16

False Claims Act ................................................................................... 3

FOIA ................................................................................................... 13

Private Securities Litigation Reform Act ............................................. 16

<u>**Rules**</u>

Federal Rule of Civil Procedure 23 ................................................. *passim*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.     INTRODUCTION

Lead Plaintiff Brad Mauss and additional named plaintiff Daniel Popov (collectively, "Plaintiffs"), on behalf of themselves and the Class,[1] are pleased to present, for the Court's preliminary approval, a $7.9 million cash settlement resolving all claims in this Litigation (the "Settlement"), as set forth in the Stipulation of Settlement dated March 23, 2018 (the "Stipulation"). Plaintiffs respectfully request that the Court initiate the approval process by entering an order, substantially in the form filed herewith (the "Preliminary Approval Order"): (1) preliminarily approving the proposed Settlement as set forth in the Stipulation; (2) appointing Strategic Claims Services as Claims Administrator; (3) approving the proposed form and manner of disseminating notice to the Class; (4) setting deadlines for the dissemination of notice, the submission of proofs of claim and requests for exclusion, the filing of objections, and the filing of Plaintiffs' motion for final approval of the Settlement and Class Counsel's application for attorneys' fees and expenses; and (5) setting a date for the final approval hearing.

The proposed $7.9 million Settlement is not only fair, reasonable, and adequate, but is also an excellent result. As set forth in more detail below, the proposed Settlement provides the Class with a range of approximately 23% to 34% of reasonably recoverable damages—significantly better than the historical norm for settlements in securities class actions. *See, e.g.*, Laarni Bulan, et al., Cornerstone Research, *Securities Class Action Settlements: 2016 Review and Analysis*, at 7 (2017), *available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2016-Review-and-Analysis (noting that the median securities class-action settlement in 2016 was for 2.5% of estimated damages). Moreover, Plaintiffs and their counsel have a thorough understanding of the strengths

---

[1] Capitalized terms are defined consistent with the Stipulation of Settlement dated March 23, 2018, annexed as Exhibit 1 to the Declaration of Michele S. Carino, dated March 23, 2018 ("Carino Decl."), filed herewith.

and weaknesses of their claims, including the potential limitations on damages and recovery. The Settlement was reached after more than four years of litigation, including (1) an extensive investigation conducted by Class Counsel; (2) the preparation of detailed pleadings, including the Sixth Amended Complaint; (3) contentious motion practice with respect to each of Defendants' motions to dismiss; (4) months of discovery, including review and analysis of over two hundred thousand pages of documents, preparation and exchange of expert reports, and a total of twenty-six fact and expert witness depositions; (5) class certification and related discovery, including depositions of Plaintiffs and expert witnesses; (6) extensive consultations with experts to evaluate potential damages and complex regulatory and compliance issues; (7) the preparation and exchange of formal mediation statements and exhibits; and (8) extensive, vigorous arm's-length settlement negotiations, including two formal mediation sessions conducted by Robert A. Meyer, Esq. of JAMS.

While Plaintiffs believe the merits of the case are strong, the proposed Settlement is an excellent result and is in the best interests of the Class in light of the risks and costs of litigating this Litigation through trial and post-trial proceedings. Accordingly, Plaintiffs request preliminary approval so that notice of the proposed Settlement may be disseminated to the Class.

## II.    FACTUAL BACKGROUND

This is a federal securities class action against NuVasive, Inc. ("NuVasive" or the "Company"), and the Company's former CEO, Alexis V. Lukianov, and former CFO, Michael J. Lambert (collectively, the "Defendants"). NuVasive is a medical device company focused on developing surgical products and procedurally integrated solutions for the spine. ¶2.[2]  Plaintiffs allege that throughout the Class Period, Defendants unlawfully inflated NuVasive's stock price by making materially false or

---

[2] Citations to "¶ __" refer to paragraphs in the Sixth Amended Class Action Complaint (the "Complaint"), filed October 26, 2016. (Dkt. 105).

misleading statements and/or failing to disclose material facts concerning, *inter alia*, the Company's compliance with healthcare fraud and abuse laws, including the False Claims Act and Anti-Kickback Statute.  *See*, *e.g.*, ¶¶ 6, 14, 47, 256, 293.  Among other things, Plaintiffs allege that Defendants employed numerous sales and marketing practices that exposed the Company to an increased risk of regulatory enforcement and related litigation.  ¶ 69.

