**POMERANTZ  LLP**
Jeremy A. Lieberman
Michele S. Carino
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
          mcarino@pomlaw.com
*Lead Counsel for Plaintiffs*

**GLANCY PRONGAY & MURRAY LLP**
LIONEL Z. GLANCY (#134180)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
E-mail: lglancy@glancylaw.com
*Liaison Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAD MAUSS, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>                              Plaintiffs,<br><br>          v.<br><br>NUVASIVE, INC., ALEXIS V. LUKIANOV, KEVIN O'BOYLE, and MICHAEL J. LAMBERT,<br><br>                    Defendants. | Case No.: 13-cv-2005-JM<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Date:  November 19, 2018<br>Courtroom:  5D<br>Time: 10:00 a.m.<br>Judge: Hon. Jeffrey T. Miller |

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

PLEASE TAKE NOTICE that at 10:00 a.m. on November 19, 2018, or as soon thereafter as counsel may be heard, before the Honorable Jeffrey T. Miller, United States District Judge for the Southern District of California, located at 221 West Broadway, San Diego, California 92101, Courtroom 5D, Lead Plaintiff Brad Mauss and plaintiff Daniel Popov (collectively, "Plaintiffs") will move this Court for final approval of the Settlement for $7,900,000 and approval of the proposed plan of allocation of the proceeds of the Net Settlement Fund (the "Plan of Allocation"), as set forth in the Stipulation of Settlement, dated March 23, 2018 (the "Stipulation") (Dkt. 246-2).

This Motion is supported by the incorporated memorandum of points and authorities; the proposed order filed herewith; the Stipulation and exhibits thereto;; the declarations of Michele S. Carino, Jeremy A. Lieberman, Lionel Z. Glancy, Josephine Bravada, Brad Mauss, and Daniel Popov, and exhibits thereto, respectively; Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Awards for Plaintiffs (the "Fee Motion"); the Court's file in this Action; and any other argument or evidence that Lead Counsel may present at the Settlement Fairness Hearing or that the Court may otherwise request.

## STATEMENT OF ISSUES TO BE DECIDED

1.    Whether the preliminarily-approved Settlement for $7,900,000, on the terms and conditions provided for in the Stipulation, is fair, reasonable and adequate to the Class and should be finally approved by the Court;

2.    Whether the Plan of Allocation is fair, reasonable, and adequate;

3.    Whether the Notice satisfies due process and is in compliance with Fed. R. Civ. P. 23(e);

4.    Whether the Judgment should be entered herein; and

5.    To rule upon such other matters as the Court may deem appropriate.

# **TABLE OF CONTENTS**

I.   OVERVIEW OF THE LITIGATION ...............................................................2

II.   THE SETTLEMENT .....................................................................................5

III.   PRELIMINARY APPROVAL AND DISSEMINATION OF NOTICE ......6

IV.   THE SETTLEMENT WARRANTS FINAL APPROVAL...........................8

    A.   Standard .............................................................................................8

    B.   The Settlement Process Was Procedurally Fair ...................................9

    C.   All of the Relevant Factors Employed by Courts in This Circuit Favor Approval of the Proposed Settlement.....................................11

        1.   Strength of Plaintiffs' Case, and the Risk, Expense, Complexity and Likely Duration of Further Litigation...........11

        2.   The Risks of Maintaining Class Action Status Through Trial 14

        3.   The Amount Offered in the Settlement ...................................15

        4.   The Extent of Discovery Completed and the Stage of the Proceedings...............................................................................17

        5.   Experienced Counsel Concur that the Settlement, Which was Negotiated in Good Faith and at Arm's-Length, is Fair, Reasonable, and Adequate.......................................................18

        6.   The Reaction of the Settlement Class Members to the Settlement ................................................................................20

    D.   The Notice Program Satisfied Due Process And Complied With Fed. R. Civ. P. 23(e)...................................................................................20

        1.   The Dissemination Plan Satisfies Due Process .......................21

iv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2.   The Contents of the Notice Satisfy Due Process.....................21

V.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION......22

VI.   CONCLUSION ...........................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aarons v. BMW of N. Am., LLC*, No. 11-cv-7667 (PSG) (CWX),
   2014 WL 4090564 (C.D. Cal. Apr. 29, 2014) ................................................. 14

*Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC,
   2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ................................................ 19

*Browning v. Yahoo! Inc.*,
   2007 U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007) ........................ 17, 18

*Churchill Vill., L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2004) .......................................................................... 11

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ..................................................................... 8, 23

*Colesberry v. Ruiz Food Products, Inc.*, No. CVF 04-5516 AWISMS,
   2006 WL 1875444 (E.D. Cal. June 30, 2006) ................................................ 21

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ............................................................................. 10

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ....................................................................................... 21

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980),
   *aff'd,* 661 F.2d 939 (9th Cir. 1981) .............................................................. 18

*Franks v. Kroger Co.*,
   649 F.2d 1216 (6th Cir. 1981) ........................................................................ 21

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .............................................................. 8, 11, 20

*Hayes v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST,
   2016 U.S. Dist. LEXIS 162120 (N.D. Cal. Nov. 21, 2016) ............................ 12

*In re Am. Apparel S'holder Litig.*,
   2014 U.S. Dist. LEXIS 184548 (C.D. Cal. Jul. 28, 2014) ..........................17, 18

*In re Am. Bank Note Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...............................................................12

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ...............................................................................11

*In re Celera Corp. Secs. Litig.*, No. 5:10-cv-02604-EJD,
   2015 U.S. Dist. LEXIS 157408 (N.D. Cal. Nov. 20, 2015).............................12

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d. Cir. 2001) ...............................................................................17

*In re Cylink Sec. Litig.*,
   274 F. Supp. 2d 1109 (N.D. Cal. 2003) .............................................................10

