**POMERANTZ LLP**
Jeremy A. Lieberman (pro hac vice)
Michele S. Carino
600 Third Avenue
New York, NY 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
mcarino@pomlaw.com
*Lead Counsel for Plaintiffs*

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy (#134180)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
info@glancylaw.com
lglancy@glancylaw.com
*Liaison Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAD MAUSS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> NUVASIVE, INC., ALEXIS V. LUKIANOV, KEVIN O'BOYLE, and MICHAEL J. LAMBERT, <br><br> Defendants. | Case No. 13-cv-2005-JM (JLB) <br><br> CLASS ACTION <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS FOR PLAINTIFFS** <br><br> Date:  November 19, 2018 <br> Time:  10:00 a.m. <br> Place:  Courtroom 5D <br> Judge:  Hon. Jeffrey T. Miller |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 19, 2018 at 10:00 a.m. (or as soon thereafter as the matter may be heard), at a Settlement Hearing at the United States District Court for the Southern District of California, in the Courtroom of the Honorable Jeffrey T. Miller, located at 221 West Broadway, San Diego, California 92101, Lead Plaintiff Brad Mauss and plaintiff Daniel Popov (collectively, "Plaintiffs") will move the Court for an order (1) granting an award of attorneys' fees and authorizing reimbursement of expenses; and (2) granting compensatory awards to the Class Representatives.  The requested fee award, reimbursement of expenses, and Plaintiff compensatory awards are warranted under the fee-setting and expense reimbursement criteria applicable to common fund and Private Securities Litigation Reform Act ("PSLRA") cases.

This Motion is supported by the incorporated memorandum of points and authorities; the proposed order filed herewith; the Stipulation of Settlement, dated March 23, 2018 (Dkt. 246-2) (the "Stipulation") and exhibits thereto; the declarations of Michele S. Carino, Jeremy A. Lieberman, Lionel Z. Glancy, Josephine Bravada, Brad Mauss and Daniel Popov, and exhibits thereto, respectively; Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation ("Final Approval Motion"); the Court's file in this Action; and any other argument or evidence that Lead Counsel may present at the Settlement Fairness Hearing or that the Court may otherwise request.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Plaintiffs' request for an award of attorneys' fees in the amount of 30% of the Settlement Fund, payable to Lead Counsel from the Settlement Fund, should be granted.

2.      Whether Lead Counsel's out-of-pocket expenses of $802,695.08 were reasonable and necessarily incurred to achieve the benefit obtained and should be reimbursed from the Settlement Fund.

3.      Whether Plaintiffs' requests for awards of $7,500 each for Plaintiffs Brad Mauss and Daniel Popov in reimbursement for their reasonable costs and expenses directly relating to their representation of the Class, should be granted and paid from the Settlement Fund.

# <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

INTRODUCTION ...............................................................................1

BACKGROUND ................................................................................3

    1.    Factual Allegations, Procedural History and Settlement
        Negotiations ..........................................................................3

    2.    Specific Efforts of Lead Counsel.................................................3

ARGUMENT ....................................................................................6

  A.    LEAD COUNSEL SHOULD BE AWARDED ATTORNEYS' FEES
       OF 30% OF THE SETTLEMENT AMOUNT FROM THE
       COMMON FUND...................................................................6

    1.    It Is Appropriate to Award a Reasonable Percentage of the
        Common Fund as Attorneys' Fees..............................................6

    2.    The Requested Attorneys' Fees Are Reasonable When Viewed
        Against Ninth Circuit Norms ....................................................9

    3.    Relevant Ninth Circuit Factors Support the Requested Fee
        Award ................................................................................11

        a)    Lead Counsel Achieved a Favorable Result for the
            Settlement Class...........................................................12

        b)    The Risks of Litigation Were High ...............................13

        c)    The Contingent Nature of the Fee and the Financial
            Burden Carried By Counsel............................................15

        d)    The Skill Required and the Quality of the Work............17

        e)    A Lodestar Cross-Check Shows the Fee Request Is
            Reasonable .................................................................18

        f)    The Settlement Class's Reaction to the Fee Request Was
            Overwhelmingly Positive ..............................................20

  B.    LEAD COUNSEL'S EXPENSES SHOULD BE AWARDED AS
       REASONABLE AND NECESSARY TO PROSECUTE THE
       LITIGATION AND OBTAIN THE SETTLEMENT ......................21

  C.    THE REQUESTED AWARDS TO PLAINTIFFS SHOULD BE
       APPROVED .......................................................................23

CONCLUSION ................................................................................24

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

## **Cases**

4

5

*Abrams v. Lightolier Inc.*,
   50 F.3d 1204 (3d Cir. 1995) ....................................................................21

6

7

*Alvarado v. Nederend*, No. 08-cv-01099 OWW DLB,
   2011 WL 1883188 (E.D. Cal. May 17, 2011) ......................................22

8

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) .................................................................16

9

10

*Backman v. Polaroid Corp.*,
   910 F.2d 10 (1st Cir. 1990).......................................................................16

11

12

*Barbosa v. Cargill Meat Sols. Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ............................................................10

13

14

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985)....................................................................................9

15

16

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988),
   *aff'd,* 899 F.2d 21 (11th Cir. 1990)......................................................17

17

18

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
   603 F.2d 263 (2d Cir. 1979) .....................................................................16

19

20

*Blum v. Stenson*,
   465 U.S. 886 (1984).....................................................................................7

21

22

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980).....................................................................................6

23

24

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*,
   8 F.3d 722 (10th Cir. 1993) ......................................................................21

25

26

*Brown v. Phillips Petroleum Co.*,
   838 F.2d 451 (10th Cir. 1988) ...................................................................7

27

28

*Buccellato v. AT&T Operations, Inc.*, No. 10-cv-00463,
   2011 U.S. Dist. LEXIS 111361 (N.D. Cal. June 30, 2011)...........................9, 20

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ......................................................................7

*Central Railroad & Banking Co. of Ga. v. Pettus*,
   113 U.S. 116 (1885)........................................................................................8

*Cullen v. Whitman Med. Corp.*,
   197 F.R.D. 136 (E.D. Pa. 2000).....................................................................20

*Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC,
   2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016) ..........................18, 20

*Fischel v. Equitable Life Assurance Soc'y of UnitedStates*,
   307 F.3d 997 (9th Cir. 2002) .......................................................................18

*Fogarazzo v. Lehman Bros.*, No. 03 CIV 5194 (SAS),
   2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ..................................................14

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000) .........................................................................18

*Harman v. Lyphomed, Inc.*,
   945 F.2d 969 (7th Cir. 1991) .........................................................................7

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ...........................................................................21

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)......................................................................................12

*Hopkins v. Stryker Sales Corp.*, No. 11-cv-02786,
   2013 U.S. Dist. LEXIS 16939 (N.D. Cal. Feb. 6, 2013) ...............................20

