FILED

DEC 0 5 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAD MAUSS, on behalf of himself and all others similarly situated,<br><br>         Plaintiffs,<br><br>v.<br><br>NUVASIVE, INC.; ALEXIS V. LUKIANOV; and MICHAEL J. LAMBERT,<br><br>         Defendants. | Case No.: 13cv2005 JM (JLB)<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING IN PART MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS FOR PLAINTIFFS** |

This is a federal securities class action for violations of Section 20(a) and 10(b) of the Securities Exchange Act of 1934 on behalf of investors who purchased or otherwise acquired Defendant NuVasive, Inc.'s securities. Plaintiffs move the court for final approval of a class action settlement (Doc. No. 253) and an award of attorneys' fees and costs (Doc. No. 254). Defendants NuVasive, Inc., Alexis V. Lukianov, and Michael J. Lambert do not oppose either motion. (Doc. Nos. 255, 256, 257, 258.) No class members objected to or opted out of the proposed settlement. (Doc. No. 260.) On November 19, 2018, the court held a final approval hearing. (Doc. No. 263.) There were no objections to the settlement made at the hearing. At the hearing, the court granted Plaintiffs' motion for final approval of the settlement (Doc. No. 253) and took Plaintiffs' motion for an award of attorneys' fees, reimbursement of expenses, and award for Plaintiffs under submission.

Having carefully considered the matters presented, the court record, and the arguments of counsel, the court grants Plaintiffs' motion for final approval of the settlement and grants in part Plaintiffs' motion for an award of attorneys' fees, reimbursement of expenses, and award for Plaintiffs.

## BACKGROUND

### I. The Parties and Claims

Lead Plaintiff Brad Mauss and Plaintiff Daniel Popov (collectively, "Plaintiffs") initiated this action on behalf of themselves and those individuals who purchased NuVasive, Inc. ("NuVasive") securities between October 22, 2008 and July 30, 2013.

Defendants are NuVasive, Alexis V. Lukianov, and Michael J. Lambert (collectively, "Defendants"). NuVasive designs, develops, and markets products for the surgical treatment of spine disorders. Lukianov was NuVasive's Chief Executive Officer and Chairman of the Board of Directors at all relevant times. Lambert has been Chief Financial Officer since November 2009.

Plaintiffs' sixth amended complaint ("6AC") asserts two claims, for (1) securities fraud, in violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, against all Defendants; and (2) control-person liability under Section 20(a) of the Securities and Exchange Act, against Defendants Lukianov, and Lambert. Plaintiffs allege, in sum, that Defendants engaged in illegal sales, marketing, and billing practices that exposed the company to an increased risk of regulatory liability under the federal Anti-Kickback Statute and the False Claims Act, but they did not disclose that risk to investors, who bought their shares at an inflated price and were harmed when the concealed risk materialized.

### II. Procedural Background

On August 28, 2013, Plaintiffs commenced this securities-fraud class action on behalf of those individuals who purchased NuVasive securities between October 22, 2008, and July 30, 2013. After filing their 6AC, four rounds of Rule 12(b)(6) motions, and several other motions, Plaintiffs moved for class certification on October 28, 2016. (Doc.

2

No. 106.) On March 22, 2017, the court granted the motion for class certification and appointed Brad Mauss and Daniel Popov as the class representatives. (Doc. No. 128.) Pomerantz LLP was appointed as Lead Counsel and Glancy Prongay & Murray LLP was appointed as Liaison Counsel. The following class was certified—

> All persons other than defendants who purchased or otherwise acquired NuVasive, Inc. ("NuVasive" or the "Company") common stock between October 22, 2008 and July 30, 2013 (the "Class Period"), inclusive. Excluded from the Class are any parties who are or have been Defendants in this litigation, the present and former officers and directors of NuVasive and any subsidiary thereof, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any current or former Defendant has or had a controlling interest.

On September 8, 2017, Defendants filed both a motion for summary judgment on the issue of loss causation and a motion to exclude the testimony of Plaintiffs' expert, Dr. Zachary Nye. (Doc. Nos. 152, 154.) The court denied both motions. (Doc. No. 193.)

The parties participated in two private mediation sessions. Thereafter, on March 6, 2018, the parties filed a Notice of Settlement. (Doc. No. 242.) On March 23, 2018, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement. (Doc. No. 246.) The court granted that motion (Doc. No. 250) and set a final approval hearing for November 19, 2018. (Doc. No. 251.) The court held a final approval hearing on November 19, 2018. (Doc. No. 265.)

## III. Settlement Terms

The Stipulation of Settlement (Doc. No. 246-2 ("Stipulation").) provides for a $ 7.9 million settlement fund. Defendants are to transfer these funds to an escrow agent, who will invest the funds. Stipulation at 17.[1] The escrow agent will reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. Id. Thus, the total settlement fund is $ 7.9 million plus later accrued interest. Payments will be made to class members after a final judgment is entered and no longer appealable. Id. at 18.

---

[1] The court cites to the pagination provided by CM/ECF rather than original pagination.

1    The balance of the settlement fund will be distributed to class members according to
2    the Plan of Allocation after deduction of any court-awarded attorneys' fees and expenses,
3    notice and administration expenses authorized by the stipulation, taxes, and any court
4    award to Plaintiffs. The Plan of Allocation provides for a pro rata distribution of the
5    remaining settlement funds based on a formula described in detail in the notice. (Doc. No.
6    246-4 at 13-16.) Class counsel move for an award of attorneys' fees in the amount of 30
7    percent of the settlement fund ($2,370,000, plus accrued interest at the time of payment)
8    and reimbursement for $802,695.08 in expenses. (Doc. No. 254.) Plaintiffs Brad Mauss
9    and Daniel Popov request awards of $7,500 each. (Id.) Settlement administration costs
10   are not to exceed $250,000. All of these amounts are to be paid from the settlement fund.
11   Stipulation at 18.