As set forth in the Complaint, the truth regarding Defendants' misstatements and omissions began to be revealed on July 30, 2013, when the Company disclosed that it received a subpoena from the Office of the Inspector General of the U.S. Department of Health and Human Services ("OIG") "in connection with an investigation into possible false or otherwise improper claims submitted to Medicare and Medicaid." ¶ 337.  On this news, NuVasive's securities declined $3.28 per share, or over 12%, to close at $22.84 per share on July 31, 2013.

On July 30, 2015, NuVasive announced that the Company agreed to settle the OIG investigation and a related whistleblower lawsuit for $13.5 million, plus fees. ¶343.  Plaintiffs and Class members allege they were harmed when the true extent of risk associated with Defendants' compliance issues was revealed.

## III.   PROCEDURAL HISTORY

This action was commenced on August 28, 2013 by Plaintiff Daniel Popov. (Dkt. 1).  On December 27, 2013, the Court appointed Plaintiff Brad Mauss as Lead Plaintiff and Pomerantz LLP as Lead Counsel.  (Dkt. 15).

Lead Plaintiff filed amended pleadings on February 13, 2014 (Dkt. 22), December 23, 2014 (Dkt. 39), and February 23, 2015 (Dkt. 47).  While Defendants' Motion to Dismiss the Fourth Amended Complaint was pending (Dkt. 49-51), the Court requested that the parties submit supplemental briefing on the issue of loss causation.  (Dkt. 59).

On August 28, 2015, the Court held that the Fourth Amended Complaint

adequately alleged falsity and scienter, but granted Defendants' motion to dismiss with leave to amend to incorporate new factual and loss causation allegations. (Dkt. 69). Lead Plaintiff filed the Fifth Amended Complaint on September 11, 2015. (Dkt. 70). On July 12, 2016, following Defendants' Motion to Dismiss and the submission of supplemental authority and further briefing on loss causation, the Court, *inter alia*, denied Defendants' Motion to Dismiss and sustained the complaint.[3] (Dkt. 85).

On October 26, 2016, Lead Plaintiff filed the Sixth Amended Complaint, in order to add Daniel Popov as an additional named Plaintiff. (Dkt. 105). Plaintiffs subsequently moved to certify this Litigation as a class action in accordance with Federal Rule of Civil Procedure 23. (Dkt. 106).

Discovery commenced, and the parties exchanged document requests and interrogatories and began producing documents on a rolling basis. Plaintiffs were deposed in connection with their motion for class certification, as were experts for both Plaintiffs and Defendants, respectively.

On March 22, 2017, the Court granted Plaintiffs' motion for class certification and certified the following Class:

> All persons other than defendants who purchased or otherwise acquired NuVasive, Inc. ("NuVasive" or the "Company") common stock between October 22, 2008 and July 30, 2013 (the "Class Period"), inclusive. Excluded from the Class are any parties who are or have been Defendants in this litigation, the present and former officers and directors of NuVasive and any subsidiary thereof, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any current or former Defendant has or had a controlling interest.

(Dkt. 128).[4] Defendants filed a Petition for Permission to Appeal under Federal Rule of Civil Procedure 23(f), which was denied by the United States Court of Appeals for the Ninth Circuit on August 15, 2017.

---

[3] The claims against defendant O'Boyle were dismissed without leave to amend.

[4] There are no differences between the litigation class certified by this Court on March 22, 2017 and the settlement Class eligible to participate in this Settlement. *See* Stipulation at ¶1.4 (Carino Decl. Ex. 1).

Discovery remained ongoing, with depositions of fact and expert witnesses continuing through September 2017.  In total, over two hundred thousand pages of documents were produced; expert reports and rebuttal reports were exchanged; and over twenty fact witnesses and four expert witnesses were deposed.

On September 8, 2017, Defendants filed motions for summary judgment and to exclude the testimony of Plaintiffs' expert on the issue of loss causation. (Dkt. 152-155).

On October 19, 2017, the parties participated in a mediation session with Robert A. Meyer, Esq. at JAMS.  Prior to the mediation, the parties submitted comprehensive mediation statements setting forth the strengths and weaknesses of their case. The mediation session was not successful.