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004).........................................................................22

*In re Heritage Bond Litig.*,
   2005 U.S. Dist. LEXIS 13555 .............................................................................16

*In re Heritage Bond Litig.*, No. 02-ML-1475 DT,
   2005 WL 1594403 (C.D. Cal. June 10, 2005).....................................13, 19, 22

*In re Immune Response Sec. Litig.*,
   497 F.Supp.2d 1166 (S.D. Cal. 2007) ................................................................12

*In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ 8144 (CM),
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)....................................................10

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...........................................................................8, 20

*In re MicroStrategy, Inc. Sec. Litig.*,
   148 F. Supp. 2d 654 (E.D. Va. 2001) .................................................................23

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) .............................................................16

*In re Oracle Sec. Litig.*, No. C-90-0931-VRW,
  1994 WL 502054 (N.D. Cal. June 18, 1994) .....................................................23

*In re Rite Aid Corp.*,
  146 F. Supp. 2d at 715.........................................................................................16

*In re Vivendi Universal, S.A., Sec. Litig.*, No. 02 Civ 5571 (RJH),
  2012 U.S. Dist. LEXIS 21732 (S.D.N.Y. Feb. 6, 2012) ...................................12

*Kirkorian v. Borelli*,
  695 F. Supp. 446 (N.D. Cal. 1988).......................................................................9

*Knight v. Red Door Salons, Inc.*, No. 08-01520 SC,
  2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009)...................................16

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ..............................................................................11

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ..............................................................................8

*Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ,
  1997 WL 450064 (N.D. Cal. July 18, 1997) ........................................................9

*Lloyd v. CVB Fin. Corp.*,
  811 F.3d 1200 (9th Cir. 2016) ............................................................................13

*Marshall v. Holiday Magic, Inc.*,
  550 F.2d 1173 (9th Cir. 1977)........................................................................21, 22

*Mineworkers' Pension Scheme, et al., v. First Solar Inc., et al.*,
  881 F.3d 750 (9th Cir. 2018) ..............................................................................13

*Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA,
  2013 WL 4610764 (N.D. Cal. Aug. 28, 2013)...................................................18

*Nobles v. MBNA Corp.*, No. C 06-3723 CRB,
  2009 WL 1854965 (N.D. Cal. June 29, 2009) ....................................................13

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ....................................................................8, 9, 16

*Roberti v. OSI Sys., Inc.*, No. CV1309174MWFMRW,
  2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) .......................................................9

*Shames v. Hertz Corp.*, No. 07-CV-2174-MMA WMC,
  2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) ...................................................17

*Silverman v. Motorola, Inc.*, No. 07-cv-4507,
  2012 WL 1597388 (N.D. Ill. May 7, 2012),
  *aff'd,* 739 F.3d 956 (7th Cir. 2013) ................................................................10

*True v. American Honda Motor Co.*,
  749 F. Supp. 2d 1052 (C.D. Cal. 2010).............................................................18

*Vinh Nguyen v. Radient Pharm.*, No. SACV 11-00406 DOC,
  2014 WL 1802293 (C.D. Cal. May 6, 2014)......................................................12

## Statutes

False Claims Act.......................................................................................................2

FOIA ........................................................................................................................17

PSLRA .......................................................................................................................6

Securities Exchange Act of 1934 Section 20(a) and 10(b) ......................................2

## Rules

Federal Rules of Civil Procedure Rule 23........................................................*passim*

Plaintiffs' Motion For Final Approval 13-cv-02005-JM

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiff Brad Mauss and additional named plaintiff Daniel Popov (collectively, "Plaintiffs"), through their undersigned counsel ("Lead Counsel"), submit this memorandum of points and authorities in support of their motion, pursuant to Federal Rule of Civil Procedure 23(e) for final approval of the class action Settlement, as set forth in the Stipulation of Settlement, dated March 23, 2018 (the "Stipulation").[1] (Dkt. 246-2). This Action has been settled for a $7.9 million cash payment, which will inure to the benefit of investors in NuVasive, Inc. ("NuVasive" or the "Company).

The Settlement is not only fair, reasonable, and adequate, but also represents an excellent recovery for the Class.  Plaintiffs and Lead Counsel have a thorough understanding of the strengths and weaknesses of their claims, including the potential limitations on damages and recovery.  The Settlement is the result of Plaintiffs' vigorous prosecution of this Action for over four and a half years, including (i) extensive investigation conducted by Lead Counsel; (ii) the preparation of detailed amended pleadings containing additional allegations as new evidence came to light; (iii) contentious motion practice with respect to Defendants' four motions to dismiss, motion for summary judgment, motions to exclude expert testimony, and motions *in limine*, as well as Plaintiffs' motion for class certification and Defendants' Petition for Permission to Appeal under Federal Rule of Civil Procedure 23(f); (iv) thorough and comprehensive fact and expert discovery, including review and analysis of over 200,000 pages of documents, conduct of over twenty depositions, preparation and exchange of expert reports and expert rebuttal reports, and conduct of expert depositions; (v)

---

[1] Unless otherwise defined, capitalized terms herein have the same meanings attributed to them in the Stipulation.

extensive consultations with experts to evaluate loss causation, market efficiency, and potential damages; (vi) the preparation and exchange of mediation statements; (vii) extensive, vigorous arm's-length settlement negotiations (including two full-day formal mediation sessions as well as extensive interim negotiations) overseen by a national recognized and experienced mediator; and (viii) the preparation of the preliminary and final approval motions and related documents.

Having evaluated the facts and applicable law, and recognizing the risks and expense of continued litigation, Plaintiffs and Lead Counsel respectfully submit that the proposed Settlement is in the best interests of the Class. Before entering into the Settlement, Plaintiffs and Lead Counsel understood the strengths and weaknesses of the claims and defenses and engaged in significant efforts to protect the interests of the Class. Accordingly, Plaintiffs respectfully request final approval of the Settlement as fair, reasonable, and adequate.