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) ......................................................................16

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ...............................................................8

*In re Am. Apparel, Inc. S'holder Litig.*, No. 10-cv-06352 MMM,
   2014 WL 10212865 (C.D. Cal. July 28, 2014)........................................9, 14, 18

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ...........................................................7, 9

*In re BP p.l.c. Sec. Litig.*,
   852 F. Supp. 2d 767 (S.D. Tex. 2012) .................................................14

*In re Businessland Sec. Litig.*, No. C-90-20476-RFP,
   1991 WL 427887 (N.D. Cal. June 14, 1991)......................................21

*In re Cendant Corp. Sec. Litig.*,
   404 F.3d 173 (3d Cir. 2005) ...............................................................9

*In re Combustion, Inc.*,
   968 F. Supp. 1116 (W.D. La. 1997) ...................................................11

*In re Dairy Farmers of Am., Inc.*,
   80 F. Supp. 3d 838 (N.D. Ill. 2015) ...................................................10

*In re Equity Funding Corp. of Am. Sec. Litig.*,
   438 F. Supp. 1303 (C.D. Cal. 1977) ...................................................18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED),
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)......................................14

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ...............................................................7

*In re Heritage Bond Litig.*,
   233 F. App'x 627 (9th Cir. 2007) .......................................................7

*In re Heritage Bond Litig.*, No. 02-ML-1475 DT.,
   2005 WL 1594403 (C.D. Cal. June 10, 2005)....................................16

*In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCX),
   2005 WL 1594389 (C.D. Cal. June 10, 2005)...................14, 17, 20

*In re High-Tech Emp. Antitrust*,
   2015 U.S. Dist. LEXIS 118052 ..........................................................23

*In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09CV1088 BTM (KSC),
   2014 WL 6473044 (S.D. Cal. Nov. 18, 2014)....................................22

*In re Ikon Office Sols., Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)...................................................14, 18

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007)....................................................12, 17, 21

*In re JDS Uniphase Corp. Securities Litigation*, No. C-02-1486-CW,
    2007 WL 4788556 (N.D. Cal. Nov. 27, 2007). ......................................16

*In re Magsafe Apple Power Adapter Litig.*, No. 09-CV-01911-EJD,
    2015 WL 428105 (N.D. Cal. Jan. 30, 2015)............................................22

*In re Media Vision Tech. Sec. Lit.*,
    913 F. Supp. 1362 (N.D. Cal. 1996)........................................................22

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000), *as amended* (June 19, 2000) ..............10

*In re Mercury Interactive Corp. Securities Litigation*,
    618 F.3d 988 (9th Cir. 2010) ....................................................................21

*In re Nuvelo, Inc. Sec. Litig.*, No. 07-cv-04056 CRB,
    2011 WL 2650592 (N.D. Cal. July 6, 2011) ..........................................10

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008)........................................*passim*

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ....................................................................21

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ......................................................................10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) ......................................................8

*In re Pub. Serv. Co. of N.M.*, No. 91-0536M,
    1992 WL 278452 (S.D. Cal. July 28, 1992) ............................................17

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005)..................................................................11

*In re Rite Aid Corp.*,
    146 F. Supp. 2d at 715 ................................................................................13

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*,
    56 F.3d 295 (1st Cir. 1995)..........................................................................7

*In re Vivendi Universal, S.A., Sec. Litig.*,
   123 F. Supp. 3d 424 (S.D.N.Y. 2015) ................................................................16

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985),
   *aff'd,* 798 F.2d 35 (2d. Cir. 1986).................................................................18

*In re Wash. Pub. Power Supply Sys. Sec. Litig. ("WPPSS")*,
   19 F.3d 1291 (9th Cir. 1994) ...............................................6, 11, 13, 15

*In re World Trade Ctr. Disaster Site Litig.*,
   754 F.3d 114 (2d Cir. 2014) ...............................................................7

*Johnston v. Comerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996) ...............................................................7

*Knight v. Red Door Salons, Inc.*, No. 08-01520 SC,
   2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) ...................................13

*Knight v. Red Door Salons, Inc.*, No. 08-01520 SC,
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ...................................................10, 17

*Milligan v. Toyota Motor Sales, U.S.A., Inc.*, No. C 09-05418 RS,
   2012 WL 10277179 (N.D. Cal. Jan. 6, 2012).....................................................22

*Miltland Raleigh-Durham v. Myers*,
   840 F. Supp. 235 (S.D.N.Y. 1993) ......................................................21

*Morris v. Lifescan, Inc.*,
   54 F. App'x 663 (9th Cir. 2003) ......................................................10

*Nguyen v. Radient Pharm. Corp.*, No. 11-cv-00406 DOC,
   2014 U.S. Dist. LEXIS 63312 (C.D. Cal. May 6, 2014)...................................10

*Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-cv-04062,
   2017 U.S. Dist. LEXIS 86124 (N.D. Cal. June 5, 2017)...................................23

*Officers for Justice*,
   688 F.2d at 628 ...............................................................................13

*Patel v. Axesstel, Inc.*, No. 14-cv-1037-CAB-BGS,
   2015 U.S. Dist. LEXIS 146949 (S.D. Cal. Oct. 23, 2015)................................10

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ...................................................................7, 8

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000) ...................................................................9

*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) ...................................................................7

*Rhom v. Thumbtack, Inc.*, No. 16-cv-02008-HSG,
  2017 WL 4642409 (N.D. Cal. Oct. 17, 2017) .....................................24

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) .................................................11

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ...............................................................7

*Stanger v. China Elec. Motor, Inc.*,
  812 F.3d 734 (9th Cir. 2016) ...........................................................15, 19

*Stuart v. Radioshack Corp.*, No. 07-cv-4499 EMC,
  2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) .....................................10

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993) ...............................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...............................................................................9

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ...................................................................7

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) .....................................................20

*Vincent v. Hughes Air W., Inc.*,
  557 F.2d 759 (9th Cir. 1977) ...............................................................6

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .....................................................*passim*

*Waters v. Int'l Precious Metals Corp.*,
  190 F.3d 1291 (11th Cir. 1999) .........................................................10

## **Statutes**

15 U.S.C.A. §77z-1(a)(6) ........................................................................8

15 U.S.C.A. §78u-4(a) ...........................................................................23

15 U.S.C.A. §78u-4(a)(6) ........................................................................8

15 U.S.C. § 78u-4(b) ...............................................................................6

False Claims Act ....................................................................................3

PSLRA ..........................................................................................8, 9, 15

## **Rules**

Federal Rule of Civil Procedure 23(f) .........................................1, 5, 6, 14

Lead Plaintiff Brad Mauss and plaintiff Daniel Popov (collectively, "Plaintiffs"), individually and on behalf on behalf of themselves and all other members of the Settlement Class, respectfully move this Court, pursuant to Fed. R. Civ. P. 23(e), for an order: (1) granting an award of attorneys' fees equaling 30% of the $7,900,000 Settlement Fund, or $2,370,000; (2) granting reimbursement of $802,695.08 in reasonable and necessary expenses that were incurred by Lead Counsel in prosecuting this Action; and (3) granting $7,500 for Plaintiff Brad Mauss and $7,500 for Plaintiff Daniel Popov, in reimbursement for their reasonable costs and expenses directly relating to their representation of the Class.