12        Pursuant to the court's order granting preliminary approval, the claims administrator
13   took a number of actions to provide notice of the settlement to the proposed class. The
14   settlement notice included a description of the $7.9 million Settlement Fund, Plan of
15   Allocation, lead counsel's intent to apply for a fee and expenses award, Plaintiffs' request
16   for an award not to exceed $10,000 each, and the contact information for lead counsel and
17   the claims administrator. (Doc. No. 253-4, Bravata Decl. Exh. A.) The notice also included
18   the date, time, and place of the fairness hearing, and described how to object. (Id.) The
19   claims administrator disseminated 90,632 settlement notices to class members and their
20   brokers and nominees, a summary notice was published in the *Investor's Business Daily*
21   and *Globe Newswire*, and a website was established with the settlement notice. (Doc. No.
22   253-4, Bravata Decl. ¶¶ 5-7, 10.) No class member objected to the proposed settlement,
23   Plan of Allocation, or any other aspect of the settlement. (Doc. No. 260-1, Bravata Decl.
24   ¶ 5.) There were no requests for exclusion from the settlement. (Id. ¶ 4.) In total, the
25   claims administrator received 25,380 claim forms. (Id. ¶ 6.)

26                    **MOTION FOR FINAL APPROVAL OF SETTLEMENT**
27        For the reasons discussed below, Plaintiffs' motion for final approval of the
28   settlement is granted.

## I. Legal Standards

Federal Rule of Civil Procedure 23(e) requires a district court's approval in order for any "claims, issues, or defenses of a certified class" to be "settled, voluntarily dismissed, or compromised . . . ." Fed. R. Civ. P. 23(e). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982). In making this decision, the court must consider "whether the settlement is fundamentally fair, adequate and reasonable." Id. If the settlement will bind class members, Rule 23(e)(2) requires that class members be provided with reasonable notice and that the court hold a hearing.

To determine whether the settlement is fair, reasonable, and adequate, the court considers a number of factors, including:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Officers for Justice, 688 F.2d at 624. "The primary concern . . . is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Id. While the "decision to approve or reject a settlement is committed to the sound discretion of the trial judge," Hanlon, 150 F.3d at 1026, the question "is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion," id. at 1027.

## II. Discussion

After considering the relevant factors and case history, the settlement in this case meets the requisite standards.

As an initial matter, the notice provided to the class satisfied the court's preliminary approval order, Rule 23, the Private Securities Litigation Reform Act ("PSLRA"), and due process. The notice, as described above, constitutes the best practicable notice to class members under the circumstances. It (i) fully and accurately informed class members

5

about the lawsuit and settlement; (ii) provided sufficient information so that class members could decide whether to accept the benefits offered, opt out and pursue their own remedies, or object to the settlement; (iii) provided procedures for class members to file written objections to the proposed settlement, to appear at the hearing, and to state objections to the proposed settlement; and (iv) provided the time, date, and place of final fairness hearing. The notice also satisfied the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7) and 15 U.S.C. § 77z-1(a)(7).[2]  See In re Am. Apparel, Inc. S'holder Litig.., No. CV1006352MMMJCGX, 2014 WL 10212865, at *6 (C.D. Cal. July 28, 2014) ("The

---

[2] 15 U.S.C. § 78u-4(a)(7) and 15 U.S.C. § 77z-1(a)(7) both provide: "Any proposed or final settlement agreement that is published or otherwise disseminated to the class shall include each of the following statements, along with a cover page summarizing the information contained in such statements: **(A) Statement of plaintiff recovery[:]** The amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis. **(B) Statement of potential outcome of case[:] (i) Agreement on amount of damages[:]** If the settling parties agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement concerning the average amount of such potential damages per share. **(ii) Disagreement on amount of damages[:]** If the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement from each settling party concerning the issue or issues on which the parties disagree . . . . **(C) Statement of attorneys' fees or costs sought[:]** If any of the settling parties or their counsel intend to apply to the court for an award of attorneys' fees or costs from any fund established as part of the settlement, a statement indicating which parties or counsel intend to make such an application, the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought. Such information shall be clearly summarized on the cover page of any notice to a party of any proposed or final settlement agreement. **(D) Identification of lawyers' representatives[:]** The name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members concerning any matter contained in any notice of settlement published or otherwise disseminated to the class. **(E) Reasons for settlement[:]** A brief statement explaining the reasons why the parties are proposing the settlement. **(F) Other information[:]** Such other information as may be required by the court." (emphasis in original).

PSLRA creates additional requirements as to the information that must be provided in a notice of settlement in a securities class action."). The notice had a cover page and contained all information required by the PLSRA.

There is no evidence of collusion, and indeed, "no basis to conclude that the negotiations were anything other than a good faith, arms-length attempt by experienced and informed counsel to resolve this matter through compromise." See Fraley v. Facebook, Inc., 966 F. Supp. 2d 939, 942 (N.D. Cal. 2013). The agreement comes in the wake of over four years of extensive investigation, discovery, and motion practice, after which the parties engaged in arms'-length negotiations before a mediator. (Doc. No. 253 at 18; Doc. No. 253-1, Carino Decl. ¶¶ 18-36.) What is more, the attorneys involved are experienced in federal securities class action cases.

As for the settlement itself, it is fair, reasonable, and adequate. First and foremost, the amount offered in settlement appears appropriate. Defendants agreed to pay a non-reversionary gross settlement amount of $7,900,000. After deducting estimated expenses, administrative costs, attorneys' fees and expenses, and class representative awards, the estimated average recovery will be at least $0.13 per share. This case was filed in 2013 and the parties completed extensive discovery and motion practice. In light of the risks Plaintiffs would face if the case progressed, such as the risk of an adverse ruling on Defendants' motions in limine or the possibility of an unfavorable or less favorable result at trial or on appeal, the amount offered is appropriate.[3]

The Plan of Allocation is fair, reasonable, and adequate. See In re Oracle Sec. Litig., C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, 1994 WL 502054 (N.D. Cal. June 16,

---

[3] Plaintiffs' damages calculations are based on one corrective disclosure on July 30, 2013, which allegedly resulted in a statistically significant decline of $3.28 per share, or approximately 12 percent, on the close of July 31, 2013. Plaintiffs contend that the entire price decline was attributable to the disclosure of new information correcting earlier misrepresentations. Their damages expert estimated a total recoverable damages of $23 million to $35 million. Consequently, the $7.9 million settlement provides a recovery of approximately 23 percent to 34 percent of total recoverable damages.