On October 23, 2017, at oral argument on Defendants' pending motions, the Court reset the schedule for pretrial proceedings and continued the trial date to April 9, 2018, finding that the outcome of the Ninth Circuit's decision in *Mineworkers' Pension Scheme, et al., v. First Solar Inc., et al.*, Case No. 15-17282, could affect its ruling on the loss causation standard to be applied in deciding the motions.

On February 1, 2018, following the Ninth Circuit's ruling in *Mineworkers' Pension Scheme, et al., v. First Solar Inc., et al.*, the Court denied Defendants' motions for summary judgment and to exclude the testimony of Plaintiffs' expert. (Dkt. 193).

On February 9, 2018, Defendants filed motions *in limine* in preparation for trial.  (Dkt. 214-237).

On February 13, 2018, the parties participated in another mediation session conducted by Mr. Robert Meyer.  The parties, with Mr. Meyer's assistance, reviewed the strengths and weaknesses of their cases, respectively, and exchanged counter-proposals throughout the day.  Ultimately, after extensive negotiation, the parties agreed to settle the Litigation for $7.9 million.

## IV.    THE SETTLEMENT

Under the terms of the Settlement, Defendants will cause $7.9 million (the "Settlement Amount") to be paid into an escrow account maintained by Huntington National Bank. Class Counsel believes that this immediate cash recovery provides a substantial benefit to the Class. The proposed Notice of Proposed Class Action Settlement (the "Notice") informs Class Members of the Settlement terms and affords an opportunity to request exclusion from the Class or to object to the Settlement, Plan of Allocation, and/or request for attorneys' fees and expenses. The Notice will be mailed to the address of each Class Member (as identified in NuVasive's transfer records), as well as to institutional investors and banks and brokerage firms that usually maintain custodial accounts. The Summary Notice of Proposed Class Action Settlement (the "Publication Notice") will be published on a national business newswire. A copy of the Notice, Publication Notice, Proof of Claim and Release Form ("Proof of Claim"), and Stipulation will also be posted on a website maintained by the Settlement Administrator.

## V.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

At the Settlement Hearing, the Court will have before it extensive papers submitted in support of approval of the proposed Settlement and will be asked to make a determination as to whether the Settlement is fair, reasonable, and adequate under all of the circumstances surrounding the litigation of this Litigation. At this juncture, however, Plaintiffs request only preliminary approval of the Settlement.

### A.        Standards for Preliminary Approval

"Fed. R. Civ. P. 23(e) requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In evaluating a proposed class-action settlement, courts in the Ninth Circuit "put a good deal of stock in [class-action settlements that are] the product of arms-length, non-collusive, negotiated

resolution." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). More explicitly, the Supreme Court has cautioned that in reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). This is consistent with the broader "strong judicial policy that favors settlements," particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* 2 H. Newberg & A. Conte, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The three-step process for approval of a class action settlement is: (1) preliminary approval; (2) dissemination of notice to the class; and (3) a settlement approval hearing where class members may be heard regarding the fairness, adequacy, and reasonableness of the settlement. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). This procedure serves the dual function of safeguarding class members' procedural due process rights and enabling the court to fulfill its role as the guardian of the class members' interests. *See Newberg on Class Actions* § 11.25. Plaintiffs respectfully request that the Court take the first step in the process and grant preliminary approval to the Settlement.

### B.    The Proposed Settlement Merits a Presumption of Fairness

"To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (cited in *Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 WL 4999953, at *6, 2015 U.S. Dist. LEXIS 111170, at *20 (N.D. Cal. Aug. 21, 2015)). Accordingly:

1
2
3
4
5
6

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

7
8

Manual for Complex Litigation (Third) § 30.41 (1995).