## I.   OVERVIEW OF THE LITIGATION[2]

This is a federal securities class action for violations of Section 20(a) and 10(b) of the Securities Exchange Act of 1934 against NuVasive, Alexis V. Lukianov, and Michael J. Lambert (collectively, the "Defendants") on behalf of investors who purchased or otherwise acquired NuVasive securities during the Class Period. Plaintiffs allege that Defendants made false and misleading statements and/or failed to disclose material information concerning NuVasive's compliance with healthcare fraud and abuse laws, including the False Claims Act and Anti-Kickback Statute. Plaintiffs further allege that the true extent of the

---

[2] The factual background and procedurally history is also set forth in the Declaration of Michele S. Carino ("Carino Decl."), filed herewith.

Company's exposure to regulatory risk began to materialize on July 30, 2013, when Defendants announced that the Company received a subpoena from government regulators.  Defendants deny these allegations.

This Action was commenced on August 28, 2013 by Plaintiff Daniel Popov. (Dkt. 1).  On December 27, 2013, the Court appointed Plaintiff Brad Mauss as Lead Plaintiff and Pomerantz LLP as Lead Counsel.  (Dkt. 15).

Lead Plaintiff filed amended pleadings on February 13, 2014 (Dkt. 22), December 23, 2014 (Dkt. 39), and February 23, 2015 (Dkt. 47).  While Defendants' Motion to Dismiss the Fourth Amended Complaint was pending (Dkt. 49-51), the Court requested that the parties submit supplemental briefing on the issue of loss causation.  (Dkt. 59).

On August 28, 2015, the Court held that the Fourth Amended Complaint adequately alleged falsity and scienter, but granted Defendants' motion to dismiss with leave to amend to incorporate new factual and loss causation allegations. (Dkt. 69).  Lead Plaintiff filed the Fifth Amended Complaint on September 11, 2015.  (Dkt. 70).  On July 12, 2016, following Defendants' Motion to Dismiss and the submission of supplemental authority and further briefing on loss causation, the Court, *inter alia*, denied Defendants' Motion to Dismiss and sustained the complaint.[3]  (Dkt. 85).

On October 26, 2016, Lead Plaintiff filed the Sixth Amended Complaint, in order to add Daniel Popov as an additional named Plaintiff.  (Dkt. 105). Plaintiffs subsequently moved to certify this Litigation as a class action in accordance with Federal Rule of Civil Procedure 23.  (Dkt. 106).

Discovery commenced, and the parties exchanged document requests and

---

[3] The claims against defendant O'Boyle were dismissed without leave to amend.

interrogatories and began producing documents on a rolling basis.  Plaintiffs were deposed in connection with their motion for class certification, as were experts for both Plaintiffs and Defendants, respectively.

On March 22, 2017, the Court granted Plaintiffs' motion for class certification and certified the following Class:

> All persons other than defendants who purchased or otherwise acquired NuVasive, Inc. ("NuVasive" or the "Company") common stock between October 22, 2008 and July 30, 2013 (the "Class Period"), inclusive. Excluded from the Class are any parties who are or have been Defendants in this litigation, the present and former officers and directors of NuVasive and any subsidiary thereof, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any current or former Defendant has or had a controlling interest.

(Dkt. 128).[4]  Defendants filed a Petition for Permission to Appeal under Federal Rule of Civil Procedure 23(f), which was denied by the United States Court of Appeals for the Ninth Circuit on August 15, 2017.

Discovery remained ongoing, with depositions of fact and expert witnesses continuing through September 2017.  In total, over two hundred thousand pages of documents were produced; expert reports and rebuttal reports were exchanged; and over twenty fact witnesses and four expert witnesses were deposed.

On September 8, 2017, Defendants filed motions for summary judgment and to exclude the testimony of Plaintiffs' expert on the issue of loss causation. (Dkt. 152-155).

---

[4] There are no differences between the litigation class certified by this Court on March 22, 2017 and the settlement Class eligible to participate in this Settlement. *See* Stipulation at ¶1.4 (Dkt. 246-2).

On October 19, 2017, the parties participated in a mediation session with Robert A. Meyer, Esq. at JAMS.  Prior to the mediation, the parties submitted comprehensive mediation statements setting forth the strengths and weaknesses of their case. The mediation session was not successful.

On October 23, 2017, at oral argument on Defendants' pending motions, the Court reset the schedule for pretrial proceedings and continued the trial date to April 9, 2018, finding that the outcome the Ninth Circuit's decision in *Mineworkers' Pension Scheme, et al., v. First Solar Inc., et al*., Case No. 15-17282, could affect its ruling on the loss causation standard to be applied in deciding the motions.

On February 1, 2018, following the Ninth Circuit's ruling in *Mineworkers' Pension Scheme, et al., v. First Solar Inc., et al*., the Court denied Defendants' motions for summary judgment and to exclude the testimony of Plaintiffs' expert. (Dkt. 193).

On February 9, 2018, Defendants filed motions *in limine* in preparation for trial.  (Dkt. 214-237).

On February 13, 2018, the parties participated in another mediation session conducted by Mr. Robert Meyer.  The parties, with Mr. Meyer's assistance, reviewed the strengths and weaknesses of their cases, respectively, and exchanged counter-proposals throughout the day.  Ultimately, after extensive negotiation, the parties agreed to settle the Litigation for $7.9 million.

## II.    THE SETTLEMENT

The Stipulation memorializes the agreement between the parties to fully and finally settle the Action and, among other things, fully releases all Released Claims against all Defendants with prejudice, in return for $7.9 million in cash.