## **INTRODUCTION**

Lead Counsel prosecuted this Action on an entirely contingent basis with no guarantee of a successful resolution. Lead counsel advanced over $800,000 in expenses with no guarantee of reimbursement. After nearly five years and more than 10,000 professional hours,[1] Lead Counsel obtained a Settlement for a gross recovery of $7.9 million in cash—an excellent benefit to the Class, particularly given the difficulties of proving scienter, loss causation, and damages at trial. As detailed in the accompanying Final Approval Brief, the $7.9 million Settlement provides the Class with a significant recovery, in the range of 23% to 34% of reasonably recoverable damages depending on the relevant damages scenario. Each scenario is significantly better than the historical norm for settlements in securities class actions. *See, e.g.*, Laarni Bulan, et al., Cornerstone Research, *Securities Class Action Settlements: 2016 Review and Analysis*, at 7 (2017), *available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2016-Review-and-Analysis (noting that the median securities class-action settlement in 2016 was for 2.5% of estimated damages).

As compensation for their efforts, Lead Counsel respectfully requests an award of attorneys' fees in the amount of thirty percent (30%) of the gross

---

[1] These hours do not include additional professional work conducted after the Court granted preliminary approval of the Settlement on June 11, 2018 (Dkt. 250).

Settlement Fund, which equates to $2,370,000.  This fee award is reasonable under the percentage-of-recovery method for common-fund cases, is consistent with the range typically awarded in similar cases in the Ninth Circuit, and is justified by a lodestar cross-check.

Lead Counsel also seeks reimbursement of the out-of-pocket expenses incurred in prosecuting these claims in the total amount of $802,695.08.  *See* Declaration of Jeremy A. Lieberman ("Lieberman Decl.") Exhibit C and Declaration of Lionel Z. Glancy ("Glancy Decl.") ¶ 5.[2] The expenses are reasonable, were necessarily incurred as part of the successful prosecution of this Action, and are of the kind regularly reimbursed by courts within this Circuit. Significantly, the Notice indicated that Lead Counsel would seek up to $900,000 for reimbursement of expenses, which generated zero objections.

Additionally, Plaintiffs seek awards of $7,500 for Plaintiff Brad Mauss and $7,500 for Plaintiff Daniel Popov in reimbursement for their reasonable costs and expenses directly relating to their representation of the Class.  *See* Carino Decl. ¶¶ 71-73, Exhibits D and E. Potential compensatory awards of up to $10,000 for each Plaintiff were publicized in the Notice and generated zero objections.

Lead Counsel respectfully submit that the requested attorneys' fees and expenses are fair and reasonable under applicable legal standards, especially in light of the contingency risk undertaken, and should be awarded by the Court along with compensatory awards for the Class Representatives.

Pursuant to the Preliminary Approval Order, copies of the long-form Notice, Plan of Allocation, and Proof of Claim and Release Form have been disseminated to 90,632 potential Class Members and nominees.  *See* Declaration of Josephine Bravata ("Bravata Decl.) ¶ 6.[3]  The Notice stated that Lead Counsel would seek an

---

[2] The Lieberman Declaration and Glancy Declaration are annexed as Exhibits A and B to the Declaration of Michele S. Carino In Support Of Plaintiffs' Motion For: (1) Final Approval Of Proposed Class Action Settlement; And (2) Award Of Attorneys' Fees, Reimbursement Of Expenses,  And Award To Plaintiffs, dated October 8, 2018 ("Carino Decl.").
[3] *See* Carino Decl. Ex. C.

award of attorneys' fees of up to 30% of the Settlement Fund, reimbursement of up to $900,000 in litigation expenses, and for an award of $10,000 to each of the two Class Representatives, for their reasonable costs and expenses.

Bravata Decl. Ex. A. To date, no Class Member has filed an objection to these requests.[4] Bravata Decl. ¶ 13. This overwhelmingly favorable response by the Class strongly supports the reasonableness of the requested fee award, reimbursement of expenses, and compensatory awards.

Thus, Plaintiffs and Lead Counsel respectfully request that the Court grant this Motion.

## BACKGROUND

### 1.   Factual Allegations, Procedural History and Settlement Negotiations

The relevant facts along with the procedural history and settlement negotiations are set forth in more detail in the accompanying Final Approval Brief (under the heading "Overview of the Litigation") and in the Carino Decl. ¶¶ 14-36.

### 2.   Specific Efforts of Lead Counsel

In this Action, Plaintiffs would be required to prove that (i) Defendants made false and misleading statements or omitted to disclose material facts regarding, among other things, NuVasive's compliance with healthcare fraud and abuse laws, including the False Claims Act and Anti-Kickback Statute; (ii) Defendants did so knowing their statements or omissions to be materially false or misleading, or recklessly disregarding their materially false or misleading nature; and (iii) investors suffered injury as a result thereof.

To prosecute the Action and to work toward obtaining and presenting the proof required to prevail at trial, Lead Counsel engaged in extensive work on behalf of the Class. Among other work, Lead Counsel:

---

[4] The deadline for filing any such objection is October 26, 2018. If any objections are filed, Lead Counsel will respond by November 5, 2018.

- Reviewed and analyzed NuVasive's SEC filings, press releases, quarterly earnings call transcripts, and other public statements;

- Collected and reviewed a comprehensive compilation of analyst reports and major financial news service reports on NuVasive;

- Reviewed and analyzed stock trading data and historical stock price information relating to NuVasive;

- Hired a private investigator that located and interviewed former NuVasive employees as confidential witnesses with knowledge of the events relevant to the allegations in the Action;

- Consulted with economic experts in the areas of loss causation, market efficiency, and damages;

- Consulted with experts regarding healthcare fraud and abuse laws and corporate compliance programs related thereto;

- Drafted and filed the initial complaint, as well as subsequent detailed pleadings incorporating additional allegations based on evidence uncovered after the filing of the First Amended Class Action Complaint;

- Vigorously opposed Defendants' four motions to dismiss, including submission of additional briefing on the issue of loss causation;

- Conducted extensive fact discovery, including drafting and responding to document requests and interrogatories, review of over 200,000 thousand pages of documents, and taking twenty depositions of fact witnesses;

- Preparing for and defending depositions of Plaintiffs Brad Mauss and Daniel Popov;