1994) (citing <u>Class Plaintiffs v. City of Seattle</u>, 955 F.2d 1268, 1284-85 (9th Cir. 1992)).
"A plan of allocation that reimburses class members based on the extent of their injuries is
generally reasonable." <u>In re Am. Apparel, Inc. S'holder Litig.</u>, 2014 WL 10212865, at *18
(citation omitted). Here, the Plan of Allocation reasonably reimburses class members for
their estimated losses caused by Defendants' misrepresentations using a "Risk Loss"
calculation.[4] The Plan of Allocation was described in detail in the notice and no class
member objected. Accordingly, the Plan of Allocation is fair, reasonable, and adequate.

Furthermore, if this action does not settle now, both parties will face the prospect of
lengthy litigation and significant expense in taking the case to trial. Given the securities
fraud issues involved, post-trial motions and appellate proceedings are also possible.

Finally, class members have approved of the settlement. The settlement
administrator mailed 90,632 notice and claim forms.[5] The settlement administrator

_____

[4] The Plan of Allocation includes a formula for distribution of the settlement funds to class
members after all other distributions have been made. This formula was developed in
consultation with Plaintiffs' damages expert. Each class member's payment is based on a
"Recognized Loss" calculation, which takes into account when the class member
purchased shares of NuVasive common stock, in what amount, whether the shares were
sold, and if sold, when they were sold, and for what amounts. (Doc. No. 246-4 at 13-15.)
If NuVasive common stock was purchased between October 23, 2008 and July 30, 2018
and the class member did not sell the stock until after July 30, 2018, the maximum recovery
is $3.34 per share. (<u>Id</u>. at 15.) A person will not receive any payment if they purchased
the NuVasive stock on October 22, 2008 or sold the NuVasive stock that was purchased
during the class period prior to July 31, 2018. (<u>Id</u>. at 14-15.) After every claimant's
Recognized Loss is calculated, each claimant will receive a pro rata share of the settlement
fund based on the claimant's Recognized Loss as compared to the total Recognized Loss
of all claimants. (<u>Id</u>. at 17.)

[5] Plaintiffs directly mailed 98 individuals and organizations who purchased NuVasive
common stock for themselves or their clients. (Doc. No. 253-4, Bravata Decl. ¶ 4.) A
letter was also mailed to 768 of the largest banks and brokerage companies and 621 mutual
funds, insurance companies, pension funds, and money managers that may have traded or
owned NuVasive common stock asking them to forward the notice and claim form to stock
owners or provide the settlement administrator with the names and addresses of the owners.
(<u>Id</u>. ¶ 5.) These groups requested, and the settlement administrator mailed, 90,534 notices
and claim forms. (<u>Id</u>. ¶ 6.) Thus, in total, the settlement administrator mailed 90,632 notice

received 25,380 claims forms. Not a single class member filed an objection or timely requested exclusion, resulting in a participating class of 25,380.

In sum, the settlement satisfies the requirements of Rule 23(e). Plaintiffs' motion for final approval of the settlement is granted.

## MOTION FOR FEES AND COSTS

Plaintiffs, on behalf of Lead Counsel Pomerantz LLP and Liaison Counsel Glancy Prongay & Murray LLP, move for an award of 30 percent of the settlement fund ($2,370,000, plus accrued interest at time of payment)[6] in attorneys' fees, $802,695.08 in expenses, and $7,500 in reimbursement for each class representative ($15,000 total). (Doc. No. 254 at 12.) Defendants agreed in advance not to oppose any of these requests.

### I. Attorneys' Fees and Costs

While attorneys' fees and costs may be awarded in a class action where authorized by the parties' agreement, Federal Rule of Civil Procedure 23(h), "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

#### A. Attorneys' Fees

Under Federal Rule of Civil Procedure 23(h) and the PSLRA, any award of attorneys' fees must be reasonable. Fed. R. Civ. P. 23(h); 15 U.S.C.A. §§ 77z-1(a)(6) and 78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the

---

and claim forms. (Id.) 6,268 of these were returned as undeliverable. (Id. ¶ 8.) The post office provided forwarding addresses for 401 people and the remaining 5,867 were "skip-traced" to obtain updated addressed and "re-mailed if updated addresses were provided." (Id.)

[6] The Stipulation provides that Defendants will deposit $ 7.9 million with an escrow agent, who will invest the funds. Plaintiffs seek 30 percent of the settlement fund at the time of disbursement. Thus, the attorney fee award includes $2,370,000 (30 percent of $7.9 million) and 30 percent of the total interest earned on the settlement fund as of the date of disbursement.

plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d at 942. The Ninth Circuit has adopted a benchmark of 25 percent of the total settlement as reasonable, "which [the court] can then adjust upward or downward to fit the individual circumstances of this case." Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 273 (9th Cir. 1989).

The percentage of recovery method is appropriate in a securities fraud case such as this. See In re Am. Apparel, Inc. S'holder Litig., 2014 WL 10212865, at *20; In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 300 (3d Cir. 2005), as amended (Feb. 25, 2005). Having decided to apply the percentage of recovery doctrine, the court adopts the Ninth Circuit's 25 percent benchmark rate as its starting point. But the benchmark rate "must be supported by findings that take into account all of the circumstances of the case," Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002), and the court, therefore, also considers a handful of other relevant factors in considering the reasonableness of Plaintiffs' request, including: (1) the results achieved; (2) the risk of litigation; (3) the benefits generated beyond the cash settlement fund; (4) the contingent nature of the fee and the financial burden carried; and (5) awards in similar cases, id. at 1048-50.