9
10
11
12
13

Here, the proposed Settlement merits a presumption of fairness because it has no obvious deficiencies and the settlement recovery falls within the range of possible approval. Indeed, it is both procedurally and substantively fair—it is the product of arm's-length negotiations among well-informed and experienced counsel following more than four years of vigorous litigation, and it provides the Class with an excellent recovery.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Additionally, Class Counsel, Pomerantz LLP and Liaison Counsel, Glancy Prongay & Murray LLP, are highly experienced in federal securities class actions and had a thorough understanding of the strengths and weaknesses of the parties' respective positions before agreeing to settle. "The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement." *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988). This was a hard-fought case, involving extensive briefing on multiple motions to dismiss; a voluminous documentary record; a contested fight for class certification, followed by Defendants' Petition to the Ninth Circuit Pursuant to Federal Rule of Civil Procedure 23(f); and hotly-contested motions for summary judgment and to exclude expert testimony, accompanied by with an even more voluminous documentary record. Over two hundred thousand  pages of documents have been produced, and the parties have taken a total of twenty-eight depositions, including the depositions of Plaintiffs.

Settlement negotiations included two all-day mediation sessions on October 17, 2017 and February 13, 2018 before nationally regarded mediator Robert A. Meyer, Esq. of JAMS. In advance of these sessions, the parties exchanged detailed mediation statements addressing liability and damages. During the mediation sessions, both sides made adversarial presentations about the merits of Plaintiffs' claims and the defenses to those claims. The negotiations were at all times hard-fought and at arm's length, and they produced a result that the parties believe to be in their respective best interests. The arm's-length nature of the settlement negotiations and the involvement of an experienced mediator supports the conclusion that the Settlement is fair and was achieved free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Cylink Sec. Litig.*, 274 F. Supp. 2d 1109, 1112 (N.D. Cal. 2003) ("oversight of the settlement negotiations" by former Magistrate Judge "provides every indication that those discussions were conducted at arms length"). Class Counsel thus had a thorough understanding of the action and of the strengths and weaknesses of the parties' respective positions, and has determined that the Settlement is in the best interests of the Class, especially considering the expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings.

In addition, the Settlement has no obvious deficiencies. It provides a substantial cash recovery to the Class, and there is no preferential treatment to Plaintiffs or any other Class Members. The proposed Plan of Allocation (as set forth in the Notice) was developed by a damages expert in consultation with Class Counsel and provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid claims.

### C.       The Proposed Settlement Recovery Falls Within the Range of Possible Approval

The Settlement also fares well in light of the applicable factors used in evaluating class-action settlements for final approval. These factors include: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004). The factors are non-exclusive and not all need be shown. *Id.* at 576 n.7. In fact, "one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 525; *see, e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

### 1.       The Strength of Plaintiffs' Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Plaintiffs believe their case is strong, the "risk, expense, complexity, and likely duration of further litigation" were substantial. Securities-fraud cases are inherently complex and frequently take an exceptionally long time to litigate.  Indeed, because such cases often involve significant post-trial motions and appeals, even a trial may not mark an end to the proceedings. *See, e.g., In re Vivendi Universal, S.A., Sec. Litig.*, No. 02 CIV. 5571 RJH, 2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) (noting that, two years after jury verdict in plaintiffs' favor and ten years after the case was filed, shareholders had still received no recovery), *reconsideration denied*, 861 F. Supp. 2d 262 (S.D.N.Y. 2012). In this case, Defendants have denied the allegations and mounted a vigorous defense at every turn, and more than likely would have continued to do so even if Plaintiffs prevailed at trial.  Moreover, the range of aggregate damages – from approximately $23 million to $35 million – limited the Class's potential recovery and made the added expense of trial and appeals especially

disadvantageous. In contrast, the Settlement provides the Class with substantial, certain, and immediate relief, without the delay and expense of further motion practice, trial, and post-trial proceedings and the risk of an uncertain outcome.

At the time of Settlement, Plaintiffs had defeated Defendants' motion for summary judgment and motion to exclude expert testimony concerning loss causation and damages.  The issue of whether Plaintiffs ultimately could prove loss causation based on the initial announcement of a regulatory investigation, followed by post-Class Period "confirming events" had been intensely litigated, but the Ninth Circuit's recent decisions in *Mineworkers' Pension Scheme, et al., v. First Solar Inc., et al.*, 881 F.3d 750 (9th Cir. 2018), and *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200 (9th Cir. 2016), clarified that Plaintiffs articulated a viable theory of loss causation as a matter of law. Nevertheless, Defendants continued to dispute whether subsequent disclosures were actually "confirming" events, and in any event, the calculation of damages remained confined to only one statistically-significant "corrective disclosure" prior to the end of the Class Period.  Thus, while Plaintiffs believed that loss causation would be proven at trial, the complexities of the issue and likelihood of post-trial appeals, coupled with the limitation on damages, increased the risk and expense of further litigation, thereby reducing the amount and likelihood of any recovery by the Class.