While Plaintiffs and Lead Counsel believe the Class has valid claims

against Defendants, they faced significant risks in ultimately proving all elements of their claims.  Defendants denied any liability or damages and would have had numerous opportunities to convince the Court, a jury, or appellate courts that Plaintiffs failed to prove some or all of the elements of their claims.  Depending on the outcome of Defendants' numerous motions *in limine*, Plaintiffs may also have been prevented from presenting certain critical evidence substantiating their claims at trial, which may have resulted in either a reduced or zero recovery for the Class.  The Settlement eliminates these risks and provides the Class with a certain total recovery of $7.9 million in cash.  In light of the obstacles to recovery and the substantial time and expense that trial and potential appeals would require, Plaintiffs and Lead Counsel believe the Settlement is a favorable result for the Class, and provides a fair and reasonable resolution of the claims against Defendants.

### III.   PRELIMINARY APPROVAL AND DISSEMINATION OF NOTICE

On June 11, 2018, the Court preliminarily approved the Settlement and Plan of Allocation and directed that notice be disseminated to Class Members (the "Preliminary Approval Order").  (Dkt. 250).  Pursuant to the Preliminary Approval Order, the Claims Administrator disseminated a total of 90,632 claim packets, including the detailed "Notice of Pendency and Settlement of Class Action," ('the "Notice") and "Proof of Claim and Release" form.  *See* Declaration of Josephine Bravata, dated October 8, 2018 ("Bravata Decl.") at ¶ 6.[5]

The Court-approved Notice included all the information required by Rule 23(c)(2)(B) or the PSLRA or that was otherwise necessary for Class Members to

---

[5] Carino Decl. Ex. C.

make an informed decision regarding the proposed Settlement, including: (i) an explanation of the nature of the Action and the claims asserted; (ii) the definition of the Class; (iii) the Settlement amount of $7.9 million; (iv) how to file a claim, and a description of the Plan of Allocation; (v) the parties' reasons for proposing the Settlement; (vi) that Lead Counsel would apply for an award of attorneys' fees not to exceed 30% of the Settlement Fund, litigation expenses not to exceed $900,000.00 and an award to the two class representatives, not to exceed $20,000 in total, for their reasonable costs and expenses; (vii) how to opt out of the Class; (viii) how to object to the Settlement, Plan of Allocation, or the requested attorneys' fees or expenses; (ix) how to contact Lead Counsel with any questions; (x) the dates and deadlines for certain Settlement-related events; and (xi) the binding effect of a judgment on Settlement Class members. Bravata Decl. Ex A.

The Claims Administrator first mailed the Notice and Proof of Claim to the 98 individuals and organizations identified on NuVasive's shareholder transfer records, as well as to 768 banks and brokerage companies, 621 mutual funds, and other third-party nominees that frequently purchase and hold securities on behalf of others. *Id.* ¶¶ 4-5. The Notice directed nominees to either forward copies of the Notice to the beneficial owners or to provide the addresses of such beneficial owners to the Claims Administrator so the Claims Administrator could send them directly.  In total, the Claims Administrator mailed 90,632 Notices and Proof of Claim forms to potential Class members or nominees. *Id.* ¶ 6.

In addition, the Court-approved Summary Notice was published over *Investors' Business Daily* and *Globe Newswire* on July 2, 2018. *Id*. ¶ 10. The Proof of Claim and Release Form, Notice, Stipulation, and Preliminary Approval Order were also posted on the Claim Administrator's website, along with the relevant Court-ordered deadlines. *Id*. ¶ 7.  The deadline to object to any aspect of the Settlement is October 26, 2018, and the deadline to request exclusion must be

postmarked by November 2, 2018. To date, there have been no objections and no requests for exclusion. *Id*. ¶¶ 12-13.

## IV.   THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.   Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses." In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Thus, in assessing the Settlement under Rule 23(e), the Court must only intrude upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit to the extent necessary to reach a reasoned judgment that (a) the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that (b) the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

There is no prescribed settlement approval procedure to be followed in this Circuit.  Rather, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because [the trial judge] is exposed to the litigants, and their strategies, positions and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). To avoid excessive intrusion into the parties' compromise, the court considers the settlement taken as a whole, rather than its individual component parts, and examines it for overall fairness. *Officers for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 628 (9th Cir. 1982). Consequently, a settlement hearing is "not to be turned into a trial or rehearsal for trial on the

merits," nor should the proposed settlement "be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625. Rather, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Roberti v. OSI Sys., Inc.*, No. CV1309174MWFMRW, 2015 WL 8329916, at *3 (C.D. Cal. Dec. 8, 2015) (*quoting Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997)).

As explained below, the Settlement was reached after extensive investigation and litigation by experienced counsel on both sides, and then only after protracted arms-length negotiations. Under these circumstances, the Settlement has the presumption of fairness.

## B.    The Settlement Process Was Procedurally Fair

"The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement." *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988).  Here, the Settlement is the product of arm's-length negotiations among counsel with extensive experience in securities class-action litigation, following vigorous litigation, including motion practice and a carefully conducted investigation.  Class Counsel, Pomerantz LLP ("Pomerantz") and Glancy Prongay & Murray LLP ("GPM"), are highly experienced in federal securities class actions and had a thorough understanding of the strengths and weaknesses of the parties' respective positions before agreeing to settle.  This was a hard-fought case, extending over four and a half years, involving contentious motion practice and thorough and comprehensive fact and expert discovery.  Lead Counsel has carefully reviewed over 200,000 pages of documents produced by Defendants and government regulators; conducted over

twenty-five depositions of fact and expert witnesses; and prepared and exchanged initial and rebuttal expert reports on the issues of loss causation, damages, market efficiency, and healthcare fraud and abuse compliance programs.