- Conducting extensive expert discovery, including preparation of expert reports and rebuttal reports on the issues of loss causation, damages, market efficiency, healthcare fraud and abuse laws and corporate healthcare compliance programs, and taking and defending expert depositions;

- Filing Plaintiffs' motion for class certification;

- Vigorously opposing Defendants' Petition to the Ninth Circuit Pursuant to Federal Rule of Civil Procedure 23(f), motion for summary judgment, and motions to exclude expert testimony;
- Preparing and exchanging confidential mediation statements and exhibits;
- Attending formal mediation sessions overseen by Robert A. Meyer, Esq. of JAMS;
- Prepared the motion papers and related documents necessary to provide notice of the Settlement to Class members and to obtain preliminary approval of the Settlement;
- Obtained competing bids for claims administration work related to the Settlement before selecting the Claims Administrator;
- Secured the services of the Escrow Agent, executed a contract for such service, and created the Settlement Escrow Account;
- Obtained preliminary approval of the Settlement and thereafter worked with the Claims Administrator to effectuate notice and oversee the claims administration process;
- Responded to inquiries received from potential Class members following the publication and distribution of Notice;
- Prepared the motion papers and related documents necessary to obtain final approval of the Settlement;
- Will prepare for and participate in the final approval hearing on the Settlement in November 2018; and
- Will oversee the administration of the Net Settlement Fund through final distribution.

*See* Carino Decl. ¶¶ 7, 14-36, 59-60.

Lead Counsel's efforts to obtain the Settlement have been without compensation of any kind to date, and any potential payment of attorneys' fees is, and always has been, wholly contingent upon the result achieved. *Id*. ¶ 11. As compensation for these efforts, Lead Counsel respectfully requests this Court

award attorneys' fees of 30% of the Settlement Fund, plus reimbursement of $802,695.08 in out-of-pocket expenses incurred.   Supported by ample case law, these requests are appropriate given the excellent resolution obtained for the Class.

## ARGUMENT

### A.   LEAD COUNSEL SHOULD BE AWARDED ATTORNEYS' FEES OF 30% OF THE SETTLEMENT AMOUNT FROM THE COMMON FUND

It has long been recognized in this Circuit that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[The Supreme Court] has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the funds as a whole."). "The court's authority to reimburse the parties stems from the fact that the class action [device] is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts." 7B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1803, at 493-94 (2d ed. 1986).   The policy rationale for awarding attorneys' fees from the common fund is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig. ("WPPSS")*, 19 F.3d 1291, 1300 (9th Cir. 1994). The 30% fee requested here is consistent with the fee awards in similar cases and will fairly compensate counsel for the risks undertaken in this action.   The lodestar cross-check confirms the fairness of the requested fee, as the multiplier is ***less than one*** – well below the parameters approved by courts in this Circuit.

### 1.   It Is Appropriate to Award a Reasonable Percentage of the Common Fund as Attorneys' Fees

Under applicable standards, an attorney fee award must be reasonable.   *See*, *e.g.*, 15 U.S.C. § 78u-4(b); Fed. R. Civ. P. 23(h) ("[T]he court may award

reasonable attorney's fees and nontaxable costs"); *In re Heritage Bond Litig.*, 233 F. App'x 627, 631 (9th Cir. 2007). For their efforts in creating a common fund for the benefit of the Settlement Class, Lead Counsel seeks a fee of 30% of the gross Settlement Fund. The requested fee for the Settlement on behalf of the Class is calculated based upon the Settlement Fund amount of $7,900,000 in cash, with Lead Counsel requesting 30%, or $2,370,000.

Ample precedent supports Lead Counsel's fee request. In *Blum v. Stenson*, the Supreme Court recognized that under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund bestowed on the class." 465 U.S. 886, 900 n.16 (1984). The Ninth Circuit has expressly approved the use of the percentage of recovery method in common fund cases. *See, e.g., Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).[5] While courts within the Ninth Circuit have discretion to choose whether to use either the percentage-of-the-fund or the lodestar plus a risk multiplier method to determine whether a request for attorneys' fees is reasonable, courts in this Circuit often prefer a percentage-of-the-fund approach in common fund cases. *See, e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the

---

[5] In fact, percentage-based fee awards in common fund cases have been approved by every Circuit Court that has addressed the issue. *See, e.g., In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 (2d Cir. 2014); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988). The Eleventh and District of Columbia Circuits require the use of the percentage method in common fund cases. *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993).

often more time-consuming task of calculating the lodestar"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("the percentage method in common fund cases appears to be dominant").   The percentage method "better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients . . . ."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014).

The rationale for compensating counsel in common fund cases on a percentage basis is sound.  In *Paul, Johnson*, the Ninth Circuit explained the underlying equitable principle:

> Since the Supreme Court's 1885 decision in *Central Railroad & Banking Co. of Ga. v. Pettus*, 113 U.S. 116 (1885) …, it is well settled that the lawyer who creates a common fund is allowed an *extra* reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit. … The amount of such a reward is that which is deemed "reasonable" under the circumstances.

886 F.2d at 271 (internal citations omitted).  Use of the percentage method also decreases the burden on courts by eliminating a full-blown, detailed, and time-consuming lodestar analysis, while assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement.  *See In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989).  For these reasons, use of the percentage method "appears to be dominant."  *OmniVision,* 559 F. Supp. 2d at 1046.

Moreover, using the percentage method is proper in securities fraud cases. The plain language of the PSLRA states that class counsel is entitled to attorneys' fees that represent a "reasonable percentage" of the damages recovered by the class.  *See* 15 U.S.C.A. §78u-4(a)(6); 15 U.S.C.A. §77z-1(a)(6). "By using this language, 'Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions.'"

*In re Am. Apparel, Inc. S'holder Litig.*, No. 10-cv-06352 MMM (JCGx), 2014 WL 10212865, at \*20 (C.D. Cal. July 28, 2014) (quoting *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008)); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney's fees are reasonable.").

Courts have recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons and to discourage future similar violations.  Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide an effective weapon in the enforcement of the securities laws.  *See generally*, *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the [SEC].").

### 2. The Requested Attorneys' Fees Are Reasonable When Viewed Against Ninth Circuit Norms

The Settlement Fund consists of $7,900,000 in cash.  The instant request for a 30% attorneys' fee is well within the range of such fees awarded under similar circumstances and by judges in this District. The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33.3% of the total settlement value, with 25% considered something of a benchmark.  *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *see also Bluetooth*, 654 F.3d at 943; *Buccellato v. AT&T Operations, Inc.*, No. 10-cv-00463, 2011 U.S. Dist. LEXIS 111361, at \*11 (N.D. Cal. June 30, 2011) (recognizing Ninth Circuit's benchmark, surveying cases, and granting 25% fee award).