First, class counsel obtained $7,900,000 for the class, without reversion of any funds to Defendants. This equates to a recovery of approximately 23 to 34 percent of the maximum possible aggregate damages estimated by Plaintiffs' expert. After deducting estimated administrative costs, attorneys' fees and expenses, and class representative awards, the estimated average recovery is at least $0.13 per share. Plaintiffs argue that this recovery far surpasses recovery in comparable cases. See Laarni Bulan, et al., Cornerstone Research, Securities Class Action Settlements: 2016 Review and Analysis (2017), at 7, available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2016-Review-and-Analysis (finding median settlement amounts for the period

of 2007 through 2016 ranged between 1.8 percent and 2.9 percent of estimated maximum damages). The recovery achieved weighs in favor of an upward adjustment from the 25 percent benchmark to a fee of 30 percent of the common fund.

Second, class counsel litigated this case on a contingency basis, risking receiving zero compensation for over five years of work and out-of-pocket costs. Securities class actions are complex actions to litigate. This case was no exception. It involved complex issues such as material misrepresentations, scienter, loss causation, and damages. Defendants vigorously opposed Plaintiffs throughout this litigation. Counsel prevailed over Defendants' multiple motions to dismiss, obtained class certification, and defeated Defendants' motions for summary judgment. Despite this success, a complex and highly risky trial and likely post-trial appeals and motion practice awaited Plaintiffs if they chose to continue litigating this case. Counsel has received no compensation since this action was filed and advanced a significant amount in expenses without any surety of reimbursement. Thus, the risk of litigation and the contingent nature of the fee support an upward adjustment.

Third, the amount requested is reasonable under the circumstances and in line with awards in similar cases cited by Plaintiffs.[7] See, e.g., In re Pac. Enterprises Sec. Litig., 47

---

[7] In addition, this award remains reasonable when cross-checked against the lodestar-multiplier method. See In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d at 944 (courts are encouraged "to guard against an unreasonable result by cross-checking their calculations against a second method"); Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 451 (E.D. Cal. 2013) ("Where the lodestar method is used as a cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours."). Lead Counsel spent 10,106.25 hours and Liaison Counsel spent 40.05 hours in the prosecution of this action, for a lodestar of around $6,636,470 (hours spent multiplied by a reasonable hourly rate for the region and attorney experience). (See Doc. No. 254-1, Carino Decl. ¶¶ 64-67; Doc. No. 254-2, Lieberman Decl. at 6-7; Doc. No. 254-3, Glancy Decl. at 4.) Under the lodestar approach, the requested fee results in a negative multiplier of about 0.37, which is well below the range of normal. See Parkinson v. Hyundai Motor Am., 796 F. Supp. 2d 1160, 1170 (C.D. Cal. 2010) (observing that "multipliers may range from 1.2 to 4 or even higher"); Vizcaino, 290 F.3d at 1052-54

11

F.3d 373, 379 (9th Cir. 1995) (affirming fee award equal to 33 percent of a $12 million settlement fund in derivative class action and securities class action); Patel v. Axesstel, Inc., No. 3:14-CV-1037-CAB-BGS, 2015 U.S. Dist. LEXIS 146949, at *20-21 (S.D. Cal. Oct. 23, 2015) (awarding 30 percent of settlement fund in securities fraud class action); Nguyen v. Radient Pharm. Corp., No. SACV 11-00406 DOC(MLGx), 2014 U.S. Dist. LEXIS 63312, at *29 (C.D. Cal. May 6, 2014) (awarding 28 percent of settlement fund in fees in securities fraud class action). See also Vizcaino, 290 F.3d at 1050 (affirming fee award of 28 percent of $96.9 million settlement fund). "District courts in this circuit have routinely awarded fees of one-third of the common fund or higher after considering the particular facts and circumstances of each case." Beaver v. Tarsadia Hotels, No. 11-CV-01842-GPC-KSC, 2017 WL 4310707, at *10 (S.D. Cal. Sept. 28, 2017) (listing cases within the Ninth Circuit that approved a fee award of one-third the common fund).

Accordingly, Plaintiffs' request for a fee award of 30 percent of the Settlement Fund is granted.

## B. Litigation Costs

Plaintiffs seek $802,695.08 in litigation costs. For the reasons discussed below, the court finds $745,426.71 in litigation costs reasonable and reimbursable.[8]

"[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." In re Heritage Bond Litig., No. 02-ML-1475 DT, 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005) (quotation omitted). An attorney may "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted); Fed. R. Civ. P. 23(h)

_____

(surveying multipliers in twenty-three class action suits and recognizing that courts applied multipliers of 1.0 to 4.0 in 83 percent of surveyed cases).

[8] Per stipulation, the court and Plaintiffs' counsel conducted an unreported teleconference. During the conference, Plaintiffs' counsel provided additional information regarding items of expense and the court communicated anticipated reductions to counsel.

(permitting the court to award nontaxable costs that are authorized by the parties' agreement). In reviewing costs, a court should remember "that it is generally not the practice of an attorney to bill a client for every expense incurred in connection with the litigation in question." In re Media Vision Tech. Sec. Litig., 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). "The attorney is expected to absorb some of the cost of doing business as an attorney, and should not be allowed to shift the expense of overhead in running a legal practice to his or her client." Id.

Plaintiffs represent that class counsel incurred litigation costs in the amount of $802,695.08. (Doc. No. 254-1, Carino Decl. ¶ 74; Doc. No. 254-2, Lieberman Decl., Exh. C; Doc. No. 254-3, Glancy Decl. ¶ 5.) The amount requested is almost $100,000 short of the $900,000 estimate for litigation costs provided in the notice. (Doc. No. 246-4 at 1, 10.) Plaintiffs provided an itemized list of the costs and expenses incurred during this litigation, separated by category.