Similarly, Plaintiffs believe their case was very strong with respect to falsity and scienter, based in part on the extensive record compiled in discovery and the reasons stated by the Court in denying Defendants' multiple motions to dismiss. However, numerous pre-trial motions concerning an array of evidentiary issues remained outstanding, and Plaintiffs were not assured that certain evidence would ever be presented to a jury at trial.  In addition, conflicting testimony concerning the adequacy of NuVasive's compliance program created the potential for a "battle of the experts," with the attendant possibility that the trier of fact could find Defendants' public statements adequately disclosed the Company's exposure to regulatory risk.

*See, e.g.*, *In re Celera Corp. Secs. Litig.*, No. 5:10-cv-02604-EJD, 2015 U.S. Dist. LEXIS 157408, at *17 (N.D. Cal. Nov. 20, 2015) (considering that a potential "battle of the experts" added to the risk, expense, and complexity of continued litigation).

Therefore, on balance, this factor weighs in favor of preliminary approval of the Settlement.

### 2.    The Amount Offered in Settlement

Plaintiffs' damages are based on one corrective disclosure on July 30, 2013, which resulted in a statistically significant decline of $3.28 per share or approximately 12%, to close at $22.84 per share on July 31, 2013.  Plaintiffs contend that the entire price decline was attributable to the disclosure of new information correcting earlier misrepresentations, and thus recoverable as damages. Assuming Plaintiffs were successful in proving loss causation (which is not a certainty), Plaintiffs' damages expert estimated that aggregate damages resulting from this corrective disclosure ranged from approximately $23 million (utilizing a 80/20 multi-trader model[5]) to $35 million (utilizing a first-in, first-out (FIFO) institutional trader model). Consequently, the $7.9 million Settlement provides a recovery of approximately 23% to 34% of estimated aggregate damages depending on the economic model.  After deducting estimated expenses, administrative costs, and attorneys' fees and Class representative awards (if approved by the Court), the estimated average recovery is approximately $0.13 per share.

---

[5] The proportional 80/20 Multi-Trader Model posits two active traders (e.g., institutions and individuals) with different holdings and propensities to trade.  The so-called "80/20" split between the two sets of traders specifies a large set of "slow" traders (i.e., they hold 80% of shares available, but trade 20% of the volume) and a small set of "fast" traders (i.e., they hold 20% of shares available, but trade 80% of the volume).  This model has been advocated by representative authors from Cornerstone Research, an economic consulting firm frequently engaged by defendants in class action securities litigation.  *See* W. Beaver, et al., *Stock Trading Behavior and Damage Estimation in Securities Cases*, Cornerstone Research Working Paper (1993).

This Settlement, measured against the best-case scenario of damages, is fair, adequate, and reasonable. In comparison, the median securities class-action settlement in 2016 was for 2.5% of the estimated maximum recovery. *See* Laarni Bulan, et al., Cornerstone Research, *Securities Class Action Settlements: 2016 Review and Analysis*, at 7 (2017), *available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2016-Review-and-Analysis.[6] The recovery here far surpasses that benchmark. Moreover, in the event Defendants were able to challenge this corrective disclosure, or otherwise argue that other confounding information also affected the share price on that day, damages could be substantially reduced or eliminated completely. These risks, weighed against an immediate cash recovery, support preliminary approval of the Settlement.

### 3. The Extent of Discovery Completed and Stage of the Proceedings

The extent of discovery completed and stage of the proceedings also support preliminary approval. *See*, *e.g.*, *In re Am. Apparel S'holder Litig.*, 2014 U.S. Dist. LEXIS 184548, *41 (C.D. Cal. Jul. 28, 2014); *Browning v. Yahoo! Inc.*, 2007 U.S. Dist. LEXIS 86266, *34-5 (N.D. Cal. Nov. 16, 2007). This Litigation has been