Lead Counsel possessed a thorough understanding of the Action and of the strengths and weaknesses of the parties' respective positions and has determined that the Settlement is in the best interests of the Class, especially considering the expense, risks, difficulties, delays, and uncertainties of litigation, including trial and likely appeals. *See*, *e.g.*, Carino Decl. ¶¶ 38-39. Settlement negotiations proceeded over a period of several months and included the exchange of detailed mediation statements addressing liability and damages. The mediation process was led by a nationally-respected mediator, Robert A. Meyer, Esq. of JAMS. The negotiations were at all times hard-fought and at arms-length, and they produced a result that the parties believe to be in their respective best interests. The arms-length nature of the settlement negotiations and the involvement of an experienced mediator support the conclusion that the Settlement is fair and was achieved free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009) (finding "no reason to doubt that the Settlement is procedurally fair" when "negotiations were conducted with the assistance of Judge Weinstein, a highly regarded mediator with extensive experience in securities litigation"); *In re Cylink Sec. Litig.*, 274 F. Supp. 2d 1109, 1112 (N.D. Cal. 2003) ("oversight of the settlement negotiations" by former Magistrate Judge "provides every indication that those discussions were conducted at arms length"); *Silverman v. Motorola, Inc.*, No. 07-cv-4507, 2012 WL 1597388, at *3 (N.D. Ill. May 7, 2012) (approving settlement and describing Judge Weinstein as "a

nationally-recognized and highly-respected mediator"), *aff'd*, 739 F.3d 956 (7th Cir. 2013). Moreover, the mediator supports the Settlement, and it has none of the indicia of collusion identified by the Ninth Circuit. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) ("subtle signs" of collusion include a "disproportionate distribution of the settlement" between the class and class counsel, "a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," or an agreement for "fees not awarded to revert to defendants rather than be added to the class fund").

### C. All of the Relevant Factors Employed by Courts in This Circuit Favor Approval of the Proposed Settlement

To evaluate the substantive fairness of a settlement, courts in the Ninth Circuit consider the *Hanlon* factors: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026; *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (referring to these as the "*Hanlon* factors"). The factors are non-exclusive and need not all be shown. *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 576 n.7 (9th Cir. 2004).

### 1. Strength of Plaintiffs' Case, and the Risk, Expense, Complexity and Likely Duration of Further Litigation

While Plaintiffs believe their case is strong, they recognize that the "risk, expense, complexity, and likely duration of further litigation" were substantial. Securities-fraud cases are inherently complex and frequently take an exceptionally long time to litigate, in part because they often involve significant post-trial

motions and appeals.  *See, e.g., In re Vivendi Universal, S.A., Sec. Litig.*, No. 02 Civ. 5571 (RJH), 2012 U.S. Dist. LEXIS 21732, at *19 (S.D.N.Y. Feb. 6, 2012) (noting that, two years after jury verdict in plaintiffs' favor and ten years after the case was filed, shareholders had still received no recovery).

Based in part on the extensive record compiled in discovery, Plaintiffs believe their case was strong with respect to falsity and scienter, two elements of Plaintiffs' 10(b) claims.  Scienter is, however, notoriously difficult to prove in securities-fraud cases.  *See, e.g., Hayes v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 U.S. Dist. LEXIS 162120, at *16 (N.D. Cal. Nov. 21, 2016); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001); *Vinh Nguyen v. Radient Pharm.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) ("any claim requiring proof of an intentional mental state presents challenges."); *In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166, 1172 (S.D. Cal. 2007) ("The Court also recognized that the issues of scienter and causation are complex and difficult to establish at trial" and, as a result, "concludes that the settlement is a prudent course."). Further complicating matters in this case was the fact that at the time of Settlement, numerous pre-trial motions seeking to exclude critical evidence remained outstanding, and Plaintiffs were not assured that they could sustain their burden of proof if they were prevented from using this evidence at trial.   In addition, conflicting testimony concerning the adequacy of NuVasive's compliance program created the potential for a "battle of the experts," with the attendant possibility that the trier of fact could find Defendants' public statements adequately disclosed the Company's exposure to regulatory risk.  See, e.g., *In re Celera Corp. Secs. Litig.*, No. 5:10-cv-02604-EJD, 2015 U.S. Dist. LEXIS 157408, at *17 (N.D. Cal. Nov. 20, 2015) (considering that a potential "battle of

the experts" added to the risk, expense, and complexity of continued litigation).

Likewise, at the time of Settlement, Plaintiffs had defeated Defendants' motion for summary judgment and motion to exclude expert testimony concerning loss causation and damages. The issue of whether Plaintiffs ultimately could prove loss causation based on the initial announcement of a regulatory investigation, followed by post-Class Period "confirming events" had been intensely litigated, but the Ninth Circuit's recent decisions in *Mineworkers' Pension Scheme, et al., v. First Solar Inc., et al*., 881 F.3d 750 (9th Cir. 2018), and *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200 (9th Cir. 2016), clarified that Plaintiffs articulated a viable theory of loss causation as a matter of law. Nevertheless, Defendants continued to dispute whether subsequent disclosures were actually "confirming" events, and in any event, the calculation of damages remained confined to only one statistically-significant "corrective disclosure" prior to the end of the Class Period. Thus, while Plaintiffs believed that loss causation would be proven at trial, the complexities of the issue and likelihood of post-trial appeals, coupled with the limitation on damages, increased the risk and expense of further litigation, thereby reducing the amount and likelihood of any recovery by the Class.