As noted by courts, in the Ninth Circuit, in "most common fund cases, the award exceeds that [25%] benchmark." *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009); *see also Vizcaino*, 290 F.3d at 1048-50 (9th Cir. 2002) (affirming fee award of 28% of $96.9 million settlement fund); *Omnivision*, 559 F. Supp. 2d at 1047 (noting that "in most common fund cases, the award exceeds that [25%] benchmark," and approving 28% fee award of $13.8 million settlement fund); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee equal to 33% percent of a $12 million settlement fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000), *as amended* (June 19, 2000) (upholding fee award of 33.3% of $1.725 million settlement); *Patel v. Axesstel, Inc.*, No. 14-cv-1037-CAB-BGS, 2015 U.S. Dist. LEXIS 146949, at *20-*21 (S.D. Cal. Oct. 23, 2015) (awarding 30% fees in a securities fraud class action based on "the complexity of securities litigation, the lodestar crosscheck, and the lack of any objection from the class members"); *Nguyen v. Radient Pharm. Corp.*, No. 11-cv-00406 DOC (MLGx), 2014 U.S. Dist. LEXIS 63312, at *30 (C.D. Cal. May 6, 2014) (adjusting benchmark upward to award 28% fee in securities fraud class action); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (approving 33.3% fee award and explaining that "where recovery is uncertain, an award of one-third of the common fund" is appropriate); *In re Nuvelo, Inc. Sec. Litig.*, No. 07-cv-04056 CRB, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011) (explaining that a typical fee award in common fund cases in the Ninth Circuit is 30-33% of the fund); *Stuart v. Radioshack Corp.*, No. 07-cv-4499 EMC, 2010 WL 3155645, at *6 (N.D. Cal. Aug. 9, 2010) (approving 33.3% fee award and explaining that it is "well within the range of percentages which courts have upheld as reasonable").[6]

---

[6] Courts in other jurisdictions also routinely award fees of 30% or higher. *See*, *e.g.*, *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) (one-third award of $40 million); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 842 (N.D. Ill. 2015) (awarding

The guiding principle remains that a fee award should be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296 (citation omitted).  The attorneys' fee requested here is well within the range of percentages courts in this Circuit have awarded in similar securities class action settlements.

### 3.    Relevant Ninth Circuit Factors Support the Requested Fee Award

Relevant factors in assessing whether the requested fee percentage is appropriate include: the results for the class; the risks for its counsel, whether the fee is within the range typically associated with cases of a similar kind; the burden on plaintiffs' counsel of prosecuting the case, and the difficulty of the questions presented.  *See Vizcaino*, 290 F.3d at 1048-50.  Here, the requested fee percentage is reasonable in light of these factors and a lodestar cross-check.

Lead Counsel aggressively prosecuted this Action with no guarantee of receiving any remuneration. Throughout this litigation, which extended over four and a half years, Lead Counsel has been aware of numerous risks, including the difficulty of surviving multiple motions to dismiss, obtaining class certification, overcoming motions for summary judgment and to exclude expert testimony, and ultimately, successfully proving key elements of the case at trial and/or on appeal, including falsity, scienter, loss causation, and damages. Lead Counsel also expended significant resources to complete fact and expert discovery, reviewing and analyzing over 200,000 pages of documents, conducting over twenty-five depositions, and preparing and exchanging initial and rebuttal expert reports on the issues of market efficiency, damages, and healthcare fraud and abuse laws, and the adequacy of corporate compliance programs related thereto.

---

33-1/3% of $46 million settlement fund); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598-99 (N.D. Ill. 2011) (observing that "[a] number of fee awards in common-fund cases from within the Seventh Circuit show that an award of 33.3% of the settlement fund is within the reasonable range," and approving 33.3% of $9.5 million); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (approving 33.3% fee out of $175 million fund); *In re Select Comfort Corp. Sec. Litig.*, No. 99-884 (D. Minn. Feb. 28, 2003) (awarding 33.3% of the $ 5,750,000 settlement); *In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) (approving 36% fee award from $127 million common fund).

In the face of all of these challenges, Lead Counsel and Liaison Counsel expended a combined total of 10,146.30 professional hours and incurred $802,695.08 in out-of-pocket expenses in their efforts to litigate against the Defendants and to secure and advance the Settlement, without any compensation or reimbursement of their expenses.  *See* Carino Decl. ¶¶ 64-70, Exs. A and B.  An attorney fee award of 30% is particularly justified here given the recovery of $7,900,000, obtained despite the obstacles posed by vigorous motion practice by sophisticated defense counsel.   Accordingly, the favorable result under the circumstances, combined with the substantial risks faced by Plaintiffs and Lead Counsel, and the other factors cited herein, support the requested attorneys' fee of 30% of the Settlement amount.

          **a)**      **Lead Counsel Achieved a Favorable Result for the Settlement Class**

Courts have consistently recognized that the result achieved is an important factor to be considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (the "most critical factor is the degree of success obtained"); *Vizcaino*, 290 F.3d at 1048; *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1175 (S.D. Cal. 2007).  Here, the Settlement Fund consists of $7,900,000 in cash, which provides a recovery of approximately 23% to 34% of estimated aggregate damages depending on the economic model.   After deducting estimated expenses, administrative costs, and attorneys' fees and Class representative awards (if approved by the Court), the estimated average recovery is approximately $0.13 per share.  This recovery far surpasses that benchmark achieved in comparable cases. *See* Laarni Bulan, et al., Cornerstone Research, *Securities Class Action Settlements: 2016 Review and Analysis*, at 7 (2017), *available at* https:// www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2016-Review-and-Analysis.[7]

---

[7] *See also Securities Class Action Settlements 2013 Review and Analysis*, at 8-9 (noting that in 2013, securities settlements overall returned a median of 2.1% of damages, with 4.3% where

Notably, recovery of potentially higher damages would have depended on obtaining a successful jury verdict after trial, surviving any appeals, and then collecting from the Defendants.  By resolving this Action against the Defendants now, Plaintiffs and Lead Counsel secured a certain and favorable recovery for the Class while avoiding these risks.  Under any measure, this result is reasonable and supports the requested fee award.  Indeed, fees representing a higher percentage than that requested here have been awarded by courts, including those within the Ninth Circuit, in other securities class action settlements.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1052 (listing settlement amounts and percentage fee awards in "megafund" cases with settlements over $50 million, in which the three smallest securities settlements had fee awards ranging from 18% to 37.1%); *id.* (citing *In e Nat'l Health Labs. Sec. Litig.*, Nos. 92–1949 & 93–1694 (S.D. Cal. Aug. 15, 1995) ($64 million settlement and 30% fee award)).