### 1. Class Counsel Costs

Pomerantz LLP requests reimbursement for the following expenses:

| CATEGORY | AMOUNT |
|---|---|
| Clerk Filing Fees | 1,359.50 |
| Computer Research | 6,523.04 |
| Database Charges | 74,098.72 |
| Deposition (Court Reporting And Videographers, Etc.) | 85,106.98 |
| Expert Fee | 492,137.63 |
| Investigator Fees | 39,675.75 |
| Meals And Conference Expenses | 5,382.03 |
| Mediator Fees | 11,395.17 |
| Messenger | 1,461.26 |
| Miscellaneous | 360.31 |
| OT | 1,655.46 |
| Photocopy Charges | 2,877.64 |
| Photocopy Charges- In House | 606.10 |

| | |
|---|---|
| Postage And Overnight Mail | 5,548.44 |
| Press Releases and Newswires | 1,723.64 |
| Process Server | 222.50 |
| Telephone/ Videoconference | 3,756.22 |
| Travel - Out-of-Town | 58,941.48 |
| Travel - Local | 8,530.77 |
| **TOTAL EXPENSES** | **$801,362.64** |

(Doc. No. 253-2, Lieberman Decl. at 14.)

### i. Expert Costs

Plaintiffs request $492,137.63 in expert costs. At the hearing, the court requested supplemental documentation of Plaintiffs' litigation costs and specifically requested the billing records of Plaintiffs' expert, Dr. Nye. On November 21, 2018, Plaintiffs' counsel, Jeremy Lieberman, submitted a supplemental declaration and invoices received from Dr. Nye. (Doc. No. 266 ("Supplemental Lieberman Declaration").) On November 30, 2018, Plaintiffs' counsel, Michele Carino, submitted a supplemental declaration and billing records for Plaintiffs' expert Tome Herrmann and investigator On Point Investigations, LLC. (Doc. No. 267 ("Supplemental Carino Declaration").) The court reviewed in camera the unredacted billing records attached to both supplemental declarations. The Supplemental Lieberman Declaration indicates that Plaintiffs' expert costs derive from five different sources.

First, Dr. Nye's consulting firm, Stanford Consulting Group Inc. ("Stanford Consulting") charged $381,775 for expert services. (Supp. Lieberman Decl. ¶ 3(c).) Dr. Nye opined on loss causation, performed damages analysis, worked on the Plan of Allocation, and was prepared to testify at trial. He provided supporting materials for Plaintiffs' motion for class certification and in opposition to Defendants' motion for summary judgment. Defendants vigorously opposed admission of Dr. Nye's opinion at summary judgment and in motions in limine. Dr. Nye's hourly rate was $500 in 2016,

$600 in 2017, and $675 in 2018. (Id.) Stanford Consulting also invoiced Plaintiffs for work performed by other professional at the firm, with hourly rates between $250 and $550. (Id.) In contrast, Plaintiffs' counsel represents that Defendants' experts charged hourly rates between $250 and $850. (Id.)

The court reduces the award for fees charged by Stanford Consulting by $29,650. The award is reduced by $500 for billing entries in October 2014 and November 2015 that are overly broad and do not allow the court to determine what work was performed (for example, "analyst reports"). The court reduces the award by $5,900 for hours Dr. Nye and Faye Fort (billing at an hourly rate of $425 in 2016, $500 in 2017, and $550 in 2018) billed for what appear to be administrative tasks.[9] Lastly, the court reduces the award by $23,250 for 46.5 hours Beth Charlesworth (hourly rate of $500) spent reviewing, analyzing, and discussing case documents as it is not clear what this work represents or whether her high hourly rate was reasonable. The court finds the remainder of expenses charged by Stanford Consulting, $352,125, reasonable and reimbursable.

Second, Plaintiffs' regulatory expert Tome Herrmann, J.D., charged $90,346.68. (Supp. Lieberman Decl. ¶ 3(c).) Mr. Herrmann provided expert opinions and reports on industry best practices and policies and procedures related to compliance with the False Claims Act, Anti-Kickback Statute, and the Food, Drug and Cosmetic Act. (Supp. Carino Decl. ¶ 2.) Mr. Herrmann billed at an hourly rate of $550. (Id.) The court finds Mr. Herrmann's fees and expenses reasonable and reimbursable in the amount of $90,346.68.

Third, $19,342.68 of the expert costs categories includes attorney's fees billed by Jeffrey Haber. Mr. Haber represented confidential informants and witnesses in this case.

---

[9] The court reduces Ms. Fort's fees by $5,150 for document review and production work. In November 2016, Ms. Fort billed 4 hours ($1,700) for "Doc production." In May 2017, Ms. Fort billed 1 hour ($500) for "Document review." In June 2017, Ms. Fort billed 11 hours ($5,500) for "Review docs, draft report." Only half of the June 2017 hours ($2,750) are excluded from the award. In August 2017, Ms. Fort billed 4 hours ($2,000) for "Doc review (Def)" and "Assist with production." The court reduces Dr. Nye's fees by $750 for 1.5 hours he billed for "Production" in November 2016.

15

As discussed above, the court approved attorneys' fees in the amount of 30 percent of the settlement fund and declines to increase this amount on account of Mr. Haber's fees.

Fourth, $673.60 of the expert costs category was the fee for a court reporter and should have been included in the deposition costs category. The court incorporates this amount into the deposition costs category below.

The fifth source of expert costs appears to be a typographical error.[10]

In sum, the court finds expert costs in the amount of $442,471.68 reasonable and reimbursable.

### ii. Remaining Costs

Courts routinely reimburse attorneys for reasonable photocopying, postage, notice, telephone costs, and filing fees. See In re Immune Response Sec. Litig., 497 F. Supp. 2d at 1177; In re Media Vision Tech. Sec. Litig., 913 F. Supp. at 1367-69. A court may also reimburse reasonable costs for messenger services, deposition costs, and mediation costs. See Harris, 24 F.3d at 19; In re Immune Response Sec. Litig., 497 F. Supp. 2d at 1177-78; In re Media Vision Tech. Sec. Litig., 913 F. Supp. at 1367. This action was filed over five years ago, involved significant motion practice, and settled after mediation and close to trial. The court finds all of these costs reasonable and reimbursable.