---

[6] *See also Securities Class Action Settlements 2013 Review and Analysis*, at 8-9 (noting that in 2013, securities settlements overall returned a median of 2.1% of damages, with 4.3% where damages are between $50-124 million); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (approving 6% recovery of maximum damages) (citing *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at **27-28 (average recovery between 2% to 3% of maximum damages)); *In re Rite Aid Corp.*, 146 F. Supp. 2d at 715 (citing studies indicating that the average securities fraud class action settlement since 1995 has resulted in a recovery of 5.5% – 6.2% of estimated losses); *see also Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair"); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149, at *10 (N.D. Cal. Feb. 2, 2009) ("The immediacy and certainty of the settlement award justifies a recovery smaller than the Class Members could seek in the case").

vigorously prosecuted by Plaintiffs for over four years, during which time Plaintiffs, *inter alia*: (1) conducted a detailed investigation, including reviewing publicly-available information regarding Defendants, filing FOIA requests with the FDA and OIG, and interviewing numerous confidential witnesses; (2) defeated multiple motions to dismiss, a motion for summary judgment, and a motion to exclude expert testimony; (3) consulted with, and obtained reports and analysis from, experts regarding loss causation, damages, and regulatory compliance issues; and (4) overcame Defendants' challenges to class certification, including a Rule 23(f) petition, resulting in the Court's certification of the identical Class eligible to participate in the Settlement.

Additionally, the Parties conducted extensive fact and expert discovery, including production and review of over two hundred thousand pages of documents produced by Defendants, Plaintiffs, and their respective experts; twenty-six fact and expert witness depositions; depositions of each of the Plaintiffs; and preparation and exchange of expert reports and expert rebuttal reports. The Parties also drafted mediation statements with annexed exhibits and participated in two mediation sessions with an experienced mediator.  Finally, trial preparation was well-underway at the time the Settlement was reached.

Thus, at this stage of the proceedings, Plaintiffs "are well positioned to assess the strength of this case and the comparative benefits of the proposed [Settlement]." *Yahoo!*, 2007 U.S. Dist. LEXIS 86266 at *35 (granting approval where case was pending for three years, involved discovery and motion practice, and the parties engaged in multiple rounds of mediation); *see also In re Am. Apparel S'holder Litig.*, 2014 U.S. Dist. LEXIS 184548 at *41 (granting approval and finding that "[t]he more discovery that has been completed, the more likely it is that the parties have 'a clear view of the strengths and weaknesses of their cases.'") (internal quotations omitted); *True v. American Honda Motor Co.*, 749 F. Supp. 2d 1052, 1078 (C.D. Cal. 2010) (granting approval where "discovery has been sufficient to permit the parties to enter

into a well-informed settlement"). This factor undoubtedly weighs in favor of preliminary approval.

### 4. The Experience and Views of Counsel

Class Counsel, Pomerantz LLP, and Liaison Counsel, Glancy Prongay & Murray LLP, are highly experienced in federal securities class actions and had a thorough understanding of the strengths and weaknesses of the parties' respective positions before agreeing to settle. As noted above, this was a hard-fought case, involving extensive briefing at both the motion to dismiss and summary judgment stage, particularly on the issue of loss causation.  Class Counsel also conducted an intensive, ongoing investigation while preparing each pleading; prepared and served discovery requests on Defendants; reviewed hundreds of thousands of pages of documents produced; and consulted extensively with experts concerning regulatory compliance, loss causation, and damages.  The strengths and weaknesses of the parties' respective positions were also vetted through mediation with an experienced mediator, Robert A. Meyer, Esq.

Accordingly, Class Counsel's informed determination that the Settlement is in the best interest of the Settlement Class should be afforded significant weight. *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 ("'Great weight' is accorded to the recommendation of counsel . . . because 'parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation'") (citing *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) and *Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)); *see also Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.").

## VI. THE PROPOSED NOTICE PROGRAM IS APPROPRIATE

The parties have negotiated the form of a Notice of Proposed Class Action

Settlement (the "Notice") to be disseminated to the Class to notify them of the terms of the Settlement and of their rights in connection therewith, as well as a Summary Notice of Proposed Class Action Settlement (the "Publication Notice") to be published on a national business newswire.[7] The Notice and Publication Notice have been drafted to comply with the provisions of the Private Securities Litigation Reform Act. *See* 15 U.S.C. § 78u-4(a)(7). The Notice provides detailed information concerning (a) the proposed Settlement; (b) the nature, history, and progress of the Action; (c) the date of the Final Approval Hearing; (d) the proposed Plan of Allocation; (e) the fees and expenses to be sought by Class Counsel; (f) the rights of Class Members, including the procedures for filing a Proof of Claim, requesting exclusion from the Class, or objecting to the Settlement or Plan of Allocation or request for fees and expenses; and (g) how to contact Class Counsel, access the Court's docket, or otherwise learn more about the Action and Settlement.