Regardless of the certainty or uncertainty of the ultimate outcome, there is no question that further litigation against the Defendants would have been expensive, complex and protracted. *See*, *e.g.*, *Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (finding a proposed settlement proper "given the inherent difficulty of prevailing in class action litigation"); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005) (class actions have a well-deserved reputation as being the most complex). Accordingly, the likely duration and

expense of further litigation also support a finding that the Settlement is fair, reasonable, and adequate.  A more favorable outcome than the current Settlement is highly uncertain at best.  *See Aarons v. BMW of N. Am., LLC*, No. 11-cv-7667 (PSG) (CWX), 2014 WL 4090564, at *11 (C.D. Cal. Apr. 29, 2014) ("Aggressively litigating class certification, fending off summary judgment, and taking this case to trial would consume significant time and resources. Moreover, there is a considerable risk that Plaintiffs would come away from this case empty-handed.").  After trial, any appeal would be resolved by the Ninth Circuit, one of the busiest circuit courts in the nation.  Thus, the present value of a certain recovery now, as opposed to the mere chance for a greater one years later, supports approval of a settlement that eliminates the expense and delay of continued litigation and the risk that the Class could receive no recovery.

## 2.   The Risks of Maintaining Class Action Status Through Trial

With respect to class certification, Defendants did not contend that NuVasive securities did not trade on an efficient market.  However, Defendants likely would have raised this argument at trial in an attempt to preclude any presumption of class-wide reliance on the stock price.  Even if Plaintiffs proved market efficiency, Defendants would have had the opportunity to rebut this presumption by proving that the alleged misstatements had no impact on the Company's stock price.  *See Halliburton,* 134 S. Ct. 2398.

Furthermore, Defendants identified both Plaintiffs as witnesses on their pre-trial disclosures and likely would have called them to testify at trial, seeking once again to challenge their adequacy to continue to serve as Class Representatives.  While Plaintiffs believe that they would have prevailed on this issue, it nevertheless created uncertainty.  Thus, although the risks that Plaintiffs would be unable to maintain class certification through trial were somewhat low, this factor

still weighs in favor of final approval.

### 3.   The Amount Offered in the Settlement

Plaintiffs' damages are based on one corrective disclosure on July 30, 2013, which resulted in a statistically significant decline of $3.28 per share or approximately 12%, to close at $22.84 per share on July 31, 2013.   Plaintiffs contend that the entire price decline was attributable to the disclosure of new information correcting earlier misrepresentations, and thus recoverable as damages. Assuming Plaintiffs were successful in proving loss causation (which is not a certainty), Plaintiffs' damages expert estimated that aggregate damages resulting from this corrective disclosure ranged from approximately $23 million (utilizing a 80/20 multi-trader model[6]) to $35 million (utilizing a first-in, first-out (FIFO) institutional trader model). Consequently, the $7.9 million Settlement provides a recovery of approximately 23% to 34% of estimated aggregate damages depending on the economic model.   After deducting estimated expenses, administrative costs, and attorneys' fees and Class representative awards (if approved by the Court), the estimated average recovery is approximately $0.13 per share.

This Settlement, measured against the best-case scenario of damages, is

---

[6] The proportional 80/20 Multi-Trader Model posits two active traders (e.g., institutions and individuals) with different holdings and propensities to trade. The so-called "80/20" split between the two sets of traders specifies a large set of "slow" traders (i.e., they hold 80% of shares available, but trade 20% of the volume) and a small set of "fast" traders (i.e., they hold 20% of shares available, but trade 80% of the volume).   This model has been advocated by representative authors from Cornerstone Research, an economic consulting firm frequently engaged by defendants in class action securities litigation.   *See* W. Beaver, et al., *Stock Trading Behavior and Damage Estimation in Securities Cases*, Cornerstone Research Working Paper (1993).

fair, adequate, and reasonable. In comparison, the median securities class-action settlement in 2016 was for 2.5% of the estimated maximum recovery. *See* Laarni Bulan, et al., Cornerstone Research, *Securities Class Action Settlements: 2016 Review and Analysis*, at 7 (2017), *available at* https://www.cornerstone.com/ Publications/Reports/Securities-Class-Action-Settlements-2016-Review-and-Analysis.[7] The recovery here far surpasses that benchmark. Moreover, in the event Defendants were able to challenge this corrective disclosure, or otherwise argue that other confounding information also affected the share price on that day, damages could be substantially reduced or eliminated completely.

The $7.9 million Settlement secures an amount certain immediately for Class Members. Lead Counsel negotiated a settlement representing a percentage of the alleged loss that exceeded many of those above-referenced commendable settlements where the courts awarded even greater fees. The Settlement plainly meets this Circuit's requirements for approval. *See, e.g., Officers for Justice,* 688

_____

[7] *See also Securities Class Action Settlements 2013 Review and Analysis*, at 8-9 (noting that in 2013, securities settlements overall returned a median of 2.1% of damages, with 4.3% where damages are between $50-124 million); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (approving 6% recovery of maximum damages) (citing *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at **27-28 (average recovery between 2% to 3% of maximum damages)); *In re Rite Aid Corp.*, 146 F. Supp. 2d at 715 (citing studies indicating that the average securities fraud class action settlement since 1995 has resulted in a recovery of 5.5% – 6.2% of estimated losses); *see also Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair"); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149, at *10 (N.D. Cal. Feb. 2, 2009) ("The immediacy and certainty of the settlement award justifies a recovery smaller than the Class Members could seek in the case").

F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair"); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 240 (3d. Cir. 2001) (typical recoveries in securities class actions range from 1.6% to 14% of total losses). And the Settlement offers an immediate recovery – rather than the chance of a recovery years down the road. *Shames v. Hertz Corp.*, No. 07-CV-2174-MMA WMC, 2012 WL 5392159, at *5 (S.D. Cal. Nov. 5, 2012) (immediacy of recovery weighs in favor of settlement).