### b)    The Risks of Litigation Were High

Lead Counsel undertook this litigation with substantial risk that they might not obtain any recovery for Plaintiffs and the Class, which is a significant factor in the award of fees.  *See Omnivision*, 559 F. Supp. 2d at 1047; *WPPSS*, 19 F.3d at 1299-1301.  As endorsed by the Ninth Circuit, the risk of litigation is an important, if not the foremost, factor in determining the attorneys' percentage fee award.  *See Vizcaino*, 290 F.3d at 1048-49 (that the case is "fraught with risk and recovery is far from certain" is "a relevant circumstance" that courts must take into account);

---

damages are between $50-124 million); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (approving 6% recovery of maximum damages) (citing *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at **27-28 (average recovery between 2% to 3% of maximum damages)); *In re Rite Aid Corp.*, 146 F. Supp. 2d at 715 (citing studies indicating that the average securities fraud class action settlement since 1995 has resulted in a recovery of 5.5% – 6.2% of estimated losses); *see also Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair"); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149, at *10 (N.D. Cal. Feb. 2, 2009) ("The immediacy and certainty of the settlement award justifies a recovery smaller than the Class Members could seek in the case").

*see also Am. Apparel*, 2014 WL 10212865, at *21 ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award.").   There was no parallel government action, making the contingent risk even higher.

Courts nationwide have long recognized that the risk of no recovery is substantially increased in securities class actions, which are notoriously complex and difficult to both plead and prove.  *See, e.g., In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("[F]ederal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading."); *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA"); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCX), 2005 WL 1594389, at *6 (C.D. Cal. June 10, 2005) (class actions, and particularly securities class actions, typically involve substantial complexity); *Fogarazzo v. Lehman Bros.*, No. 03 CIV. 5194 (SAS), 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011) ("securities actions are highly complex"); *In re Flag Telecom Holdings*, *Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) (securities class litigation is "notably difficult and notoriously uncertain") (citation omitted).

This litigation was no different.  As described in the accompanying Final Approval Brief and in the Carino Decl. (at ¶¶ 7, 14-36, 59-60), Lead Counsel navigated the challenging terrain of the PSLRA by engaging in: (i) a thorough investigation of potential claims on behalf of NuVasive's investors resulting in Counsel's detailed pleading of the claims in the initial complaint and subsequent pleadings; (ii) hard-fought litigation over Defendants' multiple motions to dismiss; (iii) substantial fact and expert discovery; (iv) a contentious class certification process, including overcoming Defendants' Petition for Permission to Appeal Pursuant to Federal Rule of Civil Procedure 23(f); (iv) extensive briefing in connection with Defendants' motions for summary judgment and to exclude expert

testimony; and (v) substantial preparation for trial, including identification of witnesses and exhibits and designation of deposition testimony —all before devoting the significant time and resources needed to secure, prepare, and seek approval of the Settlement.  Even assuming Plaintiffs could have successfully prosecuted this Action through what undoubtedly would have been a highly-contested trial, Lead Counsel anticipated that post-trial appeals were likely, and would have delayed recovery for years, if not indefinitely.

In sum, the obstacles faced by Plaintiffs and Lead Counsel in seeking to recover against the Defendants in this securities class action were significant, particularly given the strict pleading requirements of the PSLRA and the applicable proof requirements during the later stages of the case (and on appeal).

### c)   The Contingent Nature of the Fee and the Financial Burden Carried By Counsel

A determination of a fair fee must include consideration of its contingent nature.  It is "an established practice in the private legal market" to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.  *WPPSS*, 19 F.3d at 1299 (citing Richard Posner, *Economic Analysis of Law*, § 21.9, at 534-35 (3d ed. 1986)). In fact, contingent fees that may far exceed the market value of the services, if rendered on a non-contingent basis, are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis, regardless of whether they win or lose.  *Id.*; *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016) ("Risk multipliers incentivize attorneys to represent class clients, who might otherwise be denied access to counsel, on a contingency basis.").  Courts have consistently recognized that the risk of receiving little or no recovery is a factor in considering an award of attorneys' fees.  *Vizcaino*, 290 F.3d at 1050.

The contingent nature of the fee supports a 30% award.  Lead Counsel made a substantial outlay of both time and money in this case pursuing the claims at

issue, resources that could have been devoted to the prosecution of other matters, while facing the very real risk of recovering nothing. Many securities cases have been lost at trial, on post-trial motions, or on appeal. For example, in *In re JDS Uniphase Corp. Securities Litigation*, a securities class action litigated in this Circuit, the jury issued a verdict in favor of defendants after years of litigation. No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007). In *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012), the jury issued a verdict on liability in favor of plaintiffs, but the Eleventh Circuit affirmed judgment as a matter of law against the plaintiffs for lack of proof of loss causation. In *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990), the class won a $38 million jury verdict (exclusive of prejudgment interest), and a motion for judgment notwithstanding the verdict was denied; however, on appeal, the judgment was reversed and the case dismissed, inflicting a total loss after ten years of active litigation. *See also Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial); *In re Vivendi Universal, S.A., Sec. Litig.*, 123 F. Supp. 3d 424 (S.D.N.Y. 2015) (post-trial summary judgment motion of defendants granted on reliance grounds in class action securities suit that was filed 13 years earlier and had been previously decided in plaintiffs' favor at trial).

Lead Counsel has received no compensation since this Action was filed (more than five years ago) and has incurred significant litigation expenses for the benefit of the Class. Although reimbursement was not assured, Lead Counsel and Liaison Counsel advanced $802,695.08 in expenses to date for the benefit of the Class. Carino Decl. ¶ 68. Any fee award or expense reimbursement to Lead Counsel has always been at risk and completely contingent both on the result achieved and on this Court's exercise of its discretion in making any award. Thus, this factor militates in favor of the Court granting Lead Counsel's requested award of attorneys' fees and reimbursement of out-of-pocket expenses. *See In re*

*Heritage Bond Litig.*, No. 02-ML-1475 DT. 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005) (recognizing the risk of non-payment or reimbursement of expenses as a factor weighing strongly in favor of counsel's requested fee award); *see also Vizcaino*, 290 F.3d at 1050; *Omnivision*, 559 F. Supp. 2d at 1046-47; *Immune Response*, 497 F. Supp. 2d at 1175-76.

### d) The Skill Required and the Quality of the Work

The "prosecution and management of a complex [ ] class action requires unique legal skills and abilities" that are to be considered when evaluating fees. *Omnivision*, 559 F. Supp. 2d at 1047; *Knight*, 2009 WL 248367, at *6 (same). Here, the quality of Lead Counsel's work is reflected in the recovery obtained, especially in light of the fact that over twenty motions *in limine* concerning a complex range of evidentiary issues remained to be decided, and trial was set to begin in less than two months. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Lead Counsel extracted a significant recovery for investors, in the range of 23% to 35% of recognizable losses, depending on the relevant damages scenarios.