Plaintiffs request reimbursement for $39,675.75 of expenses incurred by their investigation firm, On Point Investigations, LLC ("On Point"). On Point located, interviewed, and prepared reports on potential fact witnesses, including former NuVasive employees. (Supp. Carino Decl. ¶ 5.) On Point's investigative work was incorporated into Plaintiffs' complaints. On Point also responded to a subpoena and motion for sanctions filed by Defendants relating to On Point's investigative work. (Id. ¶ 6.) On Point billed at an hourly rate of $150. (Id. ¶ 5.) The court finds these expenses reasonable.

---

[10] The original fees and expenses application and the Supplemental Lieberman Declaration do not identify the fifth source. And the four sources identified above total the amount requested for expert costs ($492,137.63).

Plaintiffs seek reimbursement of $74,098.72 in database charges. The database charges were incurred for data hosting of electronic discovery services, paid to JND Legal Administration. (Supp. Lieberman Decl. ¶ 3(b).) There were over twenty-five depositions in this case and over 200,000 documents reviewed. In light of the significant discovery conducted in this case and its lengthy duration, these costs are reasonable and reimbursable.

Counsel seeks reimbursement for $6,523.04 in online research costs. Reasonable online legal research costs are reimbursable in this circuit as they are "an essential tool of a modern efficient law office." In re Immune Response Sec. Litig., 497 F. Supp. 2d 1166, 1178 (S.D. Cal. 2007). Counsel's supplemental declaration indicates that they incurred $250.80 in Pacer charges and $281.99 in Bloomberg charges. (Supp. Lieberman Decl. ¶ 3(a).) These charges are based on actual time usage at a rate set by the vendor. (Id.) These costs are reasonable. Counsel also seeks reimbursement in the amounts of $2,175.47 for Westlaw expenses and $3,814.78 for Lexis expenses. (Doc. No. 266, Supp. Lieberman Decl. ¶ 3(a).) Pomerantz LLP pays a flat monthly fee to these vendors and "allocates the costs to a given case on a pro-rata basis." (Id.) Without more information, the court cannot determine whether these expenses are reasonable or should instead be categorized as a fixed cost. Counsel does not indicate how the flat monthly fees are allocated on a "pro-rata basis." It is not clear if the fee is divided evenly among the active cases the firm has at a given time, in proportion to the amount of hours billed on a case, or in some other manner. The court declines to reimburse the Westlaw and Lexis costs. In total, the court finds $532.79 reasonable and reimbursable for online research.

Plaintiffs request reimbursement for $1,723.64 in "Press Releases and Newswires" and $5,382.03 in "Meals and Conference Expenses." The court finds these expenses reasonable and reimbursable.

Reimbursement for travel expenses is within the broad discretion of the court. In re Media Vision Tech. Sec. Litig., 913 F. Supp. at 1369. Travel expenses may be reimbursed if they are "reasonable and necessary." Id. Plaintiffs seek reimbursement for $8,530.77 in "local" travel and $58,941.48 in "out-of-town" travel. The majority of counsel reside

17

outside of California and were required to travel for multiple hearings. Additionally, Counsel capped airfare at coach rates. (Doc. No. 253-2, Lieberman Decl. ¶ 9.) The court finds Plaintiffs' travel costs reasonable and reimbursable.

The court denies Plaintiffs' request for reimbursement of $360.31 in "Miscellaneous" and $1,655.46 in "OT" costs as the record does not indicate what these expenses represent.

The court awards $744,364.27 in expenses to Class Counsel, itemized as follows:

| CATEGORY | AMOUNT |
|---|---|
| Clerk Filing Fees | 1,359.50 |
| Computer Research | 532.79 |
| Database Charges | 74,098.72 |
| Deposition (Court Reporting And Videographers, Etc.) | 85,780.58 |
| Expert Fee | 442,471.68 |
| Investigator Fees | 39,675.75 |
| Meals And Conference Expenses | 5,382.03 |
| Mediator Fees | 11,395.17 |
| Messenger | 1,461.26 |
| Miscellaneous | 0 |
| OT | 0 |
| Photocopy Charges | 2,877.64 |
| Photocopy Charges- In House | 606.10 |
| Postage And Overnight Mail | 5,548.44 |
| Press Releases and Newswires | 1,723.64 |
| Process Server | 222.50 |
| Telephone/ Videoconference | 3,756.22 |
| Travel - Out-of-Town | 58,941.48 |
| Travel - Local | 8,530.77 |
| **TOTAL EXPENSES** | **$744,364.27** |

///

## 2. Liaison Counsel Expenses

Glancy Prongay & Murray LLP request reimbursement for the following itemized expenses:

| CATEGORY | AMOUNT |
|---|---|
| Press Releases | 539.50 |
| Court Filing Fees | 400.00 |
| Online Research | 89.35 |
| Courier & Special Postage | 33.59 |
| **TOTAL EXPENSES** | **$1,062.44** |

The court finds these amounts reasonable and reimbursable. The court awards Glancy Prongay & Murray LLP $1,062.44 for reimbursement of costs.

## C. Class Representative Reimbursement

The notice states that the two class representatives would request up to $10,000 for their expenses and lost wages. (Doc. No. 264-4 at 10.) The PSLRA "provides in pertinent part that, although class representatives must share the recovery in the same proportion as all other members of the class, '[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class.'" In re Heritage Bond Litig., 2005 U.S. Dist. LEXIS 13555, 2005 WL 1594403, at *3 (quoting 15 U.S.C. § 78u—4(a)(4)). Here, Mr. Mauss submitted a declaration describing the work he contributed to the case, and that such work required approximately 38 hours of his time. (Doc. No. 254-5, Mauss Decl. ¶ 9.) Mr. Mauss declares that his hourly rate as president and owner of an office furniture company is approximately $250 per hour. (Id. ¶ 11.) Mr. Mauss requests reimbursement for his 38 hours of work at a lower rate, $200 per hour, amounting to $7,500. (Id. ¶ 12.) Mr. Popov submitted a declaration describing the work he contributed to the case, and that such work required approximately 50 hours of his time. (Doc. No. 254-6, Popov Decl. ¶ 8.) Mr. Popov declares that his hourly rate as senior vice president of development of a company is approximately $165 per hour. (Id. ¶ 9.) Mr.