Under the proposed Preliminary Approval Order, the Settlement Administrator will (1) mail the Notice and Proof of Claim to all purchasers of NuVasive common stock during the Class Period, (2) post the Notice and Proof of Claim to the Settlement Administrator's website, and (3) cause the Publication Notice to be published over Investor's Business Daily and Globe Newswire. The Settlement Administrator will also make additional copies of the Notice available to nominee holders such as brokerage firms who held Company stock. Such nominee holders will be requested to forward copies of the Notice to all beneficial owners of such shares or, alternatively, to provide the Settlement Administrator with their names and addresses so the Settlement Administrator can mail them the Notice directly.

Plaintiffs believe that providing long-form notice by mail, along with

---

[7] The Notice, Publication Notice, and Proof of Claim are attached to the Stipulation as Exhibits B, C, and D (Carino Decl. Ex. 1, *et seq.*). Note that these documents currently contain blanks for dates to be ordered by the Court, which will be filled in with the appropriate dates prior to dissemination.

publishing summary notice by a major business newswire service and posting the Notice and Proof of Claim on the Settlement Administrator's website, is the best notice practicable under the circumstances, is typical of the notice given in other class actions, and satisfies the requirements of Rule 23 and due process. *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (mail to last-known address of class members sufficient); *In re Celera Corp. Sec. Litig.*, No. 5:10-cv-02604-EJD, 2015 U.S. Dist. LEXIS 157408, at *13 (N.D. Cal. Nov. 20, 2015) (mailing notice, publishing summary notice, and posting on settlement-specific website sufficient). Accordingly, the Court should find that the Notice, Publication Notice, and the procedures for dissemination are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

## VII.   THE PROPOSED SCHEDULE

Plaintiffs propose the following schedule of events leading to the Final Approval Hearing as set forth in the Preliminary Approval Order in the form filed with the Court:

| | |
|---|---|
| Deadline for mailing Notice, publication of Publication Notice, and posting of Notice and Stipulation on Settlement website ("Notice Date") | Twenty (20) calendar days after entry of the Preliminary Approval Order |
| Deadline for Plaintiffs to file papers in support of final Settlement approval and Fee and Expense Award | Thirty-four (34) calendar days before the Settlement Hearing |
| Objection Deadline | Seventeen (17) calendar days before the Settlement Hearing |

| Opt-Out Deadline | Ten (10) calendar days before the Settlement Hearing |
|---|---|
| Deadline for Plaintiffs to file reply papers in support of Settlement and Fee and Expense Award and in response to any objections | Seven (7) calendar days before the Settlement Hearing |
| Deadline to submit Proofs of Claim | Five (5) calendar days before the Settlement Hearing |
| Settlement Hearing | _____, 2018 |

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement and enter a Preliminary Approval Order substantially in the form filed herewith.

Dated: March 23, 2018                    Respectfully Submitted,

**POMERANTZ  LLP**

*/s/Jeremy A. Lieberman*
Jeremy A. Lieberman
Michele S. Carino
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
        mcarino@pomlaw.com

*Lead Counsel for Plaintiffs*

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy (CSB# 134180)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Facsimile: (310) 201-9160
Email: info@glancylaw.com

***Liaison Counsel for Plaintiffs***

1

2

## CERTIFICATE OF SERVICE

3

I hereby certify that on March 23, 2018, a copy of the foregoing was filed

4

electronically and served by mail on anyone unable to accept electronic filing.

5

Notice of this filing will be sent by e-mail to all parties by operation of the Court's

6

electronic filing system or by mail to anyone unable to accept electronic filing as

7

indicated on the Notice of Electronic Filing.  Parties may access this filing through

8

the Court's CM/ECF System.

9

*/s/Jeremy A. Lieberman*

10

Jeremy A. Lieberman

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28