### 4. The Extent of Discovery Completed and the Stage of the Proceedings

The extent of discovery completed and stage of the proceedings also support preliminary approval. *See*, *e.g.*, *In re Am. Apparel S'holder Litig.*, 2014 U.S. Dist. LEXIS 184548, *41 (C.D. Cal. Jul. 28, 2014); *Browning v. Yahoo! Inc.*, 2007 U.S. Dist. LEXIS 86266, *34-5 (N.D. Cal. Nov. 16, 2007). This Litigation has been vigorously prosecuted by Plaintiffs for over four years, during which time Plaintiffs, *inter alia*: (1) conducted a detailed investigation, including reviewing publicly-available information regarding Defendants, filing FOIA requests with the FDA and OIG, and interviewing numerous confidential witnesses; (2) defeated multiple motions to dismiss, a motion for summary judgment, and a motion to exclude expert testimony; (3) consulted with, and obtained reports and analysis from, experts regarding loss causation, damages, and regulatory compliance issues; and (4) overcame Defendants' challenges to class certification, including a Rule 23(f) petition, resulting in the Court's certification of the identical Class eligible to participate in the Settlement.

Additionally, the Parties conducted extensive fact and expert discovery, including production and review of over two hundred thousand pages of documents produced by Defendants, Plaintiffs, and their respective experts;

twenty-six fact and expert witness depositions; depositions of each of the Plaintiffs; and preparation and exchange of expert reports and expert rebuttal reports. The Parties also drafted mediation statements with annexed exhibits and participated in two mediation sessions with an experienced mediator.  Finally, trial preparation was well-underway at the time the Settlement was reached.

Accordingly, Plaintiffs "are well positioned to assess the strength of this case and the comparative benefits of the proposed [Settlement]." *Yahoo!*, 2007 U.S. Dist. LEXIS 86266 at *35 (granting approval where case was pending for three years, involved discovery and motion practice, and the parties engaged in multiple rounds of mediation).  This sufficiently-developed stage of proceedings weighs in favor of approval.  *See, e.g., In re Am. Apparel S'holder Litig.*, 2014 U.S. Dist. LEXIS 184548 at *41 (granting approval and finding that "[t]he more discovery that has been completed, the more likely it is that the parties have 'a clear view of the strengths and weaknesses of their cases.'") (internal quotations omitted); *True v. American Honda Motor Co.*, 749 F. Supp. 2d 1052, 1078 (C.D. Cal. 2010) (granting approval where "discovery has been sufficient to permit the parties to enter into a well-informed settlement"); *Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at *7 (N.D. Cal. Aug. 28, 2013) (settlement reached "after the parties engaged in discovery, litigated a motion to dismiss, and participated in mediation that involved an extensive exchange of information, multiple briefings, and six all-day mediation sessions" supported "the conclusion that the parties' decision to settle was a fully informed one").

### 5. Experienced Counsel Concur that the Settlement, Which was Negotiated in Good Faith and at Arm's-Length, is Fair, Reasonable, and Adequate

"[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis*

*v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981); accord *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *6 (C.D. Cal. Nov. 18, 2014). And "a presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery." *Heritage*, 2005 WL 1594403, at *9 (citing *Manual for Complex Litigation* (Third) § 30.42 (1995) (internal quotations omitted). This case has been litigated by experienced and well-respected counsel on both sides. Defendants' counsel, DLA Piper and Paul Hastings LLP, are highly-respected law firms that are widely recognized among the nation's preeminent securities litigation practices.  Lead Counsel and Liaison Counsel are highly experienced in federal securities class actions and had a thorough understanding of the strengths and weaknesses of the parties' respective positions before agreeing to settle.  Pomerantz is one of the oldest plaintiff-side securities litigation firms in the country, with decades of experience litigating securities class actions nationwide, including within this Circuit and District. *See* Lieberman Decl. Ex. D.[8] GPM similarly has decades of experience in complex class action litigation and is recognized as a top plaintiffs' securities law firm.  *See* Glancy Decl. Ex. A.[9]

Further, the Settlement was overseen by a highly-respected and experienced mediator in the area of securities class action litigation, Robert A. Meyer, Esq. of JAMS.  The Parties engaged in hard-fought negotiations over the course of two full-day in-person mediation sessions, and held further discussions telephonically

---

[8] The Declaration of Jeremy A. Lieberman, dated October 8, 2018 ("Lieberman Decl.") is annexed to the Carino Declaration as Exhibit A.

[9] The Declaration of Lionel Z. Glancy, dated October 4, 2018 ("Glancy Decl.") is annexed to the Carino Declaration as Exhibit B.

and by e-mail. The negotiations were in good faith and at arm's-length. Though professional, the discussions were zealous, and even heated; there was no collusion. Carino Decl. ¶¶ 35-36. As a result of these long and hard-fought negotiations the parties agreed to the settle this Action for $7.9 million. Only after these protracted and good faith negotiations did the parties finally agree to all the terms of the settlement reflected in the Stipulation.

Lead Counsel therefore recommends that the Court approve the Settlement because it is fair, reasonable, and adequate, and in the best interests of the Settlement Class. *Id.* ¶¶ 38-39.

### 6. The Reaction of the Settlement Class Members to the Settlement

Pursuant to the Court's Preliminary Approval Order, 90,632 Notices were sent to Class Members to date and Summary Notice was transmitted over the *Investor's Business Daily* and *Globe Newswire* on July 2, 2018. Bravata Decl. ¶ 10. The deadline to file an objection is October 26, 2018, and the deadline to submit a request for exclusion is November 2, 2018. *Id.* ¶¶ 12-13. To date, no objections have been received to the Settlement, Plan of Allocation, or any other aspect of the Settlement. *Id.* ¶ 10. In addition, there has been no request for exclusion from the Settlement. *Id.* ¶ 9. "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness" *Hanlon,* 150 F.3d at 1027; *see also Mego Fin. Corp.*, 213 F.3d at 458.