"The experience of counsel is also a factor in determining the appropriate fee award." *Heritage*, 2005 WL 1594389, at *12 (citing *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 432-33 (E.D. Pa. 2001)) ( "the court justified its fee award of one-third of a common fund based in part on the experience of counsel in litigating securities class actions."); *In re Pub. Serv. Co. of N.M.*, No. 91-0536M, 1992 WL 278452, at *8 (S.D. Cal. July 28, 1992) (experience in complex class actions weighed in favor of fee award of one-third of common fund). Lead Counsel and Liaison Counsel are experienced and skilled practitioners in the securities litigation field. *See* Lieberman Decl. Ex. D; Glancy Decl. Ex. A. Throughout the litigation, Lead Counsel demonstrated to Defendants the skill and commitment necessary to bring the case to trial, as evidenced by their ability to extract a $7,900,000 recovery for the Class. The skill demonstrated by Lead Counsel supports the requested fee.

"The difficulty of securities litigation generally—particularly the challenges presented by the PSLRA's pleading requirements—requires skilled counsel familiar with the relevant statutes and case law." *Am. Apparel,* 2014 WL 10212865, at *22. Given the complexity of the issues presented in this Action, including material misrepresentations, scienter, loss causation, and damages, only skilled counsel who applied themselves diligently could have obtained such a favorable recovery. It is important to reward skilled counsel for pursuing difficult cases because "the stated goal in percentage fee-award cases [is] ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (internal quotation marks omitted).

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by Lead Counsel. *See, e.g., Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196, at *59 (N.D. Cal. Feb. 11, 2016); *Am. Apparel*, 2014 WL 10212865, at *22; *In re Equity Funding Corp. of Am. Sec. Litig.,* 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *Ikon*, 194 F.R.D. at 194; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d. Cir. 1986). Here, counsel for the Defendants are prominent and highly-skilled attorneys from DLA Piper and Paul Hastings LLP, with substantial experience in defending securities class actions, who vigorously defended this Action and provided top-tier legal services to their clients.

### e)   A Lodestar Cross-Check Shows the Fee Request Is Reasonable

As a "cross-check" on the reasonableness of a requested fee award, courts often compare counsel's "lodestar" (a compilation of the hours performed at the various rates charged for the professionals providing the services) with the fee request made under the percentage-of-the-fund method. *See, e.g., Vizcaino*, 290 F.3d at 1050; *Fischel v. Equitable Life Assurance Soc'y of UnitedStates,* 307 F.3d 997, 1007 (9th Cir. 2002). "[T]he lodestar calculation can be helpful in suggesting

a higher percentage when litigation has been protracted . . . [and] may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F.3d at 1050.

Significantly, in securities class actions it is common for lodestar figures to be adjusted upward by a sizeable multiplier to reflect a variety of factors, including the complexity of the case and the risks assumed by counsel. For example, the court in *Vizcaino* approved a fee representing a multiple of 3.65 times counsel's lodestar. *Id.* at 1051-52 (listing twenty-three shareholder settlements and the multipliers for each, in which the average multiplier is 3.28); *id.* at 1051 (quoting *WPPSS* for the proposition that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases"). Indeed, the Ninth Circuit has recognized that the "[risk multiplier] incentive is especially important in securities cases." *Stanger*, 812 F.3d at 741.

Here, the requested 30% fee amounts to a ***negative*** multiplier, *i.e.*, a multiplier of less than one, or approximately **.37** times Lead Counsel's total lodestar incurred in litigating the case against the Defendants and in securing and advancing the Settlement. Carino Decl. ¶¶ 64-67. In other words, the $2,370,000 requested fee represents only a fraction of Lead Counsel's total lodestar of $6,636,470; indeed, Lead Counsel's total lodestar is approximately 2.68 times ***greater than*** the requested fee. Therefore, the lodestar cross-check confirms that the fee requested by Counsel is fair and reasonable. Additionally, Lead Counsel's lodestar does not include the additional time and effort that they will continue to devote to the case on behalf of the Class by, for example, directing the claims administration process and final distribution, nor does it include the time spent preparing this motion seeking payment of attorneys' fees and reimbursement of expenses. The .37 multiplier in this case is unquestionably reasonable when compared to frequently awarded multipliers in cases from this Circuit. *Vizcaino*, 290 F.3d at 1051, n.6 (observing that "multiples ranging from one to four are frequently awarded," and affirming fee award of 28%, representing a 3.65

multiplier).   The Ninth Circuit has surveyed numerous class action lodestars, finding that in 83% of those cases, the lodestar multiplier was between 1.0 and 4.0, and in 54% of the cases, it was between 1.5 and 3.0.   *Id*; *see also Hopkins v. Stryker Sales Corp.*, No. 11-cv-02786, 2013 U.S. Dist. LEXIS 16939 (N.D. Cal. Feb. 6, 2013) (awarding 30% fee, representing 2.77 multiplier); Order Awarding Attorneys' Fees and Reimbursement of Litigation Expenses, *Wells Fargo*, No. 09-cv-1376 (N.D. Cal. Nov. 14, 2011), ECF No. 475 (awarding 19.8% fee, representing 2.82 multiplier); *Buccellato*, 2011 U.S. Dist. LEXIS at *10-11 (awarding 25% fee, representing a 4.3 multiplier); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."); *Destefano*, 2016 U.S. Dist. LEXIS 17196, at *70 ("In securities class actions in particular, courts have applied multipliers ranging from 1.25 up to 4") (collecting cases).

### f)   The Settlement Class's Reaction to the Fee Request Was Overwhelmingly Positive

The 90,632 Notices and Proofs of Claim mailed to Class Members expressly stated that Lead Counsel would seek a fee award of up to 30% and up to $900,00 in expenses, and to date, no objection to the 30% fee award or reimbursement of expenses has been filed.   Bravata Decl. ¶ 13.   Courts have recognized that "[t]he presence or absence of objections from the class is also a factor in determining the proper fee award."   *Heritage*, 2005 WL 1594389, at *15-*16 (holding that "the lack of significant objections to the requested fees justifies an award of one-third of the Settlement Fund[,]" particularly where the number of objections to the fee was "remarkably small given the wide dissemination of notice"); *see also Buccellato*, 2011 U.S. Dist. LEXIS, at *8; *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 148-49 (E.D. Pa. 2000) (filing of only one objection despite mailed notices to over 5,250 potential class members "weighs in favor of approving the fee petition");

*Omnivision*, 559 F. Supp. 2d at 1048 (filing of only three objections supports 28% award).[8]

## B. LEAD COUNSEL'S EXPENSES SHOULD BE AWARDED AS REASONABLE AND NECESSARY TO PROSECUTE THE LITIGATION AND OBTAIN THE SETTLEMENT

Lead Counsel and Liaison Counsel incurred out-of-pocket expenses of $802,695.08 in prosecuting this Action. Carino Decl. ¶ 68, Exs. A and B. Such expenses consist primarily of necessary document management costs, including maintenance of an electronic database, mediation costs, expert and consulting fees, investigation expenses, research costs, travel expenses, and expenses associated with necessary court filings. *Id.*

Traditionally, Ninth Circuit "courts have awarded expenses from the litigation, in addition to a percentage of the fund." *In re Businessland Sec. Litig.*, No. C-90-20476-RFP, 1991 WL 427887, at *2 (N.D. Cal. June 14, 1991); *see, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) ("[L]itigation expenses make the entire action possible."). It is well-established that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced for the benefit of the class. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted); *see also Omnivision,* 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."); *Immune Response,* 497 F. Supp. 2d at 1177; *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-26 (10th Cir. 1993) (holding that expenses are reimbursable if they would normally be billed to a client); *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (same); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y.