19

Popov requests reimbursement in the amount of $7,500 for his 50 hours of work. (Id. ¶ 11.) This amount is lower than the amount Mr. Popov would have been paid at his regular hourly rate ($8,250). (Id.) In light of Mr. Mauss's and Mr. Popov's contributions to the case, and the lack of any objection from the class members, a reimbursement award of $7,500 each to Mr. Mauss and Mr. Popov is reasonable.

## CONCLUSION

Plaintiffs' motion for final approval of the settlement is granted. Plaintiffs' motion for an award of attorneys' fees, reimbursement of expenses, and award for Plaintiffs is granted in part.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. Unless indicated otherwise, all capitalized terms used herein have the same meanings as set forth and defined in the Stipulation.

2. The Court has jurisdiction over the subject matter of this Litigation, Plaintiffs, all Class Members, and the Defendants, including all Class Members who did not timely file a request for exclusion from the Class by the relevant deadline pursuant to the Preliminary Approval Order.

3. The Court hereby finds that the forms and methods of notifying the Class of the Settlement and its terms and conditions: met the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and 15 U.S.C. § 78u-4(a)(7) (added to the Exchange Act by the Private Securities Litigation Reform Act of 1995); constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons and entities entitled thereto of these proceedings and the matters set forth herein, including the Settlement and Plan of Allocation. No Class Member is relieved from the terms of the Settlement, including the releases provided for therein, based upon the contention or proof that such Class Member failed to receive actual or adequate notice. A full opportunity has been offered to the Class Members to object to the proposed Settlement

1  and to participate in the hearing thereon. Thus, it is hereby determined that all members of
2  the Class are bound by this Order and Final Judgment.

3      4.    The Settlement is approved as fair, reasonable, adequate, and in the best
4  interests of the Class. The Court further finds that there was no collusion, that the
5  Settlement set forth in the Stipulation is the result of arm's-length negotiations between
6  experienced, competent counsel representing the interests of the Class Members and the
7  Defendants, and that the record is sufficiently developed and complete to have enabled the
8  Plaintiffs and the Defendants to have adequately evaluated and considered their positions.
9  Plaintiffs and Defendants are directed to consummate the Settlement in accordance with
10 the terms and provisions of the Stipulation.

11     5.    All of the claims asserted in the Complaint or the Action against the
12 Defendants are hereby dismissed with prejudice.

13     6.    Plaintiffs and each of the other Class Members, on behalf of themselves and
14 their respective spouses, heirs, executors, beneficiaries, administrators, successors, assigns,
15 and any Person(s) (claiming now or in the future) through or on behalf of any of them
16 directly or indirectly, regardless of whether such Plaintiff or Class Member ever seeks or
17 obtains by any means (including, without limitation, by submitting a Claim to the
18 Settlement Administrator) any distribution from the Net Settlement Fund: (a) shall be
19 deemed by this Settlement to have, and by operation of law and of the Judgment shall have,
20 fully, finally, and forever released, relinquished, waived, dismissed, and discharged each
21 and all of the Released Claims (including Unknown Claims), against each and all of the
22 Released Persons, and shall have covenanted not to sue any Released Person with respect
23 to any Released Claims (including any Unknown Claims) except to enforce the releases
24 and other terms and conditions contained in this Stipulation or the Judgment entered
25 pursuant hereto and (b) shall be forever permanently barred, enjoined and restrained from
26 commencing, instituting, asserting, maintaining, enforcing, prosecuting or otherwise
27 pursuing, either directly or in any other capacity, any of the Released Claims (including
28 any Unknown Claims) against any Released Person in the Litigation or in any other action

or any proceeding, in any state, federal or foreign court of law or equity, arbitration tribunal, administrative forum or other forum of any kind.

7.     Defendants, for themselves and on behalf of each of their respective spouses, heirs, executors, beneficiaries, administrators, successors, assigns and any Person(s) (claiming now or in the future) through or on behalf of any of them directly or indirectly: (a) shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally and forever released, relinquished, waived, discharged, and dismissed each and all of the Defendant Claims (including Unknown Claims) against Plaintiffs in the Litigation, Lead Counsel and their attorneys, and all other Class Members, the members of each Class Member's immediate family, any entity in which any member of any Class Member's immediate family has or had a controlling interest (directly or indirectly), any estate or trust of which any Class Member is the settlor or which is for the benefit of any Class Member and/or members of his or her family and (b) shall be forever permanently barred, enjoined and restrained from commencing, instituting, asserting, maintaining, enforcing, prosecuting or otherwise pursuing, either directly or in any other capacity, any of the Defendant Claims (including any Unknown Claims) against the Plaintiffs, Lead Counsel and their attorneys, and all other Class Members in the Litigation or in any other action or any proceeding, in any state, federal or foreign court of law or equity, arbitration tribunal, administrative forum or other forum of any kind.