### D. The Notice Program Satisfied Due Process And Complied With Fed. R. Civ. P. 23(e)

Due process requires that the class members be given notice of a proposed settlement and their right to be heard at the fairness hearing. There are no rigid

rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements. Rather, to satisfy due process and comply with Fed. R. Civ. P. 23(e), notice for the approval of a class settlement by class members must only fairly apprise them of the subject matter of the suit, the proposed terms of the settlement, and the members' opportunity to be heard. *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177 (9th Cir. 1977); *see also Torrisi*, 8 F.3d at 1374-75. Notice is "adequate if it may be understood by the average class member." 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.53 at 167.

### 1.    The Dissemination Plan Satisfies Due Process

There is no statutory or due process requirement that all class members receive actual notice by mail or other means. Rather, "individual notices must be provided to those Class Members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974). "Rule 23(e) gives the Court 'virtually complete' discretion as to the manner of service of settlement notice." *Colesberry v. Ruiz Food Products, Inc.*, No. CVF 04-5516 AWISMS, 2006 WL 1875444, at *7 (E.D. Cal. June 30, 2006) (citing *Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981)).  Here the notice was disseminated via individual mailing of over 90,632 printed notices, published over a national business internet newswire, and posted on a dedicated website established by the Claims Administrator. Bravata Decl. ¶¶ 6-7. This notice easily satisfies the due process requirement.

### 2.    The Contents of the Notice Satisfy Due Process

The Ninth Circuit provides that proper notice should provide: (1) the material terms of the proposed settlement; (2) disclosure of any special benefit to the class representatives; (3) disclosure of the attorneys' fees provisions; (4) the time and place of the final approval hearing and the method for objecting to the

settlement; (5) and explanation regarding the procedures for allocating and distributing the settlement funds; and (6) the address and phone number of class counsel and the procedures for making inquiries. *See Marshall*, 550 F.2d at 1178.

Here, the Court-approved Notice provided all of the required information: a description of the $7.9 million Gross Settlement Fund and Plan of Allocation of the Net Settlement Fund; Lead Counsel's intent to apply for a fee award in an amount not to exceed 30% of the Gross Settlement Fund for settlement of the class claims and an amount not to exceed $900,000 for reimbursement of expenses; the request for an award to Plaintiffs Brad Mauss and Daniel Popov in the amount of $10,000 each; and the contact information for Lead Counsel and the Claims Administrator, including how to make inquiries to both. Bravata Decl. Ex. A. The Notice also included the date, time, and place of the fairness hearing, described how to object, and informed Class Members that any objection must be postmarked or received by the Court no later than October 26, 2018. *Id*. Furthermore, the Court-approved Notice adequately informed class members of the impact of the Settlement, including release of claims against the Released Persons for any Class Members who do not opt out. *Id*.

In sum, broad dissemination of the Court-approved Notice satisfied every conceivable requirement of due process. Accordingly, the Settlement should be granted final approval.

## V.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

"Approval of a settlement, including a plan of allocation, rests in the sound discretion of the court." *Heritage*, 2005 WL 1594403, at *11. "When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational' basis." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004).

22

"To warrant approval, the plan of allocation must also meet the standards by which the partial settlement was scrutinized – namely, it must be fair and adequate." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 668 (E.D. Va. 2001) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992)). "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable… It is also reasonable to allocate more of the settlement to class members with stronger claims on the merits." *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994). Therefore, as noted in *MicroStrategy*, 148 F. Supp. 2d at 669:

> [A] plan of allocation . . . fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, [even as it] sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.

The proposed Plan of Allocation herein was fully described in the Notice sent to the Class, at pages 10-15. Bravata Decl. Ex. A. It was formulated by Lead Counsel, in consultation with an independent damages expert, with the goal of reimbursing Class Members in a fair and reasonable manner. Each similarly situated authorized claimant will receive a *pro rata* share of the Net Settlement Fund (*i.e.*, $7.9 million plus interest, less attorneys' fees and expenses). The Plan of Allocation does not discriminate among Class Members.  *See* Carino Decl. ¶¶ 52-57.

In short, the Plan of Allocation has a rational basis and fairly compensates Class Members, and this Court should approve it.

## VI.   CONCLUSION

Because the Settlement and the Plan of Allocation are fair, reasonable, and adequate, the Court should approve all three.

23

Dated: October 8, 2018                    Respectfully Submitted,


                                          **POMERANTZ LLP**

                                          */s/Jeremy A. Lieberman*
                                          Jeremy A. Lieberman
                                          Michele S. Carino
                                          600 Third Avenue, 20th Floor
                                          New York, New York 10016
                                          Telephone: (212) 661-1100
                                          Facsimile: (212) 661-8665
                                          Email: jalieberman@pomlaw.com
                                                    mcarino@pomlaw.com

                                          *Lead Counsel for Plaintiffs*


                                          **GLANCY   PRONGAY   &   MURRAY
                                          LLP**
                                          Lionel Z. Glancy (CSB# 134180)
                                          1925 Century Park East, Suite 2100
                                          Los Angeles, CA 90067
                                          Telephone: (310) 201-9150
                                          Facsimile: (310) 201-9160
                                          Email: info@glancylaw.com

                                          ***Liaison Counsel for Plaintiffs***

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I, Jeremy A. Lieberman, hereby declare under penalty of perjury as follows:

I am an attorney at Pomerantz LLP located at 600 Third Avenue, 20th Floor, New York, New York 10016. I am over the age of eighteen.

On October 8, 2018, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system: **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I certify under penalty of perjury under the laws of the United States of America that the foregoing in true and correct.

Executed on October 8, 2018.

/s/ Jeremy A. Lieberman

Plaintiffs' Motion For Final Approval 13-cv-02005-JM