---

[8] Consistent with *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 994 (9th Cir. 2010), which requires counsel's fee motion to be filed before the deadline for objections to afford class members the opportunity "thoroughly to examine counsel's fee motion," the deadline for filing any objections is October 26, 2018.

1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients") (citation and internal quotation marks omitted).

Courts within this Circuit, including this District, have granted requests for reimbursement of expenses such as the one here. Counsel's expenses, which included "filing fees, … postage, … computer research, … and travel" fall squarely within "the types of expenses routinely charged to paying clients." *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09CV1088 BTM (KSC), 2014 WL 6473044, at *10 (S.D. Cal. Nov. 18, 2014) (citing *In re Media Vision Tech. Sec. Litig*, 913 F. Supp. 1362, 1367-72 (N.D. Cal. 1996)); *Milligan v. Toyota Motor Sales, U.S.A., Inc.*, No. C 09-05418 RS, 2012 WL 10277179, at *9 (N.D. Cal. Jan. 6, 2012) (courts grant requests where "class counsel incurred out-of-pocket costs including[, among other things]: (1) filing fees; (2) copying, mailing, faxing and serving documents; … (4) conducting computer research; (5) travel to … hearings[] and mediation sessions; [and] (6) expert fees"); *see also In re Magsafe Apple Power Adapter Litig.*, No. 09-CV-01911-EJD, 2015 WL 428105, at *15 (N.D. Cal. Jan. 30, 2015) (approving request of $100,000 in expenses that included "cost of experts and consultants, computerized research such as the use of Lexis and Westlaw, travel expenses such as airfare, meals, lodging and transportation, and costs such as photocopies, postage, filing fees, and telephone charges."); *accord Alvarado v. Nederend*, No. 08-cv-01099 OWW DLB, 2011 WL 1883188, at *10 (E.D. Cal. May 17, 2011).

Because the expenses were incurred with no guarantee of recovery, Lead Counsel had a strong incentive to keep them as low as reasonably possible. Indeed, total expenses of $802,695.08 are less than the $900,000 estimate contained in the Notice, which generated no objections from the Class. Bravata Decl. ¶ 13, Ex. A. Each of the expenses for which Counsel seeks reimbursement was necessary to the successful prosecution of this case and is the type of expense that would have been

billed to a paying client (*e.g.*, expert fees, mediation fees, postage, court filing fees, etc.). Accordingly, reimbursement of the requested expenses is reasonable and appropriate.

## C. THE REQUESTED AWARDS TO PLAINTIFFS SHOULD BE APPROVED

The Plaintiffs also respectfully request that the Court award them the following amounts in connection with their representation of the Class:

Brad Mauss:          $7,500

Daniel Popov:        $7,500

The PSLRA allows for reimbursements to representative plaintiffs in securities class actions for "reasonable costs and expenses (including lost wages) directly relating to the representation of the class." 15 U.S.C. § 78u-4(a)(4). "Importantly, a court need not award all named plaintiffs the same incentive payment*." High-Tech Emp. Antitrust,* 2015 U.S. Dist. LEXIS 118052, at *61.

Plaintiffs dedicated their personal time and effort to prosecuting the Action. Specifically, Plaintiffs have each submitted a declaration setting forth their participation in the Action, including time (ranging from 38 to 50 hours each) and effort devoted to, among other things: (1) reviewing pleadings; (2) providing trading records and PSLRA certifications; (3) overseeing the litigation; (4) communicating with counsel about the Action; and (5) preparing for, traveling to, and attending their respective depositions; (6) preparing for and submitting declarations in support of Plaintiffs' motion for class certification; (7) considering and approving the Settlement. *See* Mauss Decl. ¶¶ 6-7; Popov Decl. ¶¶ 6-7.[9] The requested compensatory awards are fair and reasonable, constituting a sliver of the Settlement Fund (0.6% for both Plaintiffs together). *See*, *e.g.*, *Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-cv-04062, 2017 U.S. Dist. LEXIS 86124, at *49 (N.D. Cal. June 5, 2017) (giving service awards of $90,000); *In re*

---

[9] The Declaration of Brad Mauss ("Mauss Decl.") and the Declaration of Daniel Popov ("Popov Decl.") are annexed to the Carino Declaration as Exhibits D and E, respectively.

*High-Tech Emp. Antitrust,* 2015 U.S. Dist. LEXIS 118052, at *61-*63 (giving service awards of $100,000 and $140,000); *Rhom v. Thumbtack, Inc.*, No. 16-cv-02008-HSG, 2017 WL 4642409, at *8 (N.D. Cal. Oct. 17, 2017) (award "equals approximately 1-2% of the total settlement fund, which is consistent with other court-approved enhancements").

## **CONCLUSION**

Plaintiffs and Lead Counsel respectfully request that this Court award the requested attorneys' fees in the amount of 30% of the gross Settlement Fund, *i.e.*, $2,370,000. Additionally, because the $802,695.08 in expenses that Lead Counsel advanced for the benefit of the Class were reasonably necessary to the prosecution of this Action, and were the type usually billed to clients outside of a contingency payment arrangement, Plaintiffs and Lead Counsel also request that the Court grant their reimbursement in full. Finally, Plaintiffs and Lead Counsel request that the Plaintiffs be awarded the above requested amounts ($7,500 for Mauss, $7,500 for Popov) for their efforts expended in this Action, without which the Settlement would not have been achieved. To effectuate this relief, Plaintiffs and Lead Counsel respectfully request that the Court enter the Proposed Order filed herewith.

Dated:  October 8, 2018

Respectfully submitted

**POMERANTZ LLP**

By:*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Michele S. Carino
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:   (212) 661-8665
jalieberman@pomlaw.com
mcarino@pomlaw.com

*Lead Counsel for Plaintiffs*

Lionel Z. Glancy
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067

Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
lglancy@glancylaw.com

*Liaison Counsel for Plaintiffs*