8.     Neither this Order and Final Judgment, the Preliminary Approval Order, the Stipulation (including the exhibits thereto), the Memorandum Of Understanding ("MOU"), nor any of the negotiations, documents or proceedings connected with them shall be argued to be or offered or received:

a.     against any of the Released Persons as evidence of, or construed as evidence of, any presumption, concession, or admission by any of the Released Persons with respect to the truth of any fact alleged by the Plaintiffs in the Amended Complaint or the Litigation, or the validity of any claim that has been or could have been asserted against any of the Defendants in the Amended Complaint or the Litigation, or the deficiency of any defense

that has been or could have been asserted in the Litigation, or of any wrongdoing or liability by any of the Defendants, or any liability, fault, misrepresentation, or omission with respect to any statement or written document approved or made by any of the Defendants;

  b. against the Plaintiffs or any Class Member or Lead Counsel as evidence of, or construed as evidence of, any infirmity of the claims alleged by the Plaintiffs in the Amended Complaint or the Litigation or of any lack of merit to the claims or the Amended Complaint or the Litigation or of any bad faith, dilatory motive, or inadequate prosecution of the claims or the Amended Complaint or the Litigation;

  c. against any of the Defendants, the Plaintiffs, or any Class Member, or their respective legal counsel, as evidence of, or construed as evidence of, any presumption, concession, or admission by any of the Defendants, the Plaintiffs, or any Class Member, or their respective legal counsel, with respect to any liability, negligence, fault, or wrongdoing as against any of the Defendants, the Plaintiffs, or any Class Member, or their respective legal counsel, in any other civil, criminal, or administrative action or proceeding, other than such actions or proceedings as may be necessary to effectuate the provisions of this Stipulation, provided, however, that if this Stipulation is approved by the Court, the Defendants, the Plaintiffs, and any Class Member, or their respective legal counsel, may refer to it to effectuate the liability protection and releases granted them hereunder;

  d. against any of the Defendants as evidence of, or construed as evidence of, any presumption, concession, or admission by any of them that the Settlement Consideration represents the amount which could or would have been received after trial of the Litigation against them;

  e. against the Plaintiffs or any Class Member as evidence of, or construed as evidence of, any presumption, concession, or admission by any of the Plaintiffs or any Class Member that any of their claims are without merit, or that any defenses asserted by the Defendants have any merit, or that damages recoverable in the Litigation would not have exceeded the Settlement Fund; or

f. as evidence of, or construed as evidence of, any presumption, concession, or admission that the modifications to the class definitions as ordered in the Preliminary Approval Order are appropriate in this Litigation, except for purposes of this Settlement.

9. Notwithstanding the foregoing Paragraph 9, the Settling Parties and other Released Persons may file or refer to this Order and Final Judgment, the Stipulation, Preliminary Approval Order, and/or any Claim Form: (a) to effectuate the liability protections granted hereunder or thereunder, including without limitation, to support a defense or counterclaim based on principles of *res* judicata, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim; (b) to obtain a judgment reduction under applicable law; (c) to enforce any applicable insurance policies and any agreements relating thereto; or (d) to enforce the terms of the Stipulation and/or this Order and Final Judgment.

10. Exclusive jurisdiction is hereby retained over the Settling Parties for all matters relating to the Litigation, including the administration, interpretation, effectuation or enforcement of the Stipulation, or Settlement and this Order and Final Judgment, and including any application for fees and expenses incurred in connection with administering and distributing the Settlement proceeds to the Class Members.

11. Without further order of the Court, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions in the Stipulation.

12. The Clerk of Court is directed to enter Final Judgment and close the file.

13. Any order approving or modifying the Plan of Allocation, Class Counsel's application or award of attorneys' fees and expenses, or Plaintiffs' application or award for payment of reasonable costs and expenses, shall be separate from, and shall not in any way disturb or affect, the finality of this Judgment, the Stipulation, or the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement.

14. The Court hereby awards Lead Counsel attorneys' fees in the amount of 30% of the Settlement Fund, together with the interest earned thereon for the same time period

24

and at the same rate as that earned on the Settlement Fund until paid, and expenses in an amount of $745,426.71. The Court finds that the amount of fees awarded is fair and reasonable in light of the time and labor required, the novelty and difficulty of the case, the skill required to prosecute the case, the experience and ability of the attorneys, awards in similar cases, the contingent nature of the representation and the result obtained for the Class.

15. The Court hereby awards Lead Plaintiff Brad Mauss a compensatory award for his efforts on behalf of the Class in the amount of $7,500. The Court hereby awards plaintiff Daniel Popov a compensatory award for his efforts on behalf of the Class in the amount of $7,500.

16. Lead Counsel's attorneys' fees and expenses, as awarded by the Court, shall be paid within ten (10) days of the award by the Court ("Fee and Expense Award"), notwithstanding any appeals that may be taken, subject to the obligation of all counsel who receive any award of attorneys' fees and costs to make full refunds or repayments to the Escrow Account plus interest earned thereon if the award is lowered or the Settlement is disapproved by a Final order not subject to further review. The Settlement is not conditioned upon any award of attorneys' fees and costs, and any objection to or appeal from such an award shall not affect the finality of the Settlement or the judgment of dismissal.

17. In the event that the Settlement does not become Final and effective in accordance with the terms and conditions set forth in the Stipulation, then this Judgment shall be vacated, rendered null and void and be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of the Settling Parties, and the Settling Parties shall be deemed to have reverted *nunc pro tunc* to their respective status prior to the execution of the MOU, and the Settling Parties shall proceed in all respects as if the MOU and the Stipulation had not been executed and the related orders had not been entered, without prejudice in any way from the negotiation, fact, or terms of the Settlement, and preserving all of their respective claims

1 and defenses in the Litigation, and shall revert to their respective positions in the Litigation.
2 In such circumstances, the parties shall thereafter work together to arrive at a mutually
3 agreeable schedule for resuming litigation of the Litigation.

4      18.   In the event the Judgment does not become Final or the Settlement is
5 terminated in accordance with the terms and conditions set forth in the Stipulation, within
6 ten (10) business days of entry of the order rendering the Settlement and Judgment non-
7 Final or notice of the Settlement being terminated, all monies then held in the Escrow
8 Account, including interest earned but less any costs or expenses properly incurred as set
9 forth herein, shall be returned to the Defendants. Plaintiffs and the Class Members shall
10 have no responsibility for the return of such consideration.

11      19.   The Court's orders entered during this Litigation relating to the confidentiality
12 of information shall survive this Settlement.

13      IT IS SO ORDERED.

14

15 DATED: December 5, 2018

16                             JEFFREY T. MILLER
                            United States District